**Marquis Aurbach Coffing**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Kathleen A. Wilde, Esq.
Nevada Bar No. 12522
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
kwilde@maclaw.com
*Attorneys for Las Vegas Metropolitan Police Department and James LaRochelle*

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KIRSTIN BLAISE LOBATO,

Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, THOMAS THOWSEN, and JAMES LaROCHELLE,

Defendants.

CASE NO. 2:19-cv-01273

**LVMPD DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Las Vegas Metropolitan Police Department ("LVMPD"), Thomas Thowsen, and James LaRochelle (cumulatively "LVMPD Defendants"), by and through their attorneys of record, Marquis Aurbach Coffing, hereby submit their Motion for Partial Dismissal. This Motion is made and based upon all papers, pleadings, and records on file herein, the attached Memorandum of Points and Authorities, and any oral argument allowed at a hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Two separate juries found Plaintiff, Kirstin Blaise Lobato, guilty of murder with use of a deadly weapon and sexual penetration of a dead human body. Years later, the Supreme Court of Nevada ruled that denial of Lobato's post-conviction petition for a writ of habeas

corpus without an evidentiary hearing was an error that warranted further proceedings. The state district court then held a lengthy hearing before overturning Lobato's convictions on the basis of ineffective assistance of counsel. Rather than wasting resources on a third trial, the State agreed to dismissal of the charges with prejudice.

Lobato was released from prison in January 2018 and initiated the instant case on July 23, 2019. In her Complaint, Lobato asserts a variety of federal and state claims against the LVMPD Defendants because of their alleged contribution to her alleged wrongful arrest, prosecution, and conviction.

In the instant motion, the LVMPD Defendants respectfully move the Court to dismiss the claims and sub-claims which consist of little more than "threadbare recitals of the elements" because neither the Defendants nor the Court should have to guess as to the factual premise of Lobato's claims. In addition, the LVMPD Defendants urge the Court to dismiss the claims which are barred by the statute of limitations, including the §1983 claims based upon the Fourth Amendment and alleged involuntary confession as well as Nevada state law claims for intentional infliction of emotional distress ("IIED") and abuse of process. Finally, the Court should dismiss the sub-claims that are bare, conclusory, lacking essential elements, or otherwise unable to be proven as a matter of law.

## II. STATEMENT OF RELEVANT FACTS

### A. THE UNDERLYING CRIME

On July 8, 2001, Duran Bailey ("Bailey") died following a brutal beating and repeated stabbings. Complaint at ¶ 40. Bailey's body was later found behind a dumpster near a Nevada State Bank in Las Vegas. *Id.* at ¶¶ 40, 47. Notably, Bailey's penis was detached and left several feet away from his body. *Id.* at ¶¶ 46.

### B. THE INVESTIGATION

Law enforcement responded to the scene and LVMPD Detectives Thowsen and LaRochelle were assigned to investigate the murder. *Id.* at ¶¶ 47, 65.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

On July 20, 2001, a Lincoln County probation officer called the detectives with a potential lead. *Id.* at ¶ 68. Specifically, the probation officer indicated that Lobato had told several people about an attempted sexual assault that she narrowly avoided by cutting the would-be perpetrator's "lower region." *Id.* at ¶ 19, 68, 69. Based on the lead, Detectives Thowsen and LaRochelle drove out to Panaca, Nevada, to interview Lobato. *Id.* at ¶¶ 71, 75.

The detectives located Lobato at her family's home. *Id.* at ¶ 75. There, they informed Lobato that they were homicide detectives and indicated that they knew about the recent attack and her efforts to defend herself. *Id.* at ¶¶ 77, 78.

Allegedly because of her understanding that the detectives were following up on the attempted sexual assault, Lobato recounted the attack and her use of a knife to defend herself. *Id.* at ¶¶ 81, 89. At the conclusion of the interview, LaBato was placed under arrest. *Id.* at ¶ 99.

## C. THE CRIMINAL PROCEEDINGS

The State charged Lobato with murder with use of a deadly weapon and sexual penetration of a dead human body. *Id.* at ¶117; *see also* Commitment and Order to Appear, attached hereto as **Exhibit A**. Following a preliminary hearing on August 9, 2001, Justice of the Peace James Bixler bound Lobato over to the District Court to stand trial on both charges. *See* Exhibit A.

The case proceeded to trial the following year and a jury found Lobato guilty of both crimes. *See* Complaint, ECF no. 1, at ¶¶ 112, 117. On direct appeal, however, the Supreme Court of Nevada reversed and remanded for a new trial because of evidentiary errors. *Id.* at ¶ 118; *see also Lobato v. State*, 120 Nev. 512, 96 P.3d 765 (2004).

The State retried Lobato and the second jury also found her guilty of voluntary manslaughter with use of a deadly weapon and sexual penetration of a dead human body. Complaint at ¶ 119; *see also* Judgment of Conviction dated February 14, 2007. Lobato was then sentenced to 13 to 35 years' imprisonment. *Id.*

The state appellate court upheld the second jury's verdict on direct appeal. *See Lobato v. State*, case no. 49087 (Order of Affirmance, Feb. 5, 2009), attached hereto as **Exhibit B**. Thereafter, the state district court also rejected Lobato's post-conviction petition for a writ of habeas corpus. *See* Eighth Judicial District Court Findings of Fact, Conclusions of Law, and Order dated June 16, 2011.

Lobato appealed the district court's decision and the Supreme Court of Nevada ruled that denial of the petition without an evidentiary was reversible error. *See Lobato v. State*, case no58913 (Order Affirming in Part, Reversing in Part and Remanding Nov. 23, 2016).

After holding the required evidentiary hearing, the state district court concluded that writ relief was warranted because of ineffective assistance of counsel. *See* Decision and Order dated December 19, 2017, attached in part as **Exhibit C**; *see also* Minutes dated December 29, 2017, attached hereto as **Exhibit D**. Given the amount of time that had passed and other practical considerations, the State declined to retry the case for a third time. *See* Exhibit D. So, in December 2017, the State agreed to dismiss the charges with prejudice. *Id*; *see also* Complaint, ECF no. 1, at ¶ 122. Lobato was then released in January 2018. Complaint at ¶ 123.

## III. PROCEDURAL HISTORY.

On July 23, 2019, Lobato filed a Complaint (ECF no. 1) in which she asserted ten "Counts," *i.e.*, causes of action. Lobato's first cause of action entitled "42 U.S.C. § 1983 – Fifth and Fourteenth Amendments Involuntary Confession" technically consists of two interconnected claims based upon the alleged involuntary confession.[1]

Construed liberally, Count II, "42 U.S.C. §1983 – Fourteenth Amendment Due Process," includes a general due process claim as well as specific sub-claims for denial of

[1] Involuntary confessions implicate the Fifth Amendment right against self-incrimination and the Due Process Clause's protection against tactics that violate fundamental fairness. *See, e.g.*, *Dickerson v. United States*, 530 U.S. 428, 433, 120 S. Ct. 2326, 2330 (2000); *Miller v. Fenton*, 474 U.S. 104, 110, 106 S. Ct. 445, 449 (1985).





MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

fair trial due to fabrication of evidence; denial of the right to fair trial because of withholding of evidence; and failure to conduct an adequate investigation.

In Counts III through V, the Complaint alleges 42 U.S.C. § 1983 claims on the basis of alleged Fourth Amendment violations, failure to intervene, and conspiracy to deprive Lobato of her constitutional rights.

In addition to the federal claims, the Complaint includes four Nevada state law claims: malicious prosecution, abuse of process, intentional infliction of emotional distress, and civil conspiracy. Finally, Count X asserts indemnification under Nevada law.

Though not specified, it appears that all of Lobato's claims apply to the individually named LVMPD Defendants, Thomas Thowsen and James LaRochelle. Although the Complaint does not include any specific claims as to the LVMPD, it appears that Lobato seeks to hold LVMPD liable for the individual defendants on the basis of respondeat superior or indemnification for the state-law claims.

## IV. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

In considering a motion to dismiss, the Court must accept as true all material allegations in a complaint as well as reasonable inferences that may be drawn from such allegations. *See*, *e.g.*, *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000). In analyzing a complaint, however, this Court need not assume the truth of a plaintiff's legal conclusions merely because they are cast in the form of factual allegations. *See Ritzer v. Gerovicap Pharm. Corp.*, 162 F.R.D. 642, 645 (D. Nev. 1995) (citing *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Further, the Court need not assume the truth of bare assertions which amount to nothing more than a formulaic recitation of the elements of a

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

claim. *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting FRCP 8) (internal citation omitted).

Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. After all, a claimant must assert sufficient allegations so that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *See*, *e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

Finally, it bears noting that courts typically will not look beyond the four corners of the plaintiff's complaint when assessing a motion to dismiss. *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066 (N.D. Cal. 2010) ("[T]here is a general rule against referencing evidence outside the four corners of the complaint."). Courts may, however, consider documents which are incorporated by reference in the complaint or subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018) (analyzing judicial notice and incorporation by reference as relevant to a motion to dismiss). So, while the LVMPD Defendants have attached certain court

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

documents to better explain the objective procedural history of Lobato's criminal case, the documents do not necessitate FRCP 56 consideration.[2]

## V. LEGAL ARGUMENT

Partial dismissal is warranted in this case because: (A) the Complaint forces Defendants to guess as to Lobato's intended claims; (B) several claims are barred by the statute of limitations; (C) bare and conclusory claims inadequate under *Twobly* and *Iqbal*; (D) Lobato's generic due process claim and state claims for malicious prosecution and abuse of process are lacking essential elements; and (E) a *Monell* claim is unsustainable without a pattern of wrong-doing and adequate allegations.

### A. THE COMPLAINT UNFAIRLY FORCES THE LVMPD DEFENDANTS TO GUESS REGARDING LOBATO'S CLAIMS

The "short and plain" pleading requirement in FRCP 8 ensures that a complaint fairly notifies the defendants (and the Court) of the matters a plaintiff seeks to litigate. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007); *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964; *Elec. Const. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985).

In this case, it is difficult to ascertain the basis and scope of many of Lobato's claims. For example, while Lobato uses language that is common to *Monell* claims, *see, e.g.*, Complaint at ¶¶ 136-40, 150, 158, the Complaint does not actually include a *Monell* claim against LVMPD. Instead, Count X, the only explicit claim against LVMPD, seeks indemnification under unspecified Nevada law. *See id.* at ¶¶ 195-97. It is thus unclear whether LVMPD needs to address Lobato's claims in light of *Monell*, *see* Subsection V (E),

[2] Defendants have attached documents or portions of documents which reflect procedural events precisely because they do *not* intend for the Court to take evidence or notice facts that are subject to reasonable dispute. So, to the extent the documents include any facts which are subject to dispute, this Court should, at the present juncture, defer to the allegations in Lobato's Complaint. *See* Fed. R. Evid. 201(b)(1)-(2); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

*infra*, or whether it should guess at what law purportedly requires LVMPD to pay for all torts for which an employee is liable.[3]

In addition, while Lobato alleges that she was "forced" to "incriminate herself falsely and against her will," *id.* at ¶128, Lobato does not actually explain how her will was overborne. The basis for malicious prosecution is unclear when, in Lobato's own words, "Defendants Thowsen and LaRochelle, ***acting as investigators***, individually jointly, and in conspiracy with each other, and maliciously, instituted or continued the prosecution." *Id.* at ¶ 174 (emphasis added). In fact, given her reliance on allegations made "upon information and belief," it appears that even Lobato is not entirely sure what she is pleading. *See*, *e.g.*, Complaint at ¶¶ 108, 134-40, 150.

In other words, even if the Complaint is liberally construed, it is difficult to make an "educated guesses" as to the scope of Lobato's claims. This is not to say that the LVMPD Defendants or the Court actually have an obligation to search for or spell out Lobato's claims. *See*, *e.g.*, *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1484 (9th Cir. 1984) ("It is not the duty of a trial court to create a claim which the plaintiffs have not spelled out in their pleading."); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (same); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961) ("[I]t is [not] the duty of the trial court or the appellate court to create a claim which [the litigant] has not spelled out in his pleading"). But, practically speaking, it is difficult for the LVMPD Defendants to meaningfully respond to unclear, inconsistent allegations.

Accordingly, Lobato's Complaint fails at the outset because it does not "give fair notice" and "enable the opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216.

[3] In Nevada, intentional torts and independent ventures are exceptions to respondeat superior. *See*, *e.g.*, *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 391, 469 P.2d 399, 400 (1970). The State's indemnification statute is also subject to various exclusions. *See* NRS 41.0349. So, the differences between *Monell* liability, respondeat superior, and indemnification are not a matter of semantics, but a legally relevant concern.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**B. SEVERAL CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

The United States Supreme Court has held that a federal court adjudicating rights under a §1983 claim will adopt the state's personal injury statute of limitations. *See Owens v. Akure,* 488 U.S. 235, 241, 109 S. Ct. 573, 576 (1989); *Wilson v. Garcia*, 471 U.S. 276, 279, 105 S. Ct. 1938, 1949 (1985). In Nevada, the statute of limitations for personal injury actions is two years. *See* N.R.S. 11.190(4)(e); *Perez v. Seevers,* 869 F.2d 425, 426 (9th Cir. 1989) (interpreting Nevada law and applying a two year statute of limitations). So, in this jurisdiction, a plaintiff's §1983 claim(s) must be filed within two years of the date when the cause of action accrued. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014) (applying Nevada law and holding that a two-year statute of limitations applies to § 1983 claims).

"[F]ederal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). Under federal law, a claim typically accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*; *see also Bagley v. CMC Real Estate Corp*, 923 F.2d 758, 760 (9th Cir. 1991). However, if a claim ***necessarily*** implicates the validity of a plaintiff's sentence or conviction, accrual is postponed until the conviction or sentence is reversed or declared invalid by an authorized tribunal. *See Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372-73 (1994); *Wallace v. Kato*, 549 U.S. 384, 393, 127 S. Ct. 1091, 1097-98 (2007). As evidenced by the word "necessarily," the inquiry under *Heck* centers on whether a favorable outcome is essential to stating a complete, present cause of action. *See McDonough v. Smith*, 588 U.S. ____, ____, 139 S. Ct. 2149, 2157 (2019).

As for claims arising under state law, this Court simply looks to Nevada law, usually NRS Chapter 11, in order to ascertain the relevant statute of limitations. *See, e.g.*, *Shade v. Las Vegas Metro. Police Dep't*, No. 2:15-CV-01016 RFB PAL, 2017 WL 4390100, at *4 (D. Nev., Sept. 30, 2017); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 746, 100 S.

Ct. 1978, 1983 (1980) (confirming that a cause of action cannot have a longer life in the federal court than it would have had in the state court).

A claim accrues under Nevada law when "the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990). It does not appear that the Supreme Court of Nevada has published an opinion regarding the applicability of *Heck* to state law claims.[4] Nevertheless, the Court has cited to *Heck* with favor, *see* footnote 5, and it is well-established in Nevada that "[a] post-conviction petition for a writ of habeas corpus is the exclusive remedy for challenging the validity of a conviction or sentence." *Harris v. State*, 130 Nev. 435, 437, 329 P.3d 619, 621 (2014). Accordingly, the Supreme Court of Nevada probably would recognize that certain claims do not accrue until (and unless) a plaintiff secures a favorable outcome. *See, e.g.*, *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996) ("In the absence of [controlling authority], a federal court must predict how the highest state court would decide the issue") (internal quotation marks and citation omitted).

In this case, Lobato's §1983 claim based upon an alleged involuntary confession is untimely. Likewise, Lobato's third claim, which is based upon the Fourth Amendment's prohibition on unreasonable searches and seizures, is also barred by the statute of limitations. Further, under Nevada law, Lobato's claims for intentional infliction of emotional distress and abuse of process should be dismissed as time-barred.

**1. <u>Lobato's involuntary confession claim is untimely</u>**

Lobato's first claim asserts Fifth and Fourteenth Amendment violations based upon her allegedly involuntary confession to the detectives. Complaint at ¶¶ 127-42. Based on Lobato's statement of the facts, the confession occurred during the July 20, 2001 interview

[4] The Supreme Court of Nevada has addressed *Heck* in the context of §1983. *See Morgano v. Smith*, 110 Nev. 1025, 1029, 879 P.2d 735, 738 (1994). In addition, the Supreme Court of Nevada and Nevada Court of Appeals have addressed the decision in unpublished orders. *See, e.g.*, *Jensen v. Fry*, No. 63045, 2013 WL 7158249, at *1 (Nev. Dec. 16, 2013); *Braunstein v. State ex rel Eighth Jud. Dist. Court*, No. 74801, 2018 WL 5778884, at *1 (Nev. Ct. App., Oct. 15, 2018);

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

at Lobato's family home. *Id.* at ¶ 99. Lobato's "involuntary" statements were then used to her detriment during the August 9, 2001, preliminary hearing and both jury trials. *Id.* at ¶ 113, 119, 129.

To the extent Lobato's injuries are purportedly based upon coercive interrogation tactics, her claim accrued immediately upon questioning. After all, an accrual analysis "requires inquiry into what a plaintiff would need to prove in order to succeed on h[er] theory of the case." *Rosales-Martinez v. Palmer*, 753 F.3d 890, 896 (9th Cir. 2014). To prove a due process claim based upon involuntary confession, a plaintiff must demonstrate that her will was overborne under the totality of the circumstances. *See*, *e.g.*, *Doody v. Schriro*, 548 F.3d 847, 858 (9th Cir. 2008). Importantly, such claims do not require any particular use of the confession, let alone a favorable termination of criminal proceedings. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010). As such, Lobato had until July 2003 to assert a due process claim based upon the alleged involuntary confession.

As for Lobato's allegation that the involuntary confession also violated her Fifth Amendment right to freedom from self-incrimination, her cause of action accrued when the confession was actually used in a criminal proceeding. *See*, *e.g.*, *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowe*, 608 F.3d at 427. So, Lobato's Fifth Amendment claim accrued, at the latest, during the second criminal trial in October 2006.[5] Lobato then had until October 2008 to assert a claim because an outcome favorable to the plaintiff if not essential to involuntary confession claims. *See*, *e.g.*, *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) ("*Heck* applies only when there is an extant conviction and is not implicated merely by the pendency of charges.").

[5] Although the confession theoretically was a subject of discussion during the October 2017 evidentiary hearing, Lobato's post-conviction petition for habeas corpus was resolved on the basis of ineffective assistance of counsel. So, the confession was not used to make Lobato a witness against herself, but rather, was relevant to the *Strickland* considerations.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**2. Lobato's Fourth Amendment claim(s) are untimely**

In her third cause of action for "Fourth Amendment Continued Detention Without Probable Cause and Deprivation of Liberty," Lobato alleges that she was arrested and detained without probable cause. Complaint at ¶¶ 152-59.

Under established law, Fourth Amendment claims accrue on the date of the injury, that is, the day on which the plaintiff was "detained pursuant to the legal process" or subjected to an unreasonable search or seizure. *Wallace*, 549 U.S. at 397, 127 S. Ct. at 1100 ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *see also*, *e.g.*, *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1279 (9th Cir. 2017) (noting that Fourth Amendment "claims begin accruing at the time of the illegal act."); *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect, such as . . . search and seizure, are presumed to have accrued when the actions actually occur.").

Indeed, while plaintiffs frequently argue that *Heck* postpones accrual of Fourth Amendment claims, including those for false arrest and unlawful detention, the Supreme Court's recent decision in *McDonough v. Smith* confirmed that such claims "ha[ve] a life independent of an ongoing trial or putative future conviction" and may be asserted upon the alleged violation. *See* 139 S. Ct. 2159

Here, Lobato was taken into custody in July 2001. Complaint at ¶¶ 71, 75, 99. Her detention was formally pursuant to the legal process after the preliminary hearing in August 2001. *See* Exhibit A. So, under the applicable two-year statute of limitations, the deadline for asserting an unreasonable seizure claim lapsed in 2003. Thus, to the extent that Lobato asserts claims based on the Fourth Amendment's prohibition on unreasonable searches and seizures or false arrest, her claims are untimely and should be dismissed.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**3. Lobato's intentional infliction of emotional distress claim lapsed more than a decade ago**

"Nevada has a two-year statute of limitations on IIED." *Williams v. Clark Cty. Pub. Adm'r*, No. 2:09-CV-00810-RCJ, 2010 WL 4340654, at *7 (D. Nev. Oct. 26, 2010); *see also* NRS 11.190(4)(e). Like other torts, intentional infliction of emotional distress claims accrue at the time of injury. *See Las Vegas Metro. Police Dep't v. Yeghiazarian*, 129 Nev. 760, 312 P.3d 503, 509 (2013) (noting that a tort claim accrues at the time of the plaintiffs injuries).

Here, Lobato alleges that the individual defendants engaged in "extreme and outrageous" conduct that resulted in her "extreme and severe emotional distress." *See* Complaint at ¶¶ 184-88. Although Lobato does not specify *what* actions were extreme and outrageous, she incorporates the factual allegations from earlier paragraphs. So, construing the Complaint in a light favorable to Lobato, it appears that the "extreme and outrageous" conduct may include allegedly coercive questioning techniques, the conspiracy to alter witness reports, taking Lobato into custody, and, in general, the Defendants' contributions to the preliminary hearing and criminal trial.

Based on the facts asserted, the "extreme and outrageous" events took place between July 2001 (the beginning of the investigation) and October 2006 (Lobato's second trial). Because the criminal proceedings were terminated "in a manner indicative of innocence,"[6] *id.* at ¶ 155, it follows that the emotional distress injuries associated with the "wrongful conviction" also occurred during the same time period.[7]

---

[6] Ineffective assistance of counsel is very different than actual innocence. But, at this juncture, the LVMPD Defendants accept the presumption that Lobato's allegations are true. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 (9th Cir. 2000).

[7] To the extent Lobato had extreme emotional injuries after she was found guilty and sentenced, the causes of her injuries are far more varied and complex. After all, prosecuting attorneys, the State's witnesses, criminal defense counsel, twenty-four jurors, and several judicial officers all played a role in Lobato's adjudication and continued incarceration. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

So, if one assumes that the Defendants' contribution to the second trial was the latest "extreme and outrageous" act which gave rise to liability, Lobato sustained her injuries and knew of the same no later than October 2006. The statute of limitations for his IIED claim then lapsed in or around October 2008. Thus, Lobato's IIED claim should be dismissed as untimely.

**4. Lobato's abuse of process claim is untimely**

Under Nevada law, a claim for abuse of process accrues when a defendant engages in "a willful act in the use of the legal process not proper in the regular conduct of the proceeding" and does so with "an ulterior purpose." *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 356 P.3d 511, 519 (2015). *See also LaMantia v. Redisi*, 118 Nev. 27, 31, 38 P.3d 877, 880 (2002) (discussing abuse of process); *Clark v. Roblson*, 113 Nev. 949, 951, 944 P.2d 788, 789 (Nev. 1997) ("A cause of action 'accrues' when a suit may be maintained thereon.").

Here, Lobato alleges that the individual defendants exerted influence on the criminal proceedings and engaged in unspecified "willful acts in the use of the legal process which were not proper in the regular conduct of Plaintiff's criminal proceeding." Complaint at ¶ 180. Although the Lobato does little more than repeat the elements of the claim, it appears from other portions of the Complaint that the alleged abuse of process was the preliminary hearing and two criminal trials.

Once again, the alleged wrongdoing and injury occurred, at the latest, in October 2006. So, because Lobato filed her Complaint many years later, the statute of limitations bars her claim for relief. *See, e.g., Tri Water and Sewer Co. v Tahoe Reno Commercial Center, LLC*, No. 11CV00384, 2011 WL 12826279, at *2 (Nev. Dist. Ct., May 20, 2011) (citing NRS 11.190(4)(e) and applying a two-year statute of limitations).

**5. Summary**

Courts may dismiss a claim if "the running of the statute [of limitations] is apparent on the face of the complaint." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034,

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1045 (9th Cir. 2011) (internal quotation marks and brackets omitted). Here, Lobato's §1983 claims for involuntary confession and alleged Fourth Amendment violations are untimely under the facts stated in the Complaint. Likewise, Lobato's state law claims for IIED and abuse of process are also untimely. Therefore, this Court should dismiss the claims with prejudice because there is no set of facts where the claims are legally sustainable.

### C. BARE AND CONCLUSORY CLAIMS ARE INADEQUATE UNDER *TWOMBLY* AND *IQBAL*

A plaintiff cannot "unlock the doors of discovery" where she is "armed with nothing more than conclusions." *Twombly*, 550 U.S. at 575, 127 S. Ct. at 1976. Indeed, while courts no longer require the "hypertechnical, code-pleading regime of a prior era," *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950, plaintiffs are still expected to provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957) (quoting FRCP 8); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]o survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). As such, claims that are merely a recital of the elements do not suffice. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

In this case, several of Lobato's claims fail to satisfy the minimum pleading standard because she simply cites the relevant elements without explaining *how* the alleged wrong-doing occurred. For example, Lobato's §1983 claim for failure to intervene alleges "Defendants Thowsen and LaRochelle each stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." Complaint at ¶ 161. The remaining three paragraphs of this claim then state that the conduct was done with the requisite mental state, occurred within the scope of the Defendants' employment, and resulted in injury. *See id.* at 162-64. Thus, with the exception of Lobato's

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

attempt at respondeat superior liability, the claim simply mirrors the elements set forth in case law. *See United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988)); *see also Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y.2008) (citing *O'Neil* and listing the elements of failure to intervene as "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.").

Likewise, Lobato's malicious prosecution claim simply states that she incurred damages because the Defendants "maliciously[ ] instituted or continued the prosecution of Plaintiff without probable cause." *Id.* at ¶ 174, 178. Aside from the fact that prosecuting attorneys presumptively exercise independent judgment, *see*, *e.g.*, *Newman v. Cty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006), this claim fails to explain *how* the Defendants personally inserted themselves into the legal proceedings. Moreover, the bare assertion that Defendants lacked probable cause is inconsistent with the preliminary hearing bind-over and the two jury verdicts that Lobato acknowledged in her statement of facts. *See id.* at ¶¶ 117, 119. And, while Lobato's assertion of innocence is entitled to a presumption of truth at this juncture, she nevertheless fails to explain *how* the LVMPD Defendants' were malicious or why they should be liable for decisions that others made.[8]

Similarly, Lobato's claims for IIED and civil conspiracy simply cite the elements from Nevada state case law. *Compare* Complaint at ¶¶ 185-88 *with Miller v. Jones*, 114 Nev. 1291, 1299-1300, 970 P.2d 571, 577 (1998); *compare* Complaint at ¶¶ 190-94 with *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210

---

[8] "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 2695 (1979). So, the prosecutor's decision not to try the case for a third time in in ***2017*** does not alter the probable cause analysis that existed in ***2001***. *See, e.g.*, *Freeman v. Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."); *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981) ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges").

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

(1993). So, while there is no need to belabor the point, both claims lack the necessary explanation as to *how* the Defendants' conduct purportedly satisfies the elements in question.

Finally, while it is questionable if indemnification is a cause of action in the conventional sense, the claim in this case is wholly lacking because Lobato does not specify the basis upon which indemnification applies. Indeed, while the Complaint makes various references to "respondeat superior" and wrong-doing "within the scope of their [Detective Thowsen and Detective LaRochelle's] employment," the three paragraphs in Count X provide no explanation whatsoever. *See* ¶¶ 195-97.

Thus, this Court should dismiss Counts IV, VI, VIII, IX, and X of Lobato's Complaint because bare conclusions are insufficient to survive dismissal and the LVMPD Defendants should not have to incur the expense of defending against speculative claims.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### D. LOBATO'S GENERIC DUE PROCESS CLAIM, MALICIOUS PROSECUTION CLAIM, AND ABUSE OF PROCESS CLAIM LACK ESSENTIAL ELEMENTS

Dismissal is proper for "lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). Relatedly, dismissal is also proper where a plaintiff's claim lacks facts or plausible allegations to support all of the necessary legal elements. *See, e.g., Twombly*, 550 U.S. at 562, 127 S. Ct. at 1969 ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."); *Evans v. Skolnik*, No. 3:08-CV-00353-RCJVPC, 2009 WL 3763041, at *5 (D. Nev. Nov. 5, 2009) ("[T]he court grants defendants' motions to dismiss for failure to state an essential element of a § 1983 claim.")..

In this case, any generic due process claim fails to state a claim upon which relief may be granted. Due process is a broad concept that encompasses many principles and legal protections. So, in asserting a §1983 claim, a plaintiff should point to explicit textual sources of constitutional protection or legal authorities rather than generalized due process principles, *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813 (1994); *see also*

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

*Exendine v. City of Sammamish*, No. C05-436P, 2006 WL 2927726, at *4 (W.D. Wash. Oct. 11, 2006) ("The fatal defect in this aspect of [Plaintiffs'] pleading is the attempt to claim a generic substantive due process protection for constitutional rights which have more specific safeguards in place."). And, at the very least, a plaintiff must provide adequate factual details to place a defendant on notice of her case-specific claim(s). *See*, *e.g.*, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement") (internal quotation marks and citation omitted); *Yasin v. Coulter*, 449 F. App'x 687, 689 (unpublished memorandum disposition, 9th Cir. 2011) ("Generic references to 'due process' do not place a defendant sufficiently on notice").

Here, the scope of Lobato's second claim entitled "Fourteenth Amendment Due Process" is unclear. Indeed, while Lobato provided short, plain statements regarding the alleged withholding of evidence and fabrication of evidence, her reference to "fundamental canons of decency and fairness" and action that "shocks the conscience" seem to suggest that Lobato's due process claim is based upon additional issues. So, if Defendants' educated guess regarding the claim is correct, this Court should dismiss any generic due process claim(s).

Lobato's malicious prosecution is also fatally lacking important details. Under Nevada law, "[a] malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879–80 (2002). In addition, the plaintiff must demonstrate: (1) want of probable cause; (2) malice; (3) favorable termination of the criminal case; and (4) damages. *Miller v. Schnitzer*, 78 Nev. 301, 371 P.2d 824 (1962); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) ("An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence."). From the Complaint and judicially-noticeable court records, at least two elements are lacking.

First, Lobato cannot demonstrate a favorable termination of the criminal case because her criminal case was not resolved in a manner indicative of her innocence. Indeed, while the LVMPD Defendants credit (for now) Lobato's assertions that she is factually innocent, the state district court's order vacated Lobato's convictions on the sole legal basis of ineffective assistance of counsel. *See* Exhibit C. In fact, the order even specifies "this Court will not address Defendant's claims for actual innocence / new evidence." *Id.*

Second, Lobato's Complaint lacks necessary details as to how the detectives instituted or continued the prosecution of her criminal case when they "act[ed] as investigators." *See* ¶ 174. After all, Nevada adheres to the usual scheme in which prosecuting attorneys are responsible for prosecuting cases and exercising ethical judgment in doing so. *See, e.g.*, NRS Chapter 252; Nevada Rule of Professional Conduct 3.8; *see also Newman*, 457 F.3d at 993 (discussing the presumption of prosecutorial independence). So, if Defendants Thowsen and LaRochelle acted as investigators, as Lobato states, it simply does not follow that they are liable for malicious prosecution. As such, this Court should dismiss Lobato's state claim for malicious prosecution.

Finally, and on a related note, Lobato's abuse of process claim should also fail as a matter of law because the LVMPD Defendants were not responsible for prosecuting the criminal case or otherwise using the judicial process. *See Land Baron Inv.*, 131 Nev. 686, 698, 356 P.3d 511, 519 (2015) ("The utilized process must be judicial, as the tort protects the integrity of the court"). So, while the LVMPD Defendants may be the only actors in the chain of decisionmakers that are subject to §1983 liability, this Court should not allow Lobato to litigate claims that truly do not fit the Defendants' role in the case. *See Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("A police officer's lot already is unfortunate because it is he who often is the only actor in the chain of decisions leading to prosecution who is subject to section 1983 liability. We need not make it more unfortunate by holding the officer liable for damage that is the result of the intervening fault of others in the chain.").

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### E. A *MONELL* CLAIM IS UNSUSTAINABLE WITHOUT A PATTERN OF WRONG-DOING AND ADEQUATE ALLEGATIONS

The United States Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997); *see also Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2035 (1978) (holding that a municipality cannot be held liable for a constitutional violation by its employees merely because it employs the offending employee). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403, 117 S. Ct. at 1388; *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 326, 102 S. Ct. 445, 454 (1981) (confirming that a municipal policy or custom must be the "moving force" behind a constitutional violation).

*Monell* claims, like all claims, must be premised on more than "threadbare recitals of the elements" and "mere conclusory statements." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Accordingly, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police. Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010) (rejecting a plaintiff's claims where he "point[ed] [the Court] to no express county policy or custom, and [ ] provide[d] no evidence showing even an inference that such a procedure exists."); *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) ("[E]xistence of a policy, without more, is insufficient to trigger local government liability.").

Here, Lobato does not actually assert a Monell claim against LVMPD. However, several of her federal claims include allegations to the effect that the individual Defendants' alleged wrong-doing was consistent with – or a product of – LVMPD's "official policies, practices, and/or customs . . . as well as [ ] the actions of final policymaking officials for the LVMPD." Complaint at ¶ 134; *see also id.* at 150, 158. In her first cause of action, Lobato

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

also states "on information and belief" that LVMPD "made a deliberate choice not to adopt adequate policies, training, or supervision," *id.* at ¶ 135, and that LVMPD had a widespread, "de facto policy" of encouraging or ignoring serious misconduct. *Id.* at ¶¶ 136-38.

In other words, Lobato sets forth the broad elements of a *Monell* claim without providing any facts or even asserting an actual claim.

As previously noted, it is unclear if Lobato's objective is to secure indemnity or if she intended to assert a *Monell* claim against LVMPD. Regardless, isolated or sporadic events are not legally sufficient to establish improper custom or policy. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee"); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents."); *see also, e.g., Nadell v. Las Vegas Metro. Police Dep't.*, 268 F.3d 924 (9th Cir. 2001) ("[C]onsiderably more proof than the single incident will be necessary to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation."); *Meehan v. Los Angeles Cnty.*, 856 F.2d 102 (9th Cir. 1988) (finding two incidents insufficient to establish a custom).

So, even if one assumes that Lobato sustained injuries as a result of the alleged constitutional violations, the events in this single case are not sufficient to state a claim under *Monell*. Thus, this Court should dismiss any *Monell* claim against the LVMPD pursuant to FRCP 12(b)(6).

## VI. CONCLUSION

The purpose of a motion to dismiss is to eliminate claims that are untenable before the Court and the parties needlessly waste valuable resources. *See Starr*, 652 F.3d at 1216; *see also Danning v. Lum's Inc.*, 86 Nev. 868, 869, 478 P.2d 166, 167 (1970) ("[I]it is difficult to see why this basic deficiency should not be exposed at the point of minimum expenditure of time and money by the parties and the court."). Here, dismissal of the

aforementioned claims is warranted because there is no logical or legal reason to continue litigating matters that are barred by the statute of limitations or inadequately plead.

Therefore, the LVMPD Defendants respectfully request an order dismissing the following:

- Count 1 (§1983 claim on the basis of an involuntary confession);
- Any generic due process claim stated in Count II;
- Count III (§1983 claim on Fourth Amendment grounds);
- Count IV (§1983 claim for failure to intervene);
- Count VI (Nevada state claim for malicious prosecution);
- Count VII (Nevada state claim for abuse of process);
- Count VIII (Nevada state claim for intentional infliction of emotional distress);
- Count IX (Nevada state claim for civil conspiracy);
- Count X (unspecified Nevada state claim for indemnification);
- Any *Monell* claim against LVMPD;

To be clear, if the Court grants partial dismissal, the following claims / issues will remain:

- Count II (due process sub-claims for fabrication of evidence, withholding of evidence, and inadequate investigation);
- Count V (civil rights conspiracy);
- Indemnity, to the extent LVMPD is liable on other grounds for its employees' actionable conduct.

Dated this 13th day of September, 2019.

MARQUIS AURBACH COFFING

By: */s/ Craig R. Anderson*
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Kathleen A. Wilde, Esq.
Nevada Bar No. 12522
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for Las Vegas Metropolitan Police Department and James LaRochelle*

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MOTION FOR PARTIAL DISMISSAL** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 13th day of September, 2019.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

*/s/ Penny Williams*
Penny Williams, an employee of
Marquis Aurbach Coffing

# Exhibit A

# JUSTICE COURT, LAS VEGAS TOWNSHIP

## CLARK COUNTY, NEVADA

THE STATE OF NEVADA,
Plaintiff,

-vs-

KIRSTIN BLAISE LOBATO

Defendant.

Case No.01F12209X

**COMMITMENT and ORDER TO APPEAR**

An Order having been made this day by me, that Kirstin Blaise Labato

be held to answer upon the charge of Count I - Murder with Use of a Deadly Weapon (Open Murder) and Count II - Sexual Penetration of a Dead Human Body Committed in said Township and County, on or about the 8th day of July , 2001.

**IT IS FURTHER ORDERED** that the Sheriff of the County of Clark is hereby commanded to receive her into custody, and detain her until she can be legally discharged, and that she be admitted to bail in the sum of $32,000/32,000 Total Count I Dollars, and be committed to the custody of the Sheriff of said County, until such bail is given; and

**IT IS FURTHER ORDERED** that said Defendant Kirstin Blaise Lobato is commanded to appear in Department 2 of the Eighth Judicial District Court, Clark County Courthouse, Las Vegas, Nevada, at 8:30 A.M., on the 21st day of August , 2001, for arraignment and further proceedings on the within charges.

**DATED** this 9th day of August, 2001.

Justice of the Peace of Las Vegas Township

# Exhibit B

IN THE SUPREME COURT OF THE STATE OF NEVADA

KIRSTIN BLAISE LOBATO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 49087

FILED

FEB 05 2009

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of voluntary manslaughter with the use of a deadly weapon and sexual penetration of a dead human body. Eighth Judicial District Court, Clark County; Valorie Vega, Judge.

In 2002, a jury convicted appellant Kirstin Blaise Lobato of first-degree murder with the use of a deadly weapon and sexual penetration of a dead human body. On appeal, this court reversed and remanded for a new trial on all counts. Lobato v. State, 120 Nev. 512, 96 P.3d 765 (2004). Upon retrial, Lobato was convicted of voluntary manslaughter with the use of a deadly weapon, count one, and sexual penetration of a dead human body, count two. The district court sentenced Lobato on count one to a maximum of 120 months with minimum parole eligibility in 48 months, plus an equal and consecutive term for the deadly weapon enhancement; on count two to a maximum of 180 months with minimum parole eligibility in 60 months, to run consecutively with count one.

Lobato now makes multiple assignments of error regarding the second trial. On appeal, we address whether the district court abused its discretion by admitting evidence of positive initial tests for blood and if the admission of Detective Thomas Thowsen's testimony about reports of

other stabbings around the time of the murder was hearsay and violated Lobato's constitutional right to confrontation.[1] For the reasons set forth below, we conclude that Lobato's contentions fail and, therefore, affirm the judgment of conviction. The parties are familiar with the facts and we do not recount them except as necessary for our disposition.

The positive luminol tests

Lobato argues that the district court abused its discretion when it permitted the State to introduce evidence of positive luminol and phenolphthalein tests for blood when the subsequent confirmatory tests were negative. We disagree.

This court reviews a district court's decision to admit evidence for a manifest abuse of discretion. Tabish v. State, 119 Nev. 293, 310, 72 P.3d 584, 595 (2003). Pursuant to NRS 50.275, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge." That evidence must be relevant, which is defined as "evidence having any tendency to make the

[1]Lobato also argues that: (1) there was insufficient evidence to support her conviction; (2) the detective's testimony was improper opinion testimony; (3) the district court violated her constitutional rights by refusing to allow witnesses to testify about her statements; (4) the district court violated her rights by admitting inflammatory evidence; (5) the district court abused its discretion in denying her motion to dismiss, based on the State's failure to collect potentially exculpatory evidence; (6) this court should reconsider its holding as to issues raised in her first appeal; and (7) the sentence imposed by the district court violates her double jeopardy rights. We have considered these issues and conclude that each of these additional challenges fails.

existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. However, relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.035(1).

The district court properly weighed the evidence and determined it was more probative than prejudicial. The experts' specialized knowledge did assist the trier of fact to understand the evidence and determine a fact at issue. Both parties fully explored the meaning of the initial positive tests, as well as the reliability of luminol and phenolphthalein versus the confirmatory test, which were negative. Through direct and cross-examination of multiple experts the State and the defense adequately explained to the jury the significance of the initial positive results. Therefore, we conclude that it was not error for the court to allow the evidence of the initial positive tests for blood to be introduced.

Detective Thowsen's testimony

Lobato argues that Detective Thowsen's testimony regarding reports of other stabbings around the time of the murder was hearsay and violated her constitutional right to confrontation. We agree that the testimony was hearsay; however, we conclude that any error was harmless.

This court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. Atkins v. State, 112 Nev. 1122, 1127, 923 P.2d 1119, 1123 (1996). Hearsay is an out-of-court statement that is offered to prove "the truth of the matter asserted" in the statement. NRS 51.035. Hearsay is generally inadmissible at trial, unless an exception to the hearsay rule applies. NRS 51.065.

Detective Thowsen's testimony regarding the police records was hearsay. He testified that there were no reports of similar stabbings but he was not the individual who reviewed the police records. In fact, Detective Thowsen was testifying about what he had been told by his secretary and others to whom he had delegated the project. Detective Thowsen's testimony was clearly hearsay; he testified about an out-of-court statement made to him by another, and that statement was offered to prove that there were no other reports of similar stabbings. However, based on Lobato's admission, there was substantial evidence that she committed the murder. Therefore, we conclude that any error in admitting the hearsay testimony was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 21-24 (1967) (establishing that a court need not reverse a conviction if the alleged error is harmless beyond a reasonable doubt).

Additionally, Detective Thowsen's testimony regarding his conversations with urologists and medical providers was also hearsay. In this case, the hearsay was occasioned by defense counsel's questioning during cross-examination. Therefore, it was invited error and we will not reverse. See Pearson v. Pearson, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) ("The doctrine of 'invited error' embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit."); see also Taylor v. State, 109 Nev. 849, 856-57, 858 P.2d 843, 848 (1993) (Shearing, J., concurring in part and dissenting in part) (stating that the invited error doctrine establishes that ordinarily inadmissible evidence may be rendered admissible when the complaining party is the party who first broached the issue).

Finally, Lobato contends that because she was not able to confront and cross-examine the urologists and medical providers Detective Thowsen spoke to, her confrontation rights under Crawford v. Washington were violated. 541 U.S. 36, 53-59 (2004). Lobato never objected to the detective's testimony on Confrontation Clause grounds and while "'[f]ailure to object below generally precludes review by this court; however, we may address plain error and constitutional error sua sponte.'" Grey v. State, 124 Nev. ___, ___, 178 P.3d 154, 161 (2008) (quoting Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992)). This testimony was occasioned by defense counsel's questioning during cross-examination and thus was invited error. Consequently, we conclude that the admission of the detective's testimony was not plain error. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

[signature], C.J.
Hardesty

[signature], J.
Parraguirre

[signature], J.
Douglas

cc: Hon. Valorie Vega, District Judge
Special Public Defender David M. Schieck
Attorney General Catherine Cortez Masto/Carson City
Clark County District Attorney David J. Roger
Eighth District Court Clerk

# Exhibit C

Electronically Filed
12/19/2017 5:59 PM
Steven D. Grierson
CLERK OF THE COURT

DISTRICT COURT
CLARK COUNTY, NEVADA

****

STATE OF NEVADA,

Plaintiff,

v.

KIRSTIN BLAISE LOBATO

Defendant.

CASE NO.: C177394

DEPARTMENT XXIII

**DECISION & ORDER**

## I. INTRODUCTION

This matter was last before the Court from October 9, 2017 to October 13, 2017 for an evidentiary hearing pursuant to Defendant's post-conviction Petition for Writ of Habeas Corpus and the State's Response thereto. Defendant was represented by David Chesnoff, Esq., Robert Z. Demarco, Esq., Vanessa Potkin, Esq., Adnan Sultan, Esq., and Jane Pucher, Esq. The State was represented by Deputy District Attorney Sandra DiGiacomo, Esq.

Defendant's original petition set forth several claims of ineffective assistance of counsel. These claims included allegations that due to Defendant's strong alibi evidence, Defendant's counsel was deficient for failing to narrow Duran Bailey's ("Decedent") time of death. On November 23, 2016, the Nevada Supreme Court remanded Defendant's petition and concluded that Defendant "made specific factual allegations that are not belied by the record and that, if true, suggest a reasonable probability that had counsel investigated and presented expert evidence that narrowed the time of death, the jury would have had a reasonable doubt as to [Defendant's] guilt." *Supreme Court of*

STEFANY A. MILEY
DISTRICT JUDGE
DEPARTMENT TWENTY THREE
LAS VEGAS NV 89101-2408

death window and introduce a time of death when Defendant had strong alibi evidence placing her in Panaca. In addition, Defendant's counsel's failure to meaningfully consult with a forensic pathologist resulted in that pathologist not referring Defendant's counsel to a forensic entomologist. A forensic entomologist, if consulted, would have testified to the absence of blowfly colonization on Decedent's body. Which, according to the testimony elicited from multiple forensic experts, would mean that the Decedent died either shortly before or after sunset on July 8, 2001; a time of which Defendant had strong alibi evidence placing her in Panaca.

COURT FINDS, considering the totality of the evidence, had Defendant's counsel provided evidence that narrowed Decedent's time of death, it would have, within a reasonable probability, made a difference in the outcome of the trial.

Accordingly, COURT FINDS, Defendant's counsel's deficient performance prejudiced the outcome of Defendant's case.

## V. ORDER

For the foregoing reasons, COURT ORDERS, Defendant's Petition for Writ of Habeas Corpus is GRANTED.

COURT FURTHER ORDERS, Defendant's request for new trial is GRANTED.

COURT FURTHER ORDERS, as this Court has found a legal basis exists to grant Defendant's Petition for Habeas Corpus and request for a new trial, this Court will not address Defendant's claims for actual innocence/new evidence.

///

///

///

STEFANY A. MILEY
DISTRICT JUDGE

DEPARTMENT TWENTY THREE
LAS VEGAS NV 89101-2408

COURT FURTHER ORDERS, matter set for Status Check regarding Setting of Trial on January 24, 2018, at 9:30 a.m.

Dated this 19th day of December, 2017.

HONORABLE STEFANY A. MILEY
DISTRICT COURT JUDGE
DEPARTMENT XXIII

**CERTIFICATE OF SERVICE**

I hereby certify that on or about the date signed, a copy of this Decision and Order was electronically served and/or placed in the attorney's folders maintained by the Clerk of the Court and/or transmitted via facsimile and/or mailed, postage prepaid, by United States mail to the proper parties as follows: Sandra DiGiacomo, Esq., David Z. Chesnoff, Esq., Richard A. Schonfeld, Esq., Robert Z. DeMarco, Esq., Vanessa Potkin, Esq., Adnan Sultan, Esq., and Jane Pucher, Esq.

By: ______________________
Carmen Alper
Judicial Executive Assistant

# Exhibit D

Skip to Main Content Logout My Account My Cases Search Menu New District Criminal Search Refine Search Close

Location : District Court Criminal Images Help

# REGISTER OF ACTIONS

CASE NO. 01C177394

State of Nevada vs Kirstin Lobato

| | |
|---|---|
| Case Type: | Felony/Gross Misdemeanor |
| Date Filed: | 08/09/2001 |
| Location: | Department 3 |
| Cross-Reference Case Number: | C177394 |
| Defendant's Scope ID #: | 1691351 |
| ITAG Case ID: | 1922930 |
| Lower Court Case # Root: | 01F12209 |
| Lower Court Case Number: | 01F12209X |
| Supreme Court No.: | 58913<br>59147 |

## RELATED CASE INFORMATION

**Related Cases**
01F12209X (Bind Over Related Case)

## PARTY INFORMATION

**Defendant** **Lobato, Kirstin B**
6309 W Alexander Rd
Las Vegas, NV 89108
Other Agency Numbers
1691351 Scope ID Subject Identifier

**Lead Attorneys**
**Pro Se**

**Plaintiff** **State of Nevada**

**Steven B Wolfson**
702-671-2700(W)

## CHARGE INFORMATION

| Charges: Lobato, Kirstin B | Statute | Level | Date |
|---|---|---|---|
| 1. VOLUNTARY MANSLAUGHTER | 200.050 | Felony | 01/01/1900 |
| 1. DEGREES OF MURDER | 200.030 | Felony | 01/01/1900 |
| 1. USE OF A DEADLY WEAPON OR TEAR GAS IN COMMISSION OF A CRIME. | 193.165 | Felony | 01/01/1900 |
| 2. SEXUAL PENETRATION OF DEAD HUMAN BODY | 201.450 | Felony | 01/01/1900 |

## EVENTS & ORDERS OF THE COURT

12/29/2017 Hearing (11:00 AM) (Judicial Officer Gonzalez, Elizabeth)
*Hearing at Request of District Attorney's Office*

Minutes
12/29/2017 11:00 AM
- Matter heard by Chief Judge Gonzalez on behalf of Judge Herndon, Presiding Judge of the Criminal Division. Ms. DiGiacomo advised that the District Attorney's Office has made a decision regarding this case and that prior to dismissing it, the State would like to place the following on the record: this crime occurred in July 2001 and in May of 2002 Kristin Lobato was tried for open murder with use of a deadly weapon and sexual penetration of a dead human body for the brutal murder of Duran Bailey; at the conclusion of the trial, 12 jurors unanimously rejected the Defendant's alibi and found beyond a reasonable doubt that she was guilty of first degree murder with use of a deadly weapon and sexual penetration of a dead human body. On direct appeal, the Nevada Supreme Court reversed the Defendant's conviction in September 2004 due to an erroneous ruling the trial court had made. The State was not

responsible for the reversal. At the conclusion of the 2006 re-trial the Defendant was again convicted, but this time with voluntary manslaughter with use of a deadly weapon and sexual penetration of a dead human body. Once again, all 12 jurors unanimously rejected the Defendant's alibi and found beyond a reasonable doubt that Ms. Lobato was responsible for the death of Duran Bailey. In February of 2009, the conviction was affirmed on direct appeal. In May of 2010, a habeas petition was filed by the Defendant; the case was appealed and later remanded by the Nevada Supreme Court in November 2016 for an evidentiary hearing on two limited issues of ineffective assistance. After the hearing, on December 19, 2017, Judge Miley issued a decision and order which granted a new trial after a finding that defense counsel in the second trial were ineffective. Again, it must be noted that the State was in no way responsible for the reversal of the second trial. Now, the State was faced with the prospect of trying the case for the third time due to no fault of its own, 17 years after the crime occurred and also, by the time a third trial could proceed, the Defendant would be immediately eligible for parole if convicted again. Although the State believes in her guilt as well as 24 members of the community who unanimously found the Defendant guilty beyond a reasonable doubt, their limited resources are such that they are electing not to proceed with the third trial, considering that the Defendant has served more than 15 years in prison. Mr. Chesnoff moved to dismiss the entire case with prejudice. No objection by the State. COURT ORDERED, CASE DISMISSED WITH PREJUDICE. Order SIGNED and FILED IN OPEN COURT. Copies of signed order provided to the parties. Mr. Chesnoff provided the Court with the phone numbers of individuals at the Nevada Department of Corrections in order to help expedite the Defendant's release. Mr. Chesnoff also noted for the record that the Innocence Project did a lot of work on this case and the alibi would have been corroborated if the case had proceeded to trial. COURT FURTHER ORDERED, January 24, 2018 status check VACATED and CASE CLOSED. NIC CLERK'S NOTE: The Court attempted to but could not reach the individuals at the Florence McClure Women's Correctional Center whose contact information was provided by Mr. Chesnoff. The Court left a message with Ms. Carol; Michelle, the Warden's Assistant, was unavailable. / dr

Parties Present
Return to Register of Actions