**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

KIRSTIN BLAISE LOBATO,                )
                                      )    Case No. 2:19-cv-01273-RFB-EJY
         Plaintiff,                   )
                                      )
v.                                    )    Judge Richard F. Boulware, II
                                      )
LAS VEGAS METROPOLITAN POLICE         )    Magistrate Judge Elayna J. Youchah
DEPARTMENT, NEVADA, THOMAS            )
THOWSEN, and JAMES LAROCHELLE,        )
                                      )
         Defendants.                  )

# EXHIBIT 16

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

KIRSTIN BLAISE LOBATO,              )
                                    )    Case No. 2:19-cv-01273-RFB-EJY
        Plaintiff,                  )
                                    )    Judge Richard F. Boulware, II
v.                                  )
                                    )    Magistrate Judge Elayna J. Youchah
LAS VEGAS METROPOLITAN              )
POLICE DEPARTMENT, NEVADA,          )
THOMAS THOWSEN, and JAMES           )    **DECLARATION OF**
LAROCHELLE,                         )    **ALISON REDLICH**
                                    )
        Defendants.                 )

Pursuant to 28 U.S.C. § 1746, I, Alison Redlich, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1. I am over 18 years old and competent to make this declaration

2. I prepared an expert report in the above-captioned case, attached to this Declaration as an exhibit.

3. The contents of my report are true and accurate to the best of my knowledge, and the opinions offered therein are each to a reasonable degree of professional certainty. If called to testify, I would testify consistently with the opinions offered in my report.

_____                    __08/05/2021_____
Allison Redlich                            Date

1



**College of Humanities and Social Sciences**

***Department of Criminology, Law & Society***
**4400 University Drive 4F4 Fairfax, Virginia 22030**
**Phone: 703-993-8183 Fax: 703-993-8316**

February 5, 2021

David B. Owens, JD
Elizabeth Wang, JD
Loevy and Loevy

Dear Mr. Owens and Ms. Wang,

At your request, I reviewed materials relating to the case of Ms. Kirstin Blaise Lobato. The specific materials are listed in Appendix A. In Appendix B, I list the cases in which I testified at trial or deposition in the past four years

As you know, I had previously reviewed materials related to Ms. Lobato's case. I first reviewed the case in 2010, and wrote a letter to Mr. Hans Sherrer on February 10, 2010. In that letter, I stated, "it is my expert opinion that Ms. Lobato was not confessing to the murder of Mr. Bailey. Rather, she was 'confessing' to an assault in which she was the alleged victim and in which she defended herself by attempting to cut the penis of a man who was allegedly sexually assaulting her." In 2017, I conducted a more in-depth review of Ms. Lobato's case, and submitted a report on June 2, 2017 to Attorney Jane Pucher. The conclusions I reached in my letter to Mr. Sherrer and my report to Ms. Pucher has not changed. This report is an update to my 2017 report, to reflect new materials reviewed specific to this case, or to science of false confessions. My ultimate conclusion, which has not changed over the past 11 years, is that Ms. Lobato did not confess to the crime in which she was charged, convicted, and for which was ultimately reversed and dismissed.

## I. Qualifications

I am a full professor in the Department of Criminology, Law and Society at George Mason University and currently the President of the American Psychology-Law Society, which is a Division of the American Psychological Association (APA). I received my doctoral degree from the University of California, Davis in Developmental Psychology, with a focus on psychology and law. I am a recognized expert in the area of police interviewing and interrogation practices, false confessions and miscarriages of justice. For more than two decades, I have conducted research on and written extensively about the psychology of police interrogation, the causes and consequences of police-induced confessions, and techniques that can lead to both true and false confessions. In this time, I have researched, written and published numerous peer-reviewed articles on interrogation and confession in scientific journals and in scholarly books, as well as giving invited presentations at national conferences. I am one of six experts who authored a scientific consensus paper on police interrogations and false confessions for the American Psychology Law Society, and co-edited two volumes on international interview and interrogation practices. I have received funding from multiple granting agencies, including the Federal Bureau of Investigation, to support my research on interrogation. My curriculum vita is attached as Appendix C.

1

## II. The Psychology of Police Interrogation and False Confession

I do not believe that Ms. Lobato's statement is a false confession in the traditional sense, meaning that she did not knowingly (or arguably even unknowingly) confess to the murder of Mr. Bailey. Rather, as Ms. Lobato contends, I believe that she was discussing an assault in which she defended herself. In her 2020 deposition, Ms. Lobato makes clear that she told many people close to the time of the incident in 2001 because she was proud of herself for defending against the assault. Nonetheless, there is pertinent science on police interrogation techniques that I review in this section. In addition, it is important to acknowledge that the state characterized Ms. Lobato's statements as a confession; the Supreme Court of Nevada acknowledges that Lobato's statements likely "had the greatest influence on the jury's verdict."

1. Many wrongful convictions have been documented in the U.S. As of today (January 29, 2021), the National Registry of Exonerations lists 2,721 official exonerations of persons wrongly convicted. The Innocence Project New York, via DNA analysis, has helped to free more than 350 people who have been wrongfully convicted. Up to 28% of these cases involve false admissions. Because of these realized and proven miscarriages of justice, the amount of research conducted on false confessions in the past 25 years has burgeoned and findings are generally accepted among scientists. Several comprehensive reviews and edited volumes have been published, including (but not limited to) Gudjonsson (2003; 2018); Kassin (2005; 2012; 2017); Kassin & Gudjonsson (2004); Lassiter (2004); Lassiter & Meissner (2010); and Leo (2008). Of note, the American Psychology-Law Society, Division 41 of the American Psychological Association (APA), has sponsored and approved a scientific consensus paper on police interrogations and confessions (Kassin, Drizin, Grisso, Gudjonsson, Leo, & Redlich, 2010). The APA has also authored eight amicus briefs on false confessions, in which the agreed-upon science on this topic is reviewed. And lastly, a survey of police interrogation experts revealed high levels of consensus (Kassin, Redlich, Alceste, & Luke, 2018).

2. Three main types of false confessions have been identified: 1) Voluntary; 2) Compliant; and 3) Internalized. Voluntary false confessions are those that are offered without coercion and on the person's own volition. Quintessential examples are persons who falsely confess to gain infamy or to protect friends or family (the true perpetrators). Compliant false confessions (also called coerced compliant) are the most commonly identified and studied. These occur when the suspect's will is overborne and in order to escape an unbearable and stressful situation, the person provides a false confession. Most false confession DNA-exoneration cases are considered this kind. The final false confession type, Internalized, also involves the person's will being overborne and through manipulative interrogation techniques, the person comes to temporarily believe that s/he actually committed the crime. The person internalizes culpability for the crime.

3. There are several situational (characteristics associated with the interrogation itself and interrogative techniques) and dispositional (characteristics associated with the suspect) factors that have been identified as rationales behind false confessions. The two dispositional factors most often cited are juvenile status and mental impairment, in which intellectual disability and mental illness are collapsed. In understanding why a person would confess to a crime (and often time, a serious or heinous crime) he or she did not commit, it is important to consider both situational and dispositional risk factors.

*Police Interrogation Techniques: Situational Risk Factors*

4. The ultimate goal of interrogating suspected criminals is to gain a confession (Inbau, Reid, Buckley, & Jayne, 2013).  Establishing psychological control is a critical element toward that end. Beginning in the 1930s,

2

U.S. police interrogative procedures changed from a use of physical intimidation to a more sophisticated use of psychological persuasion. Sociologist and renowned police interrogation expert, Dr. Richard Leo, in his analysis of 500+ hours of observed interrogation, likened police questioning to a confidence game, in which detectives "cultivate" and "con" suspects into admitting guilt. He wrote that "[C]ontemporary interrogation strategies are based on the manipulation and betrayal of trust" (p. 284, Leo, 1996; see also, Leo, 2008).

5. The most widely used set of interrogation tactics are referred to as the "Reid Technique" (explicitly mentioned in *Miranda v. Arizona*). Originally developed in 1947, the Reid Technique training manual, which is considered to be the "bible" of police interrogation, is now in its fifth edition (Inbau, Reid, et al., 2013). The Reid Technique involves 9 steps, in which Step 1 is Positive Confrontation (assertion of guilt by the interrogator) and Step 9 is the conversion of an oral confession into a written one. Other police interrogation training manuals and recommended techniques are derived from, or look similar to, the Reid Technique. More specifically, modern-day US police interrogation techniques are psychologically based and labeled as accusatorial models (Meissner, Redlich, et al., 2014).

6. Prior to an interrogation, however, a Behavioral Analysis Interview (BAI) is conducted. The purpose of the BAI is to determine if the person of interest is deceptive and therefore guilty. The BAI relies on evaluations of verbal responses, non-verbal behaviors (sweating, fidgeting, or dry mouth) and paralinguistic patterns (hesitant speech, response latency) to detect deception. However, more than three decades of research on deception detection (for a review, see Bond & DePaulo, 2006) has produced a clear, consistent, and unequivocal pattern of findings: 1) there is *no one behavioral cue* that is definitively indicative of deception, and 2) people (including and especially law enforcement) perform *no better than chance* at detecting deception.

The importance of the BAI cannot be understated. If the suspect is deemed to be deceptive, a guilt-presumptive interrogation takes place; if the suspect is deemed to be a truth-teller, he or she is let go. Because of this presumption of guilt, the risk of confirmation bias and tunnel vision are high.

7. An important part of police questioning is Theme Development, which is Step 2 in the 9-step Reid technique. Themes, or minimization techniques, are a "moral excuse" for the suspect's commission of the crime (see p. 232, Inbau et al., 2001). Interrogators develop scenarios of how or why the person committed the crime. These scenarios usually offer the suspect a morally acceptable way out, such as an accident scenario (the act was unintentional), justifiable (stealing to feed one's family), or beyond the person's control. This theme is used throughout the interrogation to achieve the ultimate goal of confession. Minimization techniques are extremely common in the questioning of suspects (Redlich, Kulish, & Steadman, 2011).

8. Modern-day US interrogation methods are quite effective. That is, police interrogation methods "work" (i.e., generate confessions). The majority of suspects (approximately 65%) confess.

However, these same methods can also "work" on innocent persons (false confessions). A meta-analysis of false confession studies determined that Reid-like techniques (accusatorial model) increase the likelihood of both true and false confessions (Meissner, Redlich, et al., 2014). The methods used to distinguish between guilty and innocent suspects are inadequate and unreliable. Thus, when employed on innocent suspects, otherwise effective interrogation techniques become ineffective and dangerous. The potential for danger increases when modern-day interrogation techniques are used on innocent suspects with vulnerabilities. In this updated report, I focus on young age, drug use, and mental illness. In Ms. Lobato's deposition in June 2020, she discusses her 2008 diagnosis of bipolar disorder. Although the diagnosis of this disorder came after the 2001 interrogation, it is quite possible that Ms. Lobato suffered from this illness (and likely suffered untreated

3

as it was not officially diagnosed) at the time of the interrogation. Indeed, Ms. Lobato claims that she struggled with depression (a main facet of bipolar disorder) for many years, and had attempted to commit suicide at age 13 years. It is also clear that Ms. Lobato was depressed as she informed her doctor close to the time of the interrogation and was prescribed medication.

*Vulnerable Suspects and Police Interrogation: Dispositional Risk Factors*

There is much evidence to support that persons with vulnerabilities, including youth and drug users, are at risk for false confession. For example, persons of young age are overrepresented in studies of official exonerations and proven false confessions (see Drizin & Leo, 2004; Gross et al., 2005; Kassin et al., 2010). Ms. Lobato was 18 (i.e., a late adolescent) at the time of her interrogation. Although she would not be considered a juvenile according to the bright line established in our legal system, as I explain below, it has been well-established that neurological, social, and emotional development extends well into the 20s. Indeed, the World Health Organization and the United Nations define youth as those between the ages of 15 and 24 years. Thus, in this section, I primarily describe the scientific research on youth and false admissions.

9. Young suspects are at risk for involuntary and false confessions in the interrogation room (for reviews see Cleary, 2017; Drizin & Colgan, 2004; Owens-Kostelnik, Reppucci, & Meyer, 2006; Redlich & Drizin, 2007; Redlich & Kassin, 2009). Highlighted cases, such as the Central Park Jogger case (Kassin, 2002), have demonstrated the risks of combining young age, and all of the qualities that associate with young age (e.g., suggestibility, heightened obedience to authority, immature decision-making abilities), and the current-day, psychologically oriented interrogation tactics reviewed above.

10. The past century of developmental science has compellingly demonstrated that infants, children, adolescents, young adults, and adults differ in significant and qualitative ways. It has been well-established that adolescents are psychosocially less mature than adults. This immaturity manifests in impulsive decision-making, decreased ability to consider long-term consequences, engagement in risky behaviors, and increased susceptibility to negative influences (for a review, see Steinberg & Morris, 2001). As laid out by Steinberg (2005), Late Adolescence (i.e., 18-20 years) is a period in which the frontal lobes continue to mature, facilitating regulatory competence and executive functioning (see Steinberg, 2005, p. 70). A report from the National Academy of Sciences (Bonnie, Stroud, & Briener, 2014) labeled young adulthood (i.e., ages 18 to 26 years) as a "critical developmental period," recommending that this developmental period be viewed as "a critical window of development and occasion for intervention," similar to earlier periods in the life course (p. 2). Findings from recent neurological studies of adolescents' and young adults' brains converge with the behavioral evidence collected over the past century. Similar to what the advancement of DNA technology has done for the uncovering of miscarriages of justice, advancements in MRI technology has uncovered developmental neurological differences across the span of adolescence into young adulthood that confirm findings from behavioral studies. Specifically, studies have found continued growth and development in the limbic system (emotion regulation) and in the prefrontal cortex (planning and self-control) with gray matter thinning and white matter increasing (see Steinberg, 2005, 2007) through age 20 to 25 years. Both of these systems/regions have important implications for decision-making, communication, and cognition in interrogative situations. For example, immaturities in the ability to consider the long-term consequences can serve to increase the likelihood of false confession.

It is now clear to scientists that the human brain continues to develop through age 25 years and beyond. For example, Sowell (2001) in studying individuals aged 7 to 30 years, found pronounced brain maturational processes post-adolescence. Evidence demonstrates that the frontal lobes, which control planning,

4

organization, and working memory, is one of the last areas of the brain to fully develop. As described by the American Medical Association and the American Academy of Child and Adolescent Psychiatry in a joint amicus brief to the US Supreme Court, "pruning of excess connections [in the brain] leads to greater efficiency and strengthening of the ability for complex information processing that support consistent exercise of good judgment." Insofar as false confessions reflect poor decision-making, persons well into their 20s remain at risk. The developmental capabilities and limitations of adolescents and young adults are highly relevant to the interrogation situation. This heightened vulnerability of young people is not exclusive to negative influences and peers, but extends to authority figures and suggestive questioning (Gudjonsson, 2003, 2018).

11. Another commonly recognized risk factor for false confession is substance abuse problems, either because the suspect is intoxicated at the time of the interrogation, or is experiencing withdrawal symptoms (Gudjonsson, 2003). As stated by Davis and O'Donohue (2003), "Substance intoxication may result in cognitive impairments that can be associated with false confessions. Moreover, the withdrawal symptoms of some substance abuse disorders can be severe and could motivate an individual to falsely confess in an attempt to gain access to the substance and escape from the withdrawal symptoms."

Substance use, especially prolonged use, can also increase the likelihood of suspects accepting scenarios they do not remember. Indeed, the Inbau, Reid, et al. (2013) interrogation manual recommends using the suspects' alcohol or drug addiction as the motivating factor behind the crime in order to make the crime less reprehensible in the offender's mind (see pg. 215). In my experience, blaming crimes on suspects' alcohol/drug problems is a common theme used by police interrogators. In her 2020 deposition, Ms. Lobato claims that her drug use began at age 13 years.

12. Mental illness is another commonly recognized risk factor for false confession. In regard to mental illness, serious mental illness usually refers to three diagnoses: 1) schizo-spectrum and psychotic diagnoses, such as schizophrenia and schizo-affective disorders; 2) bi-polar disorder; and 3) major depression. Persons with these disorders may experience delusions, hallucinations, disorganized speech, and feelings of grandiosity, mania, confusion, and intense depression. There are also 'negative symptoms,' such as flat affect associated with these disorders that can be less apparent to the untrained eye. Davis and O'Donohue (2003) state, "Depression can be associated with fatigue, problems in concentrating, inappropriate guilt, indecisiveness, and a foreshortened sense of the future than can give rise to false confessions. The manic episodes found in bipolar disorders can be associated with grandiosity, pressure to keep talking, flight of ideas, distractibility, and false beliefs that can be associated with false confessions."

13. Most police interrogators do not receive training surrounding mental illness and/or how to question this population. In the Inbau, Reid, et al. (2013) interrogation training manual, the authors recommend proceeding cautiously and offer the below advice:

> A suspect with legitimate mental disabilities generally lacks assertiveness and experiences diminished self-confidence. In many cases he will have a heightened respect for authority and experience inappropriate self-doubt. Each of these traits, *if actually present*, may make the suspect more susceptible to offering a false admission when exposed to active persuasion. On the other hand, such suspects are not skilled or confident liars and will often reveal the truth through the interviewing process. (p. 354; emphasis present in text)

In other words, Inbau, Reid, et al. contend that a false confession from a person with a mental illness will be readily apparent as such. However, there are proven false confession cases that contradict this, such as the case

5

of Eddie Joe Lloyd, a person diagnosed with bipolar disorder who was interrogated in a state mental hospital and who spent 17 years wrongfully imprisoned. Moreover, if the police cannot recognize mental illness, this advice is ineffectual.

14. Research studies examining the legal capacities of persons with mental illness provide further evidence of their diminished capacity in interrogation settings. For example, Rogers and colleagues (2007) examined Miranda comprehension and concluded: "A basic but crucial finding was that mentally disordered defendants in the current study had widespread difficulties in understanding all but the simplest warnings" (p. 414).

15. In research by colleagues and I (Redlich, Kulish, & Steadman, 2011), we compared interrogations resulting in true versus false confessions among offenders with serious mental illness. We found that 'false confessors' reported feeling significantly more afraid, frightened of the police, and pressured and bullied by the police, compared to 'true confessors.' In addition, false confessors were significantly more likely to believe that they would be allowed to go home after confessing, and report feeling confused during police questioning.

16. In a memo posted on their website, John E. Reid and Associates acknowledge that juveniles and persons with mental impairments are vulnerable to false confession. In this written memorandum, they state:

> Every interrogator must exercise extreme caution and care when interviewing or interrogating a juvenile or a person who is mentally or psychologically impaired. Certainly these individuals can and do commit very serious crimes. But when a juvenile or person who is mentally or psychologically impaired confesses, the investigator should exercise extreme diligence in establishing the accuracy of such a statement through subsequent corroboration. In these situations it is imperative that interrogators do not reveal details of the crime so that they can use the disclosure of such information by the suspect as verification of the confession's authenticity (see https://reid.com/resources/investigator-tips).

17. Other countries that have had problems with false confessions have instituted special procedures for youth and persons with mental impairments. For example, the United Kingdom enacted the Police and Criminal Evidence Act (PACE), which mandated that psychologically vulnerable suspects (i.e., juveniles and mentally disordered/handicapped persons), may only be interviewed by the police within the presence of an "appropriate adult." The reasoning behind the PACE mandate is that persons at risk "may without knowing or wishing to do so, be particularly prone in certain circumstances to provide information which is unreliable, misleading, or self-incriminating" (Home Office, 1995).

### III. Kirstin Blaise Lobato Case

Ms. Lobato was interrogated by two detectives (Thowsen and LaRochelle) in her home on July 20, 2001. We do not have a complete record of this interrogation. While the recorded portion of the interrogation was 25 minutes and 10 seconds, it is clear (and undisputed) that lengthy questioning between Ms. Lobato and the two detectives was held before the audio recorder was turned on.

From the materials I reviewed, it would appear that the police had no viable leads on suspects in the Bailey murder, until they received a call from Laura Linn Johnson on July 20, 2001. In fact, the prosecutor in his opening statement says, "The police really didn't have much to go on. They really didn't. They didn't have a suspect." In his 2020 deposition, LaRochelle acknowledges that there were no other suspects before they heard of Ms. Lobato.

6

**Laura Linn Johnson interview.** Detective Thowsen first has an unrecorded phone conversation with Ms. Johnson. Then, based on what she tells him, he and LaRochelle travel to Lincoln County to interview her in person. During the recorded 15-minute conversation, Ms. Johnson tells the police about a conversation she had with Dixie Tienken either on July 11th or July 18th (there is much confusion about when this conversation was held). Ms. Johnson reports that Ms. Tienken told her that "she [Ms. Lobato] said that a guy had just, uh, Blaise was coming out of a strip club where she worked in Las Vegas and a man attacked her and he had his, uh, penis hanging out of his pants and Dixie stated to me that, uh, Blaise cut it off." Later the police ask Ms. Johnson if Ms. Tienken reported when the incident had occurred. Ms. Johnson's response is, "it kinda sounded to me like it was just within the last few weeks. Maybe maybe even days." The police ask Ms. Johnson several questions that she does not know the answer to. The police also ask Ms. Johnson if she knew of any past traumatic events in Ms. Lobato's life, and Ms. Johnson discloses to the two officers that Ms. Lobato had been sexually abused as a child.

It would then appear that the police take this brief, third-hand, hearsay account and immediately question Ms. Lobato, the same day as talking to Ms. Johnson. Before discussing this interrogation of Ms. Lobato, I discuss the police interview with Ms. Tienken.

**Dixie Tienken interview.** Six days after questioning Ms. Lobato and Ms. Johnson, the police interview Ms. Dixie Tienken. This interview takes place up to 2 weeks after Ms. Tienken and Ms. Lobato spoke. Ms. Tienken's interview—as well as her trial testimony given on Sept. 14, 2006—is replete with speculations and qualifiers (e.g., "I got the impression that"; "She could have…"). Ms. Tienken uses the word 'assume' three times ("I would assume that it [the knife] was probably in her pocket"). In response, the police have to remind Ms. Tienken not to assume but to "go with whatever you can remember she told you." In addition, Ms. Tienken characterizes the conversation with Ms. Johnson as a possible tall tale which she was not sure was the truth, and that Ms. Lobato has a "way of coloring her stories." This latter statement was said specifically in regard to whether the penis of the attacker was actually cut *off*, as opposed to just cut. In addition, I note here that Ms. Lobato, in her trial testimony, swore she did not to tell Ms. Tienken that she severed the penis.

Unfortunately, the police interview of Ms. Tienken is after Ms. Lobato's interrogation and arrest, and thus Ms. Tienken's statements may be colored by her knowledge of the arrest. It is also unfortunate that the police did not interview Ms. Tienken prior to interrogating Ms. Lobato to confirm the hearsay statements. Whether Ms. Tienken's qualifiers and lack of some details would have altered the questioning of Ms. Lobato will remain unknown.

**Kristin Blaise Lobato interrogation.** The fact of Thowsen and LaRochelle talking to Ms. Johnson (and not talking to Ms. Tienken) on the same day as interrogating Ms. Lobato provides important context. Despite obvious differences between the murder of Mr. Bailey (e.g., the location, and time), it appears that Thowsen and LaRochelle never questioned, considered, or investigated the fact that Ms. Lobato was not involved in the murder of Mr. Bailey, a fact that continued even when they learned additional information (such as talking to Ms. Tienken) that should have, at minimum, raised strong doubts as to Ms. Lobato's involvement in the murder of Mr. Bailey. They never viewed Ms. Lobato as the victim, or even potential victim, of a heinous sexual assault. In both LaRochelle's and Thowsen's 2020 depositions, they acknowledge that they went to Ms. Lobato's house viewing her as the suspect in the Bailey murder. Further, I opine that this confirmatory bias stemmed from their conversation earlier in the day with Ms. Johnson, which again, can be viewed as unreliable and unverified hearsay information. Indeed, the detectives' conduct during the interrogation evidences an

intent to confirm their theory of Ms. Lobato's guilt and to manipulate her statement to fit the facts of the Duran Bailey homicide, despite the numerous inconsistencies between her statement and the murder.

Another important context is that throughout this 25-minute exchange Ms. Lobato is extremely upset and claims to not remember much of the event. She is crying throughout much of the interview and also claims to be nauseous (feeling like she will throw up). Ms. Lobato also says "I don't know" or "I don't remember" approximately 27 times. She also claims that she was awake for 3 days prior to the attack on her and that she was out of her mind on drugs (methamphetamine, specifically). It also came out, through the testimony of Detective Thowsen, that Ms. Lobato had been prescribed Prozac and possibly Lorazepam (which were prescribed for depression) and that Ms. Lobato asked to take her medicine sometime after the questioning had ended (on the way from Panaca to Las Vegas after her arrest).

In her trial testimony, Ms. Lobato discusses how she first had to tell her story of the attack before the recorder was turned on, and then once again when the recording began. Detective Thowsen, in his trial testimony, also admits, that immediately after introducing himself, he said to her "I knew that she'd been hurt in the past and with that she began to sob and lowered her head." Thus, it is undisputed that at the onset of her questioning, the police raise her past history of trauma, which is likely to have played a significant role in Ms. Lobato's suggestibility. In addition, as made clear by both LaRochelle and Thowsen in their 2020 depositions, the detectives' theory is that Ms. Lobato's past history of sexual abuse triggered some kind of traumatic reaction that resulted in overkill. Thowsen opines that the killer of Bailey had "severe rage" (p. 31). It is notable that the detectives are the ones to suggest this theory to Ms. Lobato at the end of her interrogation (that is after she told her version of the events). Specifically, on pg. 21 of Lobato's interrogation transcript, one of the Detectives states, "You mentioned that when you went to cut him that you completely lost it, is there anything about your past that made you particularly emotional about the situation?" However, Ms. Lobato never says that she "lost it" or describes anything like this. She does say that she takes her butterfly knife out of her pocket and "just grabbed it out and everything goes black from then on. I really don't remember a lot." (p. 5). Although they suggest to Ms. Lobato this possibility, Ms. Lobato's account of the event is not one of a vicious, frenzied attack, and her account is wholly inconsistent with the autopsy results (e.g., cuts post-mortem, cuts to the anus), the detectives proceeded in assuming Lobato's guilt (as Reid teaches) of an entirely different crime Troublingly, although LaRochelle claims that Ms. Lobato said she "snapped" while the recorder was off and that he put this word in quotes in the officer report, this same language does not appear in the arrest report description. The officers' report was also written on August 22, 2001, more than a month after the interrogation.

In her 2020 deposition, Ms. Lobato also makes clear that she felt the two detectives were suggesting and implying answers to her. For example, on p. 137, she states, "I felt like they [the detectives] were going a certain direction. So like maybe they were implying what the answer was." Another example occurs on pg. 148 where Ms. Lobato claims that the detectives implied answers to her about cutting off the penis (see also p. 168). Similarly, Ms. Lobato claims that the detectives made her second guess herself via their implied questioning. And lastly, on p. 222, Ms. Lobato relates how she trusted the two detectives in response to a question about the detectives' questions with implied answers.

In my expert opinion, I believe that Ms. Lobato's high emotions (being very upset) and her lack of memory, which may be due to prolonged drug use and potentially a lengthy period from the event in question, contributed to her being quite vulnerable to the detectives' tactics and more likely to acquiesce in the scenario of events created by the officers (and that was created despite evidence to the contrary). It is my opinion that Ms. Lobato succumbed to the authority of the two detectives and it did not occur to her that she and Thowsen

and LaRochelle were discussing two separate incidents. Indeed, Ms. Lobato claims that she did not know she was arrested for the murder of Mr. Bailey until one week later. In so doing, the detectives asked leading questions, such as questions about jewelry, the dumpster, moving the body, and hitting the attacker, which is a common form of contamination seen in false confession literature whereby the police supply the narrative events, rather than the suspect.

**Shared Commonalities with Proven False Confession Cases**
Many commonalities in false confession cases have been noted. In a now seminal article published in the North Carolina Law Review, Professors Steven Drizin and Richard Leo (2004) documented and analyzed 125 *proven* false confessions. Although again Ms. Lobato's statements do not typify a false confession, her case shares some of these known commonalities.

First is confirmation bias on the part of the police. Most, if not all, proven false confession cases, demonstrate confirmation bias, or tunnel vision, by the investigators. *Confirmation bias*, a widely accepted and researched psychological phenomenon, occurs when information that is consistent with one's hypothesis or expectations is given credence, whereas information that is inconsistent is discounted, ignored, or actively re-interpreted to be consistent with the hypothesis. In false confession cases this often manifests in a sole focus on one suspect, whereas evidence that implicates other suspects is not pursued. In Ms. Lobato's case, there is significant evidence of inconsistencies with the police version of events (i.e., that Mr. Bailey was killed on or around July 8, 2001) that appear to have been discounted, ignored, or reinterpreted. Many of the inconsistencies, which have been documented elsewhere extensively, relate to the timing and location of the event (as well as related events, such as the towing of Ms. Lobato's car from her former boyfriend's house). For example, in her interrogation, Ms. Lobato describes telling someone (Nita, Mumblina) of the attack more than a month earlier, which would place the event much earlier than July 8, 2001 (the estimated date of Mr. Bailey's death).

In his trial testimony (and in his recent deposition), Detective Thowsen writes off these inconsistencies as a suspect minimizing involvement and "jumbl[ing] things together" and "not uncommon for them [suspects] not to be able to remember certain things and to remember things strangely sometimes." In his 2020 deposition, Thowsen (as well as LaRochelle) continues to believe that Ms. Lobato minimized her actions. When asked for examples of how Lobato minimized, Thowsen cites the location, and claims of throwing the knife and clothes as evidence of Lobato minimizing. Consistent with the phenomenon of confirmation bias, Detective Thowsen reinterprets these inconsistencies to make them fit with his hypothesis that Ms. Lobato killed Mr. Bailey. However, it is also possible that these inconsistencies are present because Ms. Lobato did not commit the crime in question. That is, for example, that Ms. Lobato described the correct location of the attempted sexual assault on her, and not the incorrect location of the crime against Bailey. Detective Thowsen also provides that Ms. Lobato's claims of cutting the attacker's penis and the inconsistent autopsy report information (that the penis was severed post-mortem) is an example of her minimizing. However, a more plausible minimization would be to claim that she cut the penis off after death, not before.  In essence, the details provided by Ms. Lobato that do not fit the detectives' theory of the crime and/or evidence are given as examples by both detectives as Ms. Lobato minimizing, not being honest, or being confused because of the methamphetamines. Further, when asked pointedly if he ever considered the possibility that Ms. Lobato was sexually assaulted by someone other than Bailey, Thowsen says that he had not (p. 278, 2020 Thowsen deposition).

Further, suspects minimizing involvement can be common, but it is important to recognize that 1) the minimization most often, in my experience, derives from the police and not the suspect (via the Reid Step 2, Theme Development, discussed above), and 2) false confessions also contain minimization. Minimizing involvement cannot and should not be used to distinguish between true and false confessions.

9

Second, an examination of false confession statements themselves is quite informative. If the entire interrogation is recorded, it is often possible to determine the source of the information (the suspect, the police, media reports, photos/other forensic evidence). The confession statements (either in the verbatim transcript or in a summarized form) often contain statements that are inconsistent with other statements and inconsistent with the forensic evidence. As mentioned, there are a large number of inconsistencies in Ms. Lobato's case which have been documented numerous times.

Third, because of a lack of true knowledge about the crime, false confession statements do not include any information that is not already known to the police, and are not generative in that the police do not uncover new evidence from the confession statement. To my knowledge, Ms. Lobato's statements to the police did not lead to any new evidence unbeknownst to the police.

Fourth, in false confession cases, there is may be no other evidence linking the suspect to the crime except the false confession statement. Similarly, in some of these cases, there is an absence of evidence that is inconsistent with the commission of the crime and/or the confession statements. In the remainder of the cases, in which there appears to credible evidence in addition to the (false) confession, there is scientific support that the confession tainted the production and interpretation of the other evidence (e.g., eyewitness ids, forensic evidence, jailhouse informant testimony). More specifically, Kassin, Bogart, and Kerner (2012) found that in the 46 proven wrongful conviction cases that had multiple errors, 65% of the cases had the error of a false confession first. My understanding was that the crime scene in which Mr. Bailey was found was "rich with evidence," and none of it implicates Ms. Lobato. That is, for example, there are no DNA matches and the shoe print found at the scene does not match with her shoe (rather it was determined to be a man's print, size 9).

Fifth, false confessions often appear credible on their face. Appelby, Hasel, and Kassin (2013) performed a content analysis of 20 proven false confessions. All of them included details about time, location, visual aspects, and references to the victim and his/her behavior. Moreover, 85% included the suspects' own reflections, 80% the suspects' motives, 40% included suspect statements of remorse, and 25% included explicit apologies. Garrett (2011) found similar results with Innocence Project false confessors, in an article published in the *Stanford Law Review*.

Sixth, in some false confession cases, the confession itself was recorded, but not the interrogation leading up to the confession. Confession statements are highly scripted events and often represent the pre-rehearsed summary of events agreed upon by the suspect and the police (or in the case of false confessions, events representing the police's theory). Given that the capacity to record interactions was clearly present, I note the questionable and proscribed practice of interrogating and then only recording the 'confession.' Detective Thowsen admitted in his trial testimony that this was his standard practice. Thus, another issue to consider in this case is what was said to Ms. Lobato before the tape was turned on and whether and how this unrecorded conversation impacted her recorded statements. Without having a recording of these prior statements, we will never know.

Seventh, as mentioned, there are dispositional risk factors known to increase the risk of false confessions. Ms. Lobato has three well-established ones: youthful status (was 18 years at the time of the interrogation); mental illness (depression and bi-polar disorder), and drug use/abuse (began using drugs at the age of 13 years).

Finally, I note here that both Detectives LaRochelle and Thowsen attended Reid trainings and are Reid certified. LaRochelle attended a Reid training in Feb. 2001, about five months before the interrogation with

10

Lobato. When asked to describe what he learned in the Reid training, LaRochelle stated that he learned the goal was to obtain a confession (or statements leading to a confession) and described a confrontational, guilt-presumptive approach, which is consistent with the Reid method. As noted, Reid in particular, has been criticized for interrogation methods that can lead to false confessions. This includes relying on unreliable indicators of supposed deception (such as pushing back in chair, crossing their arms; see LaRochelle deposition, pp. 20-21; Thowsen deposition, p. 83). Perhaps because the stated purpose is to obtain a confession, LaRochelle further describes the Reid method as continuing to interview aggressively when the suspect denies involvement in the crime.

In his 2020 deposition, Detective Thowsen essentially states that he does not believe in false confessions. On p. 232, he claims that an innocent person would deny killing someone, regardless of what techniques were used. However, we know that sometimes innocent people do falsely confess, even to murders. And specific to this case, Ms. Lobato did not confess to killing Duran Bailey, but rather "confessed" to defending herself during a sexual assault.

In sum, over 11 years and the review of numerous materials specific to this case, my opinion on whether Ms. Lobato confessed to killing Duran Bailey has not changed. In my expert opinion, the detectives in this case suffered from tunnel vision/confirmatory biases, which led to an exclusive focus on Ms. Lobato, despite numerous and glaring inconsistencies in the attack she described and the facts of the Duran Bailey homicide, and led them to write reports, suggest theories, and document a version of events did not, in fact, happen. If you need further information, please do not hesitate to contact me (aredlich@gmu.edu or 703-993-5835).

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), the rate of compensation for my review and report-writing in this case is $300 per hour.

Sincerely,

Allison D. Redlich, Ph.D.
Professor

11

**Appendix A**

Materials reviewed by Dr. Allison Redlich in January 2021

1. The deposition with retired Detective Thomas Thowsen
2. The deposition with retired Detective James LaRochelle
3. The deposition of Kristen Blaise Lobato
4. Training Certificates of Detectives Thowsen and LaRochelle
5. The transcript of Ms. Lobato's Statement of July 20, 2001.
6. LVMPD Training on Interviewing Techniques and Deception Detection (2009)
7. Officers Report

Materials reviewed previously by Dr. Allison Redlich from March to April, 2017

1. The transcript of Ms. Lobato's Statement of July 20, 2001.
2. The audio of Ms. Lobato's Statement of July 20, 2001.
3. Arrest Report
4. Autopsy Report
5. Interview with Laura Linn Johnson
6. Interview with Dixie Tienken
7. Opening trial statements by State and Defense
8. Transcript of Las Vegas Metro PD Detective Thomas Thowsen's testimony (direct and redirect)
9. Transcript of Kristin Blaise Lobato testimony
10. Transcript of Dixie Tienken's testimony
11. List of grounds for Habeas Corpus Petition
12. Supreme Court of NV Judgement, Nov. 23, 2016

**Appendix B**

I have testified as an expert witness (either at trial, by deposition, or both) in the last four years in the following cases:

1. *Davontae Sanford v. City of Detroit et al.* (E.D. Mich.) (November 2018)
2. *Bobby Johnson v. City of New Haven* (D. Conn.) (January 2019)
3. *Robert Jones v. Leon Cannizzaro, Jr., et al.* (December 2019)

**Appendix C**

## ALLISON D. REDLICH

| | |
|---|---|
| Department of Criminology, Law and Society | 352 Enterprise Hall |
| George Mason University | Email: aredlich@gmu.edu |
| 4400 University Drive. | Tel: 703-993-5835 |
| Fairfax, VA 22030 | Fax: 703-993-8316 |

Websites: www.cls.gmu.edu/people/aredlich; https://themodilslab.wixsite.com/modils/research

### PROFESSIONAL POSITIONS

| | |
|---|---|
| 2019 -- 2022 | President (Elect, Current, Past) American Psychology-Law Society, Division 41 of the American Psychological Association |
| 2017 -- present | Graduate Director and Associate Chair, Department of Criminology, Law and Society, George Mason University, Fairfax, VA |
| 2015 – present | Professor, Department of Criminology, Law and Society, George Mason University, Fairfax, VA |
| 2012 – 2015 | Chair, Board of Directors/Executive Director, Michael J. Hindelang Criminal Justice Research Center, State University of New York, University at Albany, Albany, NY |
| 2008 – 2015 | Assistant-Associate Professor, School of Criminal Justice, State University of New York, University at Albany, Albany, NY |
| 2002 – 2008 | Senior Research Associate I-II, Policy Research Associates, Delmar, NY |
| 2001 – 2002 | Research Scientist, Stanford University School of Medicine, Department of Psychiatry and Behavioral Sciences, Stanford, CA |
| 1999 – 2001 | The California Wellness Foundation Postdoctoral Fellow, Stanford University School of Medicine, Department of Psychiatry and Behavioral Sciences, Stanford, CA |
| 1992 – 1994 | Research Assistant, National Institute of Child Health and Human Development, National Institutes of Health, Bethesda, MD |

### EDUCATION

| | |
|---|---|
| 1999 – 2001 | Postdoctoral training, Psychiatry and Juvenile Justice<br>Stanford University School of Medicine |
| 1999 | Doctor of Philosophy, Developmental Psychology<br>University of California, Davis |
| 1996 | Masters of Arts, Developmental Psychology<br>University of California, Davis |
| 1992 | Bachelor of Arts, Psychology<br>The Pennsylvania State University |

### GRANTS

| | |
|---|---|
| 2020—2021 | Department of Homeland Security, "Overcoming Reluctance and Increasing Intelligence Gathering from Victims of Trafficking" (CINA)<br>Principal Investigator ($200,679) [co-PI: Jodi Quas] |
| 2019—2020 | Department of Homeland Security, "Effective Strategies for Intelligence Gathering from Victims of Sex Trafficking" (CINA)<br>Co-Principal Investigator ($70,866) [PI: Jodi Quas] |

14

2019—2020     Charles Koch Foundation, "The Influence of Discovery on True and False Guilty Pleas"
Principal Investigator ($75,500; Year 2)

2017—2027     Department of Homeland Security, Center for Investigative Network Analysis, Center of
Excellence (CINA)
Theme Leader, Criminal Investigative Processes ($40 million) [PI: Anthony Stefanidis]

2017—2020     National Science Foundation, "Police Investigator Decision-Making in High-Profile Cases"
Co-Principal Investigator ($158,012) [PI: Skye Woestehoff]

2017—2018     Charles Koch Foundation, "The Influence of Discovery on True and False Guilty Pleas"
Principal Investigator ($85,000; Year 1)

2015 – 2018     National Science Foundation, "Collaborative Research: Understanding Youth Engagement in
the Plea Process: Predictors and Consequences"
Principal Investigator ($395,000 total) [PI at UC Irvine: Jodi A. Quas]

2015 – 2017     National Science Foundation, "Elephants in the Courtroom: Examining Overlooked Issues in
Wrongful Convictions" Workshop grant
Principal Investigator ($49,807) [Co-PIs: James Acker, Catherine Bonventre & Robert Norris]

2014 – 2017     Brain and Behavior Research Foundation Independent Investigator Award, "The Influence of
Mental Illness Severity and Treatment on Criminal Justice Success: The Mediating Role of
Mental Health Courts"
Principal Investigator ($99,371)

2014 – 2017     National Science Foundation, "Research Coordination Network (RCN): Understanding Guilty
Pleas"
Co-Principal Investigator ($298,675) [PI: Shawn Bushway]

2012 – 2013     Federal Bureau of Investigation, High-Value Detainee Interrogation Group (HIG), "The
Dynamic Process of Interrogation" [Subcontract from UT, El Paso, PI: Christian A. Meissner]
Co-Principal Investigator ($153,000) [PI: Christopher Kelly]

2011 – 2012     Federal Bureau of Investigation, High-Value Detainee Interrogation Group (HIG), "Surveying
the International Interrogation Community" [Subcontract from UT, El Paso, PI: Christian A.
Meissner]
Principal Investigator ($160,025)

2010 – 2013     National Science Foundation, "Creating and Transferring Knowledge on Guilty Pleas"
Principal Investigator ($175,000)

2010 – 2013     National Institute of Justice, "Bargaining in the Shadow of Trial: Exploring the Reach of
Evidence Outside the Jury Box"
Principal Investigator ($511,283) [Co-PI: Shawn Bushway]

15

| | |
|---|---|
| 2010 – 2011 | Federal Bureau of Investigation, High-Value Detainee Interrogation Group (HIG), "Surveying the U.S. Interrogation Community" [Subcontract from UT, El Paso, PI: Christian A. Meissner] Principal Investigator ($199,999) |
| 2009 – 2010 | Campbell Crime and Justice Group, Campbell Collaboration, "A Systematic Review of the Research on the Effectiveness of Interview and Interrogation Methods on Investigative Outcomes" Co-Principal Investigator ($49,375) [PI: Christian A. Meissner] |
| 2008 – 2009 | John D. & Catherine T. MacArthur Foundation, Network on Mandated Community Treatment "Understanding and perceptions of the plea process among non-mentally ill offenders" Principal Investigator ($38,596) |
| 2007-2009 | NARSAD Young Investigator Award, "False Confessions among Persons with Serious Mental Illness" Principal Investigator ($56,348) |
| 2007-2009 | City-County of San Francisco, CA "Mental Health Courts: Level of Supervision and Predictors of Outcome: 12-month interviews" Co-Principal Investigator ($64,340) [PI: Henry J. Steadman] |
| 2005-2008 | National Science Foundation, "Mental Health Court Comprehension: Predictors and Influence on Treatment Compliance and Receipt of Sanctions" Principal Investigator ($199,991) [Co-PI: Henry J. Steadman] |
| 2005-2009 | John D. & Catherine T. MacArthur Foundation, Network on Mandated Community Treatment "Mental Health Courts: Level of Supervision and Predictors of Outcome." Co-Principal Investigator ($2,092,887) [PI: Henry J. Steadman] |

**Mentored Student Grants**

| | |
|---|---|
| 2019-2020 | Amy Dezember, NSF Doctoral Dissertation Research Improvement Grant, "Examining Different Kinds of Guilty Pleas" ($17,639) |
| 2016-2018 *[co-chair]* | Reveka Shteynberg, NSF Doctoral Dissertation Research Improvement Grant, "Rationales Underlying and Shaping Plea Decision-Making" ($11,399) [PI: A. Worden] |
| 2014-2015 | Woojae Han, NIJ Graduate Research Fellowship, "Impact of Community Treatment and Neighborhood Environment on Recidivism in Mental Health Courts" ($31,999) |

## HONORS AND AWARDS

| | |
|---|---|
| 2020 | Fellow, Academy of Experimental Criminology |
| 2020 | Distinguished Faculty Mentoring Fellow, George Mason University |
| 2018 | American Psychological Association Mid-Career Award for Outstanding Contributions to Benefit Children, Youth, and Families |
| 2016 | University of Nevada, Reno Interdisciplinary Graduate Student Association speaker |
| 2015 | School of Criminal Justice, University at Albany Graduate Student Mentor Award |

16

| | |
|---|---|
| 2014 | Ranked 22nd most productive scholar in Criminology and Criminal Justice, 2009-2013 [2nd highest-ranked female] (Walters, 2014) |
| 2013 | The Research Foundation for the State University of New York Faculty Travel Award ($1500) |
| 2012 | Ranked 3rd (of 125) in Academic Productivity among Assistant Professors in Criminology and Criminal Justice (Copes, Khey, & Tewksbury, 2012) |
| 2012 | Career, Leadership and University Excellence (CLUE) Fellow; University at Albany |
| 2010 | Box highlight in 3rd edition of textbook, *Introduction to Forensic Psychology*, Sage Publishers (A. Bartol and C. Bartol) |
| 2009 | Invited to be Visiting Professor at Ritsumeikan University, Kyoto, Japan |
| 2009 | University at Albany, Faculty Research Award Program—B ($3,689) |
| 1999-2001 | The California Wellness Foundation Academic Postdoctoral Fellow, Stanford University |
| 1999 | Pro Femina Research Travel Award, Consortium for Women, UC Davis |
| 1998 | The Society for the Psychological Study of Social Issues Grants-in-Aid Award ($2,000) |
| 1996 | American Psychology-Law Society Grant-in-Aid Award ($500) |
| 1995-1999 | University of California, Graduate Studies Fellowship |

## PUBLICATIONS
(*Denotes student/post-doctorate under my supervision)

### *Books/Monographs/Special Journal Issues*

**Redlich**, A.D. & Quas, J.A. (under contract). (Eds.). *The Handbook on Developmental Psychology and the Law*. New York, NY: Oxford University Press.

Acker, J., & **Redlich**, A. D. (2019). *Wrongful convictions: Law, social science, and policy* (2nd edition). Durham, NC: Carolina Academic Press.

Edkins, V. & **Redlich**, A.D. (2019) (Eds.). *A system of pleas: Social science's contribution to the real legal system*. New York, NY: Oxford University Press.

Wilford, M.S., & **Redlich**, A.D. (May, 2018). (Guest editors). Special issue on guilty pleas. *Psychology, Public Policy, and Law, 24*.

Walsh, D., Oxburgh, G., **Redlich**, A., D., & Myklebust, T. (2016). (Eds.). *International developments and practices in investigative interviewing and interrogation, Volume I: Victims and witnesses*. Abingdon, England: Routledge Press.

Walsh, D., Oxburgh, G., **Redlich**, A., D., & Myklebust, T. (2016). (Eds.). *International developments and practices in investigative interviewing and interrogation, Volume II: Suspected Offenders*. Abingdon, England: Routledge Press.

**Redlich**, A. D., Acker, J., *Norris, R. J., & *Bonventre, C. (2014). (Eds) *Examining wrongful convictions: Stepping back, moving forward*. Durham, NC: Carolina Academic Press.

Acker, J., & **Redlich**, A. D. (2011). *Wrongful convictions: Law, social science, and policy*. Durham, NC: Carolina Academic Press.

17

**Redlich**, A. D. & Petrila, J. (2009). (Eds.). The age of innocence: Miscarriages of justice in the 21st century. *Behavioral Sciences and the Law, 27(3)*, 297-488.

Quas, J.A., Goodman, G. S., Ghetti, S., Alexander, K., Edelstein, R., **Redlich**, A. D., Cordon, I., & Jones, D.P. (2005). Childhood sexual assault victims: Long-term outcomes after testifying in criminal court. *Society for Research in Child Development Monographs, 70*. Serial No. 280.


*Journal Articles*

### In Press and 2020

*Petersen, K., **Redlich**, A.D., & Norris, R. (in press). Diverging from the shadows: Explaining individual deviation from plea bargaining in the "Shadow of Trial." *Journal of Experimental Criminology*.

Alceste, F., Luke, T., **Redlich**, A.D, Amrom, A., Hellgren, J., & Kassin, S.M. (in press). The psychology of confessions: A comparison of expert and lay opinions. *Applied Cognitive Psychology.*

*Luna, S. & **Redlich**, A.D. (in press). Unintelligent decision-making? The impact of discovery on defendant plea decisions. *Wrongful Conviction Law Review.*

Snook, B., Fallon, L., Barron, W. T., Kassin, S., Kleinman, S., Leo, R.A., Meissner, C., Morello, L., Nirider, L., **Redlich**, A.D., & Trainer, J.L. (in press). Urgent issues and prospects in reforming interrogation practices in the United States and Canada. *Legal and Criminological Psychology*.

Norris, R. J., Acker, J.A., Bonventre, C., & **Redlich**, A.D. (2020). Thirty years of innocence: Wrongful convictions and exonerations in the United States, 1989-2018. *The Wrongful Conviction Law Review, 1*, 2-58.

*Luna, S. & **Redlich**, A.D. (2020). A national survey of Veterans Treatment Court actors. *Criminal Justice Policy Review*.

Scherr, K., Normile, C., *Luna, S., **Redlich**, A.D., Lawrence, M., & Catlin, M. (2020). False admissions of guilt associated with wrongful convictions undermine people's perceptions of exonerees. *Psychology, Public Policy, and Law.*

*Luna, S. & **Redlich**, A.D. (2020). The decision to provide discovery: An examination of policies and guilty pleas. *Journal of Experimental Criminology*.

Scherr, K., **Redlich**, A.D., & Kassin, S.M. (2020). Cumulative disadvantage: The compounding effect of innocents' decision-making from interrogations to the courtroom. *Perspectives on Psychological Science.* Online first.

Norris, R., Weintraub, J., N., Acker, J.R., **Redlich**, A.D., & Bonventre, C.L. (2020). The criminal costs of wrongful convictions: Can we reduce crime by protecting the innocent? *Criminology and Public Policy, 19.*, 367-388.

18

**2019**

**Redlich**, A.D., Nirider, L., & *Shteynberg, R. (2020). Pragmatic implication in the interrogation room: A comparison of juveniles and adults. *Journal of Experimental Criminology, 16*, 555-564.

Lavoie, J., Dickerson, K. L., **Redlich**, A. D., & Quas, J. A. (2019). Overcoming disclosure reluctance in youth victims of sex trafficking: New directions for research, policy, and practice. *Psychology, Public Policy, & Law.* Online first http://dx.doi.org.mutex.gmu.edu/10.1037/law0000205

*Woestehoff, S., **Redlich**, A.D., Cathcart, E., & Quas, J. (2019). Legal professionals' perceptions of juvenile engagement in the plea process. *Translational Issues in Psychological Science, 5*, 121-131.

Kelly, C.J., Russano, M., Miller, J., & **Redlich**, A.D. (2019). On the road (to admission): Engaging suspects with minimization. *Psychology, Public Policy, and Law, 25*, 160-188.

Zottoli, T., Daftary-Kapur, T., Edkins, V., **Redlich**, A.D., King, C., Dervan, L. & Tahan, E. (2019). State of the states: A survey of procedural and administrative law pertaining to guilty pleas across the United States. *Behavioral Sciences and the Law, 37*, 388-434.

Norris, R., Bonventre, C., **Redlich**, A.D., Acker, J., & Lowe, C. (2019). Preventing wrongful convictions: An analysis of state investigation reforms. *Criminal Justice Policy Review, 30*, 597-626. DOI: 10.1177/0887403416687359.
    **Article selected for inclusion in C. Spohn, C. Hemmings, & W.S. McCann (Eds.), *Courts: A Text/Reader* (3rd Ed.), Sage Publishing.

**2018**

*Miller, J.C., **Redlich**, A.D., & Kelly, C.E. (2018). Accusatorial and information-gathering interview and interrogation methods: A multi-country comparison. *Psychology, Crime, and Law, 24*, 935-956.

Han, W., & **Redlich**, A.D. (2018). Racial/ethnic disparities in behavioral health service usage in mental health courts. *Criminal Justice and Behavior, 45*, 173-194.

**Redlich**, A.D., Yan, S., Norris, R.J., & Bushway, S.D. (2018). The influence of confessions on guilty pleas and plea discounts. *Psychology, Public Policy, and Law, 24*, 147-157. doi: 10.1037/law0000144.

Wilford, M., & **Redlich**, A.D. (2018). Deciphering the guilty plea: Where research can inform policy. (Introduction to edited special issue). *Psychology, Public Policy, and Law, 24*, 145-147. doi: 10.1037/law0000169.

Kassin, S.M., **Redlich**, A.D., Alceste, F., & Luke, T. (2018). On the "general acceptance" of confessions research: Opinions of the scientific community. *American Psychologist, 73*, 63-80.

**2017**

**Redlich**, A.D., Wilford, M., & Bushway, S.D. (2017). Understanding guilty pleas through the lens of social science. *Psychology, Public Policy, and the Law, 23*, 458-471. [Invited article in special Issue to mark APA's 125th anniversary]

**Redlich**, A.D., Bibas, S., Edkins, V., & Madon, S. (2017). The psychology of defendant plea decision-making. *American Psychologist, 72*, 339-352.

### 2016

**Redlich**, A. D. & *Shteynberg, R. (2016). To plead or not to plead: A comparison of juvenile and adult true and false plea decisions. *Law and Human Behavior, 40*, 611-625.

**Redlich**, A.D., Bushway, S., & *Norris, R. (2016). Plea decision-making by attorneys and judges: The impact of legal and extra-legal factors. *Journal of Experimental Criminology, 12*, 537-561.

Turner, J. I. & **Redlich**, A. D. (2016). Reply to Miriam Baer and Michael Doucette's reviews of *Two models of pre-plea discovery in criminal cases. Washington & Lee Law Review, 73*, 471-486.

Acker, J. A., **Redlich**, A. D, Bonventre, C., & Norris, R. N. (2016). Foreword to "Elephants in the courtroom: Examining overlooked issues in wrongful convictions. *Albany Law Review, 79*, 705-715.

Turner, J. I. & **Redlich**, A. D. (2016). Two models of pre-plea discovery in criminal cases: An empirical comparison. *Washington and Lee Law Review, 73*, 285-408.
**Article selected for the National Center of Criminal Defense Lawyers "Must Read" list
**Article selected by Delaware Supreme Court Judge for CLE presentation

*Han, W. & **Redlich**, A. D. (2016). Examining the impact of community treatment on recidivism in mental health courts. *Psychiatric Services, 67*, 384-390. http://dx.doi.org/10.1176/appi.ps.201500006

Kelly, C., *Miller, J., & **Redlich**, A. D. (2016). The dynamic nature of interrogation. *Law and Human Behavior, 40,* 295-309.

### 2015

**Redlich**, A.D. & *Bonventre, C. (2015). Content and comprehensibility of adult and juvenile tender-of-plea forms: Implications for knowing, intelligent, and voluntary guilty pleas. *Law and Human Behavior, 39*, 162-176.

Kelly, C.E., **Redlich**, A.D., & *Miller, J.C. (2015). Examining the meso-level domains of the interrogation taxonomy. *Psychology, Public Policy, and Law, 21*, 179-191. http://dx.doi.org/10.1037/law0000034

Kelly, C. E., Abdel-Salam, S., *Miller, J. C., & **Redlich**, A. D. (2015). Social identity and the perceived effectiveness of interrogation methods. *Investigative Interviewing: Research and Practice*, II, 24-41.

### 2014

Bushway, S., **Redlich**, A.D., & *Norris, R. (2014). An explicit test of plea bargaining in the "shadow of the trial". *Criminology, 52*, 723-754.

**Redlich**, A. D., Kelly, C. E., & *Miller, J. C. (2014). The who, what, and why of human intelligence gathering: Self-reported measures of interrogation methods. *Applied Cognitive Psychology, 28*, 817-828.

Meissner, C. A., **Redlich**, A. D., Michael, S. W., Evans, J. R., Camilletti, C. R., Bhatt, S., & Brandon, S. (2014). Accusatorial and information-gathering interrogation methods and their effects on true and false confessions: A meta-analytic review. *Journal of Experimental Criminology, 10*, 459-486.

*Norris, R., & **Redlich,** A. D. (2014). Seeking justice, compromising truth? Criminal admissions and the Prisoner's Dilemma. *Albany Law Review, 77*, 101-134.

### 2013

**Redlich**, A. D. & *Han, W. (2013). Examining the links between therapeutic jurisprudence and mental health court completion. *Law and Human Behavior, 38*, 109-118.

*Kelly, C., *Miller, J., **Redlich**, A. D., & Kleinman, S. (2013). A taxonomy of interrogation methods. *Psychology, Public Policy, and Law, 19*, 165-178.

### 2012

Bushway, S., & **Redlich**, A. D. (2012). Is plea bargaining in the "shadow of the trial" a mirage?  *Journal of Quantitative Criminology, 28*, 437-454.

**Redlich**, A. D. & Summers, A. (2012). Voluntary, knowing, and intelligent pleas: Understanding plea inquiries. *Psychology, Public Policy, and Law, 18*, 626-643.

**Redlich**, A. D., *Liu, S., Steadman, H. J., Callahan, L., & Robbins, P. C. (2012). Is diversion swift?: Comparing mental health court and traditional criminal justice processing. *Criminal Justice and Behavior, 39*, 420-433.
*Article selected for a Sage Publications podcast:* http://cjb.sagepub.com/content/39/4/420/suppl/DC1

### 2011

*Norris, R., *Bonventre, C., **Redlich**, A. D., & Acker, J. (2011). Than that one innocent suffer: Evaluating state safeguards against wrongful convictions. *Albany Law Review, 44*, 1301-1364.

**Redlich**, A. D. Kulish, R., & Steadman, H. J. (2011). Comparing true and false confessions among persons with serious mental illness. *Psychology, Public Policy, and Law, 17*, 394-418.

Steadman, H. J., **Redlich**, A. D., Callahan, L., Robbins, P. C., & Vesselinov, R. (2011). Assessing the impact of mental health courts on arrests and jail days: A multi-site study. *Archives of General Psychiatry, 68*, 167-172.

### 2010

Quas, J. A., Alexander, K. W., Goodman, G. S., Ghetti, S., Edelstein, R., & **Redlich**, A. D. (2010). Long-term autobiographical memory for legal involvement: Individual and sociocontextual factors. *Cognitive Development, 25*, 394-409.

**Redlich**, A. D. (2010). The susceptibility of juveniles to false confessions and false guilty pleas. *Rutgers Law Review, 62*, 943-957. [Translated into Spanish for the Chilean Public Defender Office]

**Redlich**, A. D., Hoover, S.*, Summers, A.*, & Steadman, H.J. (2010). Enrollment in mental health courts: Voluntariness, knowingness, and adjudicative competence. *Law and Human Behavior, 34*, 91-104.

21

**Redlich**, A. D., Summers, A.*, & Hoover, S.* (2010). Self-reported false confessions and false guilty pleas among offenders with mental illness. *Law and Human Behavior, 34*, 79-90.

Kassin, S. M., Drizin, S., Grisso, T., Gudjonsson, G., Leo, R. A., & **Redlich**, A. D. (2010).  APLS-Approved White Paper, Police-induced confessions: Risk factors and recommendations. *Law and Human Behavior, 34*, 3-38.

Kassin, S. M., Drizin, S., Grisso, T., Gudjonsson, G., Leo, R. A., & **Redlich**, A. D. (2010).  White paper and commentaries: Looking ahead. *Law and Human Behavior, 34*, 49-52.

**Redlich**, A. D., Steadman, H. J., Callahan, L., Robbins, P. C., Vesselinov, R., & Ozdogru, A. A.* (2010). The use of mental health court appearances in supervision. *International Journal of Law and Psychiatry, 33*, 272-277.

Karnik, N.S., Soller, M.V., **Redlich**. A. D., Silverman, M.*, Kraemer, H.C., Haapanen, R., & Steiner, H. (2010). Prevalence differences of psychiatric disorders among youth after nine months or more of incarceration by race/ethnicity and age. *Journal of the Health Care for the Poor and Underserved, 21*, 237-250.

**2009**

**Redlich**, A. D. & Ozdogru, A. A.* (2009). Alford pleas in the age of innocence. *Behavioral Sciences and the Law, 27*, 467-488.

Karnik, N. S., Soller, M. V., **Redlich**, A. D, Silverman, M.*, Kraemer, H. C., Haapanen, R., & Steiner, H. (2009). Prevalence of and gender differences in psychiatric disorders among juvenile delinquents incarcerated for nine months. *Psychiatric Services, 60*, 838-841.

**2008**

**Redlich**, A. D., Quas, J. A., & Ghetti, S. (2008). Perceptions of children during a police interview: Guilt, confessions, and interview fairness. *Psychology, Crime, and Law, 14*, 201-223.

Petrila, J. & **Redlich**, A. D. (2008). Options for diverting persons with mental illness from the criminal justice system. *Court Review, 43*, 164-173.

**Redlich**, A. D., Ghetti, S., & Quas, J. A. (2008). Perceptions of children during a police interview: A comparison of suspects and alleged victims. *Journal of Applied Social Psychology, 38*, 705-735.

**2007**

**Redlich**, A. D. (2007). Military vs. police interrogations: Similarities and differences. *Peace and Conflict, 13*, 423-428.

**Redlich**, A. D. (2007). Double jeopardy in the interrogation room: Young age and mental illness. *American Psychologist, 62*, 609-611.

Busch, A. B. & **Redlich**, A. D. (2007). Patients' perception of possible child custody or visitation loss for non-adherence to psychiatric treatment. *Psychiatric Services, 58*, 999-1002.

22

**2006**

Ghetti, S., Edelstein, R., Goodman, G. S., Cordon, I. M., Quas, J. A., Alexander, K. W., **Redlich**, A. D., & Jones, D. P. (2006). What can subjective forgetting tell us about memory for childhood trauma? *Memory and Cognition, 34*, 1011-1025.

**Redlich**, A. D., & Monahan, J. (2006). General pressures to adherence to psychiatric treatment in the community. *International Journal of Forensic Mental Health, 5*, 125-131.

Steadman, H.J., & **Redlich**, A.D. (2006). Perceived coercion in everyday life: A concept to inform research on the legal issues of coerced treatment. *International Journal of Forensic Mental Health, 5*, 167-171.

Van Dorn, R.A., Mustillo, S., **Redlich**, A. D., Elbogen, E., Swanson, J., & Swartz, M. (2006). The relationship between mandated treatment and perceived barriers to care in persons with mental illness: Is there a role for social support? *International Journal of Law and Psychiatry, 29*, 495-506.

**Redlich**, A. D., Steadman, H. J., Monahan, J., Robbins, P. C., & Petrila, J. (2006). Patterns of practice in mental health courts: A national survey. *Law and Human Behavior, 30*, 347-362.

Goodman, G. S, Myers, J., Qin, J., Quas, J. A., Castelli, P.*, **Redlich**, A. D., & Rogers, L. (2006). Children's out-of-court statements: Effects of truthful and deceptive hearsay on jurors' decisions. *Law and Human Behavior, 30*, 363-401.

**Redlich**, A. D., Steadman, H. J., Robbins, P. C., & Swanson, J. (2006). Use of the criminal justice system to leverage mental health treatment: Effects on treatment adherence and satisfaction. *Journal of the American Academy of Psychiatry and the Law, 34*, 292-299.

Appelbaum, P., & **Redlich**, A.D. (2006). Impact of decisional capacity on the use of leverage to encourage treatment adherence. *Community Mental Health Journal, 42*, 121- 130.

Appelbaum, P., & **Redlich**, A.D. (2006). Use of leverage over patients' money to promote adherence of psychiatric treatment. *Journal of Nervous and Mental Disease, 194*, 294-302.

**2005**

**Redlich**, A. D. (2005). Voluntary, but knowing and intelligent? Comprehension in mental health courts. *Psychology, Public Policy, and Law, 11*, 605-619.

**Redlich**, A. D., Steadman, H. J., Monahan, J., Petrila, J., & Griffin, P. (2005). The second generation of mental health courts. *Psychology, Public Policy, and Law, 11*, 527-538.

Edelstein, R. S., Ghetti, S., Quas, J. A., Goodman, G. S., Alexander, K. W., **Redlich**, A. D., & Cordon, I. M. (2005). Individual differences in emotional memory: Adult attachment and long-term memory for child sexual abuse. *Personality and Social Psychology Bulletin, 31*, 1537-1548.
Reprinted in D. C. Funder & D. J. Ozer (Eds., 5th ed.), *Pieces of the personality puzzle: Readings in theory and research* (pp. 298-310). New York, NY: Norton & Co.

Steadman, H. J., **Redlich**, A. D., Griffin, P., Petrila, J., & Monahan, J. (2005). From referral to disposition: Case processing in seven mental health courts. *Behavioral Sciences and the Law, 23*, 1-12.

23

Monahan, J., **Redlich**, A. D., Swanson, J., Robbins, P. C., Appelbaum, P. S., Petrila, J., Steadman, H. J., Swartz, M., Angell, B., & McNiel, D. (2005). Use of leverage to improve adherence to psychiatric treatment in the community. *Psychiatric Services, 56*, 37-44.

Alexander, K., W., Quas, J. A., Goodman, G.S., Ghetti, S., Edelstein, R. S., **Redlich**, A. D., Cordon, I. M., & Jones, D. P. H. (2005). Traumatic impact predicts long-term memory for documented child sexual abuse. *Psychological Science, 16*, 33-40. (Translated into Japanese for the *Japanese Journal of Child Abuse and Neglect*).

## < 2004

**Redlich**, A. D. (2004). Mental illness, police interrogations, and the potential for false confession. *Psychiatric Services, 55*, 19-21.

Plattner, B.*, Silverman, M.A.*, **Redlich**, A., Carrion, V.G., Feucht, M., Friedrich, M.H., & Steiner, H. (2003). Pathways to dissociation: Intrafamilial and extrafamilial trauma in juvenile delinquents. *The Journal of Nervous and Mental Disease, 191*, 781-788.

**Redlich**, A. D., Silverman, M.*, & Steiner, H. (2003). Factors affecting preadjudicative and adjudicative competence in juveniles and young adults. *Behavioral Sciences and the Law, 21*, 1-17.

**Redlich**, A. D., & Goodman, G. S. (2003). Taking responsibility for an act not committed: The influence of age and suggestibility. *Law and Human Behavior, 27*, 141-156.

Goodman, G. S., Ghetti, S., Quas, J. A., Edelstein, R., Alexander, K., **Redlich**, A.D., Cordon, I., & Jones, D. P. (2003). A prospective study of memory for child sexual abuse: New findings relevant to the repressed-memory controversy. *Psychological Science, 14*, 113-118.

Miller, S. P.*, **Redlich**, A. D., & Steiner, H. (2003). The stress response in anorexia nervosa. *Child Psychiatry and Human Development, 33*, 295-306.

**Redlich**, A. D., Goodman, G. S., Myers, J. E. B., & Qin, J. (2002). A comparison of two forms of hearsay testimony in child sexual abuse cases. *Child Maltreatment, 7*, 312-328.

Ghetti, S., & **Redlich**, A. D. (2001). Reactions to youth crime: Perceptions of accountability and competency. *Behavioral Sciences and the Law, 19*, 33-52.

**Redlich**, A. D. (2001). Community notification: Perceptions of its effectiveness in preventing child sexual abuse. *Journal of Child Sexual Abuse, 10*, 91-116.

Quas, J. A., Goodman, G. S., Ghetti, S., & **Redlich**, A. D. (2000). Questioning the child witness: What can we conclude from the research thus far? *Trauma, Abuse, and Violence, 1*, 223-249.

Myers, J. E. B., **Redlich**, A. D., Goodman, G. S., Prizmich, L.*, & Imwinkelried, E. (1999). Jurors' perceptions of hearsay in child sexual abuse cases. *Psychology, Public Policy, and the Law, 5*, 388-419.

Goodman, G. S., Quas, J. A., & **Redlich**, A. D. (1998). The ethics of conducting "false memory" studies with children: A reply to Hermann and Yoder. *Applied Cognitive Psychology, 12*, 207-217.

Goodman, G. S., Bottoms, B. L., **Redlich**, A., Shaver, P. R., & Beety, K. (1998). Correlates of multiple forms of victimization in religion-related child abuse cases. *Journal of Aggression, Maltreatment, and Trauma, 2*, 273-295.

Sternberg, K. J., Lamb, M. E., Hershkowitz, I., Esplin, P. W., **Redlich**, A., & Sunshine, N. (1996). The relationship between investigative utterance types and the informativeness of child witnesses. *Journal of Applied Developmental Psychology, 17*, 439-451.

### Book Chapters

*Petersen, K. & **Redlich**, A.D. (2020). The psychology of guilty pleas. In R. Roesch (Ed.), *Encyclopedia of psychology in the real world*. Routledge Press.

*Dezember, A. & **Redlich**, A.D. (2019). Plea bargaining in the shadow of trial. In P. Brennan & C. Spohn (Eds.), *Sentencing policies and practices in the 21st century* (pp. 168-187)*. New York, NY: Routledge.

*Luna, S., *Dezember, A., & **Redlich**, A.D., (2019). The validity of misdemeanor pleas. In A. Smith & S. Maddan (Eds.), *The lower criminal courts* (pp. 66-75). New York, NY: Routledge.

**Redlich**, A.D., Zottoli, T., & Daftary-Kapur, T. (2019). Pleading guilty when young: Circumstances, Knowingness, and rationales of juvenile plea decisions. In V. Edkins and A.D. Redlich (Eds.), *A system of pleas: Social science's contributions to the real legal system.* New York, NY: Oxford University Press.

Yan, S., Bushway, S., & **Redlich**, A. D. (2017). Discretion in the absence of guidelines: Charge bargaining and sentencing for felony defendants in New York. In J. Ulmer & M. Bradley (Eds.), *Punishment decisions: Locations of disparity – Volume 2 in the ASC Division on Corrections & Sentencing Handbook Series*. New York, NY: Routledge.

**Redlich**, A. D. (2016). The validity of pleading guilty. In M. K. Miller and B. Bornstein (Eds.), *Advances in psychology and law* (pp. 1-27). Cham, Switzerland: Springer International Publishing.

*Shteynberg, R. & **Redlich**, A. D. (2015). Policing juvenile delinquency. In M. D. Krohn and J. Lane (Eds.), *Wiley handbook of juvenile delinquency and juvenile justice*. Malden, MA: Wiley-Blackwell Publishers.

**Redlich**, A. D., Acker, J. R., *Norris, R. J., & *Bonventre, C. L. (2014). Wrongful convictions: Reflections on moving forward. In A. D. Redlich, J. R. Acker, R. J. Norris, & C. L. Bonventre (Eds.), *Examining wrongful convictions: Stepping back, moving forward* (pp. 337-349). Durham, NC: Carolina Academic Press.

Acker, J. R., **Redlich**, A. D., *Norris, R. J., & *Bonventre, C. L. (2014). Stepping back--moving beyond immediate causes: Criminal justice and wrongful convictions in social context. In A. D. Redlich, J. R.

25

Acker, R. J. Norris, & C. L. Bonventre (Eds.), *Examining wrongful convictions: Stepping back, moving forward* (pp. 3-15). Durham, NC: Carolina Academic Press.

*Liu, S. & **Redlich**, A. D. (2014). Jails and courts: Intercept 3. In P. Griffin, K. Heilbrun, E. Mulvey, D. DeMatteo, & C. Schubert (Eds.), *The sequential intercept model and criminal justice: Promoting community alternatives for individuals with serious mental illness*. Oxford University Press.

**Redlich**, A. D. (2013). The past, present, and future of mental health courts. In R. Weiner & E. Brank (Eds.), *Special problem solving courts: Social science and legal perspectives* (pp. 147-161). New York: Springer Press.

*Kelly, C., **Redlich**, A. D., Evans, J., & Meissner, C. (2013). Meta-analysis of the interview and interrogation literature. In G. Bruinsma & D. Weisburd (Ed.), *Encyclopedia of Criminology and Criminal Justice*. New York, NY: Springer Press.

*Norris, R., & **Redlich**, A. D. (2011). At-risk populations under investigation and at trial. In B. Cutler (Ed.), *Conviction of the innocent: Lessons from psychological research* (pp. 13-32). Washington, DC: APA Press.

**Redlich**, A. D. & Cusack, K. (2010). Mental health treatment in criminal justice settings. In B. L. Levin, K. D. Hennessey, & J. Petrila (Eds.), *Mental health services: A public health perspective* (3rd ed) (pp. 421-440). New York: Oxford University Press.

**Redlich**, A. D. (2010). False confessions and false guilty pleas: Similarities and differences. In G.D. Lassiter & C. Meissner (Eds.), *Interrogations and confessions: Current research, practice and policy* (pp. 49-66). Washington, DC: APA Books.

Costanzo, M. & **Redlich**, A. (2010). Use of physical and psychological force in criminal and military interrogations. In J. Knuttsson & J. Kuhns (Eds.), *Policing around the world: Police use of force* (pp. 43-51). Praeger Security International.

**Redlich**, A. D. & Meissner, C. A. (2009). Techniques and controversies on the interrogation of suspects: The artful practice versus the scientific study. In J. Skeem, K. Douglas, & S. Lilienfeld (Eds.), *Psychological science in the courtroom: Controversies and consensus* (pp. 124-148). New York: Guilford Publications, Inc. [Translated into Chinese for Southwest Law and Political University]

**Redlich**, A. D., & Kassin, S. M. (2009). Suggestibility and false confessions among juveniles. In B. L. Bottoms, C. J. Najdowski, & G. S. Goodman (Eds.), *Children as victims, witnesses, and offenders: Psychological science and the law* (pp. 275-294). New York: Guilford Press.

**Redlich**, A. D., & Drizin, S. (2007). Police interrogation of youth. In C. L. Kessler & L. Kraus (Eds.), *The mental health needs of young offenders: Forging paths toward reintegration and rehabilitation* (pp. 61-78). Cambridge, England: Cambridge University Press.

**Redlich**, A. D. (2007). Sentencing diversion programs. In B. Cutler (Ed.), *Encyclopedia of Psychology and Law*. Thousand Oaks, CA: Sage Press.

**Redlich**, A. D., *Silverman, M., *Chen, J., & Steiner, H. (2004). The police interrogation of children and adolescents. In G. D. Lassiter (Ed.), *Interrogations, confessions, and entrapment* (pp. 107-126). Kluwer Academic/Plenum Press.

Alexander, K., **Redlich**, A. D., Christian, P. & Goodman, G. S. (2003). Interviewing children. In M. Peterson & M. Durfee, & (Eds.), *Child abuse and neglect: Guidelines for the identification, assessment, and case management* (pp. 17-19). Volcano, CA: Volcano Press, Inc.

Steiner, H., & **Redlich**, A.D. (2002). Child psychiatry and the juvenile court. In M. Lewis (Ed.), *Child and adolescent psychiatry: A comprehensive textbook* (pp. 1417-1425) (3rd ed.). Baltimore, MD: Lippincott, Williams, & Wilkins, Inc.

Edelstein, R., Goodman, G. S., Ghetti, S., Alexander, K., Quas, J. A., **Redlich**, A. D., Schaaf, J. M., & Cordon, I. (2002). Child witnesses' experiences post-court. In H. Westcott, G. Davies, & R. Bull (Eds.), *Children's testimony in context* (pp. 261-277). New York: Wiley.

Goodman, G. S., **Redlich**, A. D., Qin, J., Ghetti, S., Tyda, K. S., & Schaaf, J. (1998). Evaluating eyewitness testimony in adults and children. In I. B. Weiner & A. K. Hess (Eds.), *Handbook of forensic psychology* (pp. 218-272). New York: Wiley & Sons.

Goodman, G. S., Bottoms, B. L., **Redlich**, A., Shaver, P. R., & Beety, K. (1998). Correlates of multiple forms of victimization in religion-related child abuse cases. In B. B. Robbie-Rossman & M. S. Rosenberg (Eds.), *Multiple victimization of children: Conceptual, developmental, research, and treatment issues* (pp. 273-295). New York: Haworth Press.

Qin, J., Quas, J. A., **Redlich**, A., & Goodman, G. S. (1997). Children's autobiographical memory and eyewitness testimony. In N. Cowan (Ed.), *The development of memory in childhood* (pp. 301-341). London: UCL Press.

### Other Published Writings

**Redlich**, A.D., & *Luna, S. (2019, Fall). Investigating criminal discovery practices. *Translational Criminology*. The Center for Evidence-Based Crime Policy. https://cebcp.org/wp-content/TCmagazine/TC17-Fall2019

**Redlich**, A.D., Acker, J., Bonventre, C., & Norris, R. (accepted for publication). Elephants in the courtroom: Examining overlooked issues in wrongful convictions. A NSF-NIJ Workshop. *National Institute of Justice Journal.*

*Kamorowski, J., Cucolo, H.E., & **Redlich**, A.D. (February 2017). International Megan's Law: It's not about what works, it's about what sells. *Common Ground column, APLS Newsletter*, 7-12.

**Redlich**, A. D. (2014). False confessions on trial. *International Society of Barristers Quarterly*, 21-42.

*Shifton, J., *Norris, R., & **Redlich**, A. D. (2014). False and coerced confessions (updated). *Oxford Bibliographies Online*. New York: Oxford University Press.

Meissner, C., **Redlich**, A. D., Bhatt, S., & Brandon, S. (2012). *Interview and interrogation methods and their effects on true and false confessions.* Final report to the Campbell Collaboration. Available at http://campbellcollaboration.org/lib/download/2249/

**Redlich**, A. D. (2011). Evidence-based graduate education for criminology and criminal justice students: The University at Albany experience. *Academy of Experimental Criminology Newsletter.*

**Redlich**, A. D. (2010). Invited commentary on *Army Field Manual 2-22.3 Interrogation Methods: A Science-based review.* Authored by Brandon, S. E., Bhatt, S., Justice, B. P., & Kleinman. S. M. Washington, DC: National Defense Intelligence College Press.

*Norris, R., & **Redlich**, A. D. (2010). False and coerced confessions. *Oxford Bibliographies Online.* New York: Oxford University Press.

**Redlich**, A. D. (Summer 2007). False guilty pleas. *American Psychology-Law Society Newsletter, 27*, 6-7, 31.

### MANUSCRIPTS SUBMITTED AND IN PROGRESS
*Dezember, A., *Luna, S., *Woestehoff, S., *Stoltz, M., *Manley, M., Quas, J.A., & Redlich, A.D. (under review). *Understanding Misdemeanor Guilty Pleas: The Use of Judicial Plea Colloquies to Examine Plea Validity.*

### RESEARCH CITED IN AMICUS AND LEGAL BRIEFS
Redlich and Goodman (2003)
*U.S. Supreme Court Cases
- *Roper v. Simmons*: constitutionality of death penalty for juveniles aged 16 and 17 years
  - American Psychological Association
- *Graham v. State of Florida* and *Sullivan v. State of Florida*: constitutionality of life without parole for juveniles who did not commit murder
  - Equal Justice Initiative [Bryan Stevenson]
  - Disability Rights Legal Center
- *USA v. Khadr*, U.S. Supreme Court case on Military Jurisdiction of Minors
  - Juvenile Law Center [Marsha Levick]
- *JDB v. State of North Carolina*: U. S. Supreme Court case on Miranda waivers, age, and custody
  - Center for the Wrongful Conviction of Youth et al.
- *Miller v. Alabama and Jackson v. Hobbs*, U.S. Supreme Court case on abolishing life without parole for juveniles
  - Juvenile Law Center et al.
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - Arnold and Porter (Salamon, Blatt, & Franze)
  - American Psychological Association

*State Court and U.S. Court of Appeals Cases
- *California v. A.T.*: California Court of Appeals, 2nd District, on *Miranda* waiver and interrogation of a 13-year-old
  - Center for the Wrongful Conviction of Youth

28

- *New York v. Thomas*: New York State Court of Appeals case on the necessity of expert testimony in possible false confession cases
  - American Psychological Association
- *Michigan v. Kowalski*: Michigan Supreme Court case on the necessity of expert testimony in possible false confession cases
  - American Psychological Association
- *Wisconsin v. Jerrell C. J.:* Wisconsin Supreme Court case on Voluntariness of Juvenile Confession
  - Children and Family Justice Center
- *A Minor v. State of Arkansas*, Arkansas Supreme Court case on valid Miranda waiver and confession
  - Center on Wrongful Conviction of Youth
- *Damien Wayne Echols v. State of Arkansas*, Arkansas Supreme Court case, appeal of wrongful conviction and death sentence based on new evidence
  - Center on Wrongful Conviction of Youth, National Association of Criminal Defense Lawyers
- *Phillipos vs. United States of America*: Expert testimony in false confession cases
  - American Psychological Association

Redlich, Silverman, Chen, & Steiner (2004; chapter in Lassiter book)
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - Arnold and Porter (Salamon, Blatt, & Franze)

Redlich (2007)
- *Illinois v. Juan A. Rivera*: Illinois Court of Appeals, 2nd Judicial District case on general acceptance of false confession research and need for expert testimony
  - American Psychological Association
- *Douglas Warney v. New York.*: New York Court of Appeals, 4th Department case on false confessions from vulnerable suspects and whether they contributed to their wrongful conviction
  - American Psychological Association
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - Arnold and Porter (Salamon, Blatt, & Franze)

Redlich and Ozdogru (2009)
- *James Berry v. Robert E. Ercole* United States Court of Appeals, Second Circuit; habeas corpus petition based on ineffective assistance of counsel and advice to plea
  - Legal brief authored by Brian Sheppard, Esq.

Redlich (2010) [chapter in APA book]
- *Commonwealth of Pennsylvania v. Anthony Wright:* Pennsylvania Supreme Court case on post-conviction access to DNA testing with confession evidence present
  - American Psychological Association
- *Illinois v. Juan A. Rivera*: Illinois Court of Appeals, 2nd Judicial District case on general acceptance of false confession research and need for expert testimony
  - American Psychological Association
- *Douglas Warney v. New York.*: New York Court of Appeals, 4th Department case on false confessions from vulnerable suspects and whether they contributed to their wrongful conviction
  - American Psychological Association
- *John David Floyd v. Burl Cain*: Louisiana State Supreme Court case on the relationship between

confession voluntariness and guilt
- o  American Psychological Association
- *Newton v. Indiana*: U.S. Supreme Court case on threat of death penalty in plea negotiations
  - o  Juvenile Law Center

Redlich, Summers, and Hoover (2010)
- *New York v. Thomas*: New York State Court of Appeals case on the necessity of expert testimony in possible false confession cases
  - o  American Psychological Association
- *Michigan v. Kowalski*: Michigan Supreme Court case on the necessity of expert testimony in possible false confession cases
  - o  American Psychological Association
- *Illinois v. Juan A. Rivera*: Illinois Court of Appeals, 2nd Judicial District case on general acceptance of false confession research and need for expert testimony
  - o  American Psychological Association
- *Douglas Warney v. New York.*: New York Court of Appeals, 4th Department case on false confessions from vulnerable suspects and whether they contributed to their wrongful conviction
  - o  American Psychological Association
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - o  Becker, Drizin, Nirider, et al. [Petitioner's attorneys]

Redlich (2010) [Rutgers Law Review]
- *JDB v. State of North Carolina*: U. S. Supreme Court case on *Miranda* waivers, age, and custody
  - o  Center for the Wrongful Conviction of Youth et al.
- *California v. A.T.*: California Court of Appeals, 2nd District, on *Miranda* waiver and interrogation of a 13-year-old
  - o  Center for the Wrongful Conviction of Youth
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - o  Arnold and Porter (Salamon, Blatt, & Franze)

Redlich & Shteynberg (2016)
- *Newton v. Indiana*: U.S. Supreme Court case on threat of death penalty in plea negotiations
  - o  Juvenile Law Center
- *People v. Tiger*: State of New York Court of Appeals; cited by Dissent.

Kassin et al. (2010) [APLS-sponsored white paper on confessions and interrogations]
- *Hawai'i v. Baker*: Hawaii Supreme Court case on how certain interrogation tactics affect the voluntariness of confessions
- *Michigan v. Kowalski*: Michigan Supreme Court case on the necessity of expert testimony in possible false confession cases
  - o  American Psychological Association
- *New York v. Thomas*: New York State Court of Appeals case on the necessity of expert testimony in possible false confession cases
  - o  American Psychological Association
- *Phillipos vs. United States of America*: Expert testimony in false confession cases
  - o  American Psychological Association

30

- *Douglas Warney v. New York.*: New York Court of Appeals, 4th Department case on false confessions from vulnerable suspects and whether they contributed to their wrongful conviction
  American Psychological Association
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - Current and Former Prosecutors [Arnold & Porter]
  - Professors of Criminal Law, Criminal Procedure, and Constitutional Law [Garrett & Craig]
  - American Psychological Association
  - The Innocence Network
  - Becker, Drizin, Nirider, et al. [Petitioner's attorneys]

Kassin et al. (2018)
- *Dassey v. Dittman*: Petition for a Writ of Certiorari in juvenile false confession/wrongful conviction
  - American Psychological Association

## INVITED ADDRESSES AND CONFERENCES

Redlich, A.D. (2020, November). *The who, what, and why of psychology and the law*. Invited presentation to the Psychology Society, Eton College, United Kingdom (virtual).

Redlich, A.D. (2020, October). *The validity of pleading guilty*. Invited presentation to Cognitive Psychology seminar series, Claremont Graduate University, Claremont, CA (virtual).

Redlich, A.D. (2020, April). Invited panel speaker, *Transparency in Criminal Justice: A 2020 Vision*, Quattrone Center for the Fair Administration of Justice, University of Pennsylvania, Philadelphia, PA. [Cancelled due to COVID-19]

Redlich, A.D. (2019, November). Invited expert testimony (on mental health courts) to the U.S. Commission on Civil Rights.

Redlich, A.D. & Luna, S. (2019, October). *Unintelligent decisions: Discovery in the context of guilty pleas.* Invited presentation to the Criminology department, University of Pennsylvania.

Redlich, A. D. (2019, May). *Interrogations and vulnerable populations*. Invited presentation to Advancing Real Change, Inc., Baltimore, MD.

Redlich, A. D. & Luna, S. (2019, April). *Providing discovery in the context of guilty pleas*. Invited presentation to the Virginia Association of Criminal Defense Lawyers, Richmond, VA.

Redlich, A.D. (2018, September). Keynote address, *Confronting confrontational models of interrogation and plea bargaining*. "Colaboração Premiada": An investigation tool. Brazilian Federal Police, Brasilia, Brazil.

Redlich, A.D. (2018, July). Plenary speaker at Indiana State Bar Association Legal Education Conclave, *Bridging the gaps: Connecting with communities and their leaders to improve understanding and access to justice.* Indianapolis, IN.

Redlich, A.D. (2018, June). *False guilty pleas 101.* Invited speaker at *False confessions, false guilty pleas, and wrongful convictions: A multi-disciplinary symposium* at the Institute of Law, Psychiatry, and Public

31

Policy, University of Virginia, Charlottesville, VA.

Redlich, A. D. (2017, November). Invited panel participant at the *Innocence Project's Impact After 25 years: Law, Policy, and the Courts*. Benjamin Cardozo School of Law, New York, NY.

Redlich, A. D. (2017, May). Invited participant at *Neighborhood Criminal Justice Roundtable* (small group conference), University of Virginia Law School, Charlottesville, VA.

Redlich, A. D. (2017, April). *The validity of pleading guilty*. Invited talk to the Department of Criminal Justice, Indiana University, Bloomington, IN.

Redlich, A. D. (2017, March). *The validity of pleading guilty*. Invited talk to the Department of Psychology, Florida International University, Miami, FL.

Redlich, A.D. (2017, January). Competence to confess. In L. Johnston (Chair), *Competence Revisited: The Changing Role of Mental Capacity in Criminal and Immigration Proceedings*. Paper presented at the Association of American Law Schools, San Francisco, CA. (Invited speaker for Section on Law and Mental Disability)

Redlich, A.D. (2016, September). *Adolescence and the validity of guilty pleas*. Community Psychology series. University of Virginia, Charlottesville, VA.

Redlich, A.D. (2016, September). *The validity of pleading guilty*. Wendy and Mark Stavish Endowed Chair Psychology-Law Speaker Series. Iowa State University, Ames, IA.

Redlich, A. D. (2016, May). *What is our role during the plea process: Decision-making and the validity of guilty pleas.* Invited plenary at the Public Defender Retreat, Las Vegas, NV.

Redlich, A. D. (2016, May). *False confessions on trial*. Invited plenary at the Public Defender Retreat, Las Vegas, NV.

Redlich, A. D. (2016, April). *Guilty plea decision-making among juveniles and adults.* Invited presentation to the Graduate Student Interdisciplinary Club, University of Nevada, Reno.

Redlich, A, D. (2015, September). *The interrogation of vulnerable persons*. Training for the Office of the Chief Public Defenders Office, Connecticut.

Redlich, A.D. (2015, April). *Questioning juveniles in the interrogation room and courtroom.* New York State Defenders Association meeting, Rochester, NY.

Redlich, A. D. (2014, November). *Stages of adolescence and the decision to plead guilty.* Institute of Behavioral Science, University of Colorado, Boulder.

Redlich, A. D. (2014, July). *The good, the bad, and the ugly of mental health courts*. Invited plenary presentation to the 3rd annual Intermountain Mental Health Court Conference, Utah State University, Logan, UT.

32

Redlich, A. D. (2014, March). *The validity of guilty pleas*. Invited colloquium speaker, Center for Law and Human Behavior, University of Texas, El Paso, El Paso, TX.

Redlich, A. D. (2014, March). *False confessions on trial*. Invited plenary presentation to the International Society of Barristers, Maui, HI.

Redlich, A. D. (2014, January). Invited participant at *Criminal Justice Colloquium* (small group conference), Southern Methodist University Law School, Dallas, TX.

Redlich, A. D. (2014, January). Invited speaker on *Scenes of a Crime* panel. New York State Bar Association, New York, NY.

Kelly, C., Redlich, A. D., & Miller, J. C. (2013, October). *The dynamic process of interrogation*. Invited presentation at the 3rd annual Intelligence Interviewing, HIG Research Symposium, Washington, DC.

Redlich, A. D. (2013, August). *False and coerced confessions*. Invited speaker at the Administrative Office of the U.S. Courts, Office of Defender Services Training Branch conference. Buffalo, NY.

Redlich, A. D. (2013, July). *Interrogating in the shadow of trial: Confessions to convictions*. Invited plenary speaker at the New York State Defenders Association meeting, Saratoga Springs, NY.

Redlich, A. D. (2012, December). *Torture and false confessions: Improving China's interrogation methods*. Invited speaker, US-Asia Law Institute (NYU School of Law) symposium: Xi'an and Chengdu, China.

Redlich, A. D. (2012, November). *False confessions: Intersecting science, ethics, and the law*. Invited speaker at the Temple Law Review and the Pennsylvania Innocence Project symposium, Philadelphia, PA.

Redlich, A. D. (2012, October). *Juveniles and false confessions*. Invited speaker at the annual Criminal Justice Educators Association of New York State (CJEANYS) meeting, Poughkeepsie, NY.

Redlich, A. D. (2012, October). Empirical studies of problem solving courts. Invited speaker at *The Bruce J. Winick Fall 2012 Colloquium: Standards in problem solving courts.* University of Miami Law School, Miami, FL.

Redlich, A. D. (2012, June). *The who, what, and why of selecting interview and interrogation techniques.* Invited presentation to Hebrew University, Institute of Criminology, Jerusalem, Israel.

Redlich, A. D. (2012, June). *Am I right or wrong? Waiving rights and pleading guilty*. Invited presentation to Hebrew University, Institute of Criminology, Jerusalem, Israel.

Redlich, A. D. (2012, June). Global perspectives on interrogation and intelligence gathering. Invited presentation as a plenary speaker at the John Jay College of Criminal Justice, *International Conference: Global Perspectives on Justice, Security, and Human Rights*. New York, NY.

Redlich, A. D. (2012, February). HIG Committee. Small-group meeting, Washington DC.

Redlich, A. D. (2012, January). The risk of wrongful convictions among youth. Invited presentation to the

Cardozo Journal of Law and Gender Symposium, *Stealing innocence: Juvenile legal issues and The Innocence Project*. New York, NY.

Redlich, A. D., Kelly, C., & Miller, J. (2011, August). *A systematic survey of the interrogation and intelligence community.* HIG Research Symposium, Intelligence Interviewing. Washington, DC.

Redlich, A. D. (2011, May). Professor Barry Feld book-in-progress workshop conference. University of Minnesota Law School, Minneapolis, MN. (Invited member of small group).

Redlich, A. D. (2011, March). *Creating a common interrogator language*. Invited presentation to the High-Value Detainee Interrogation Group. Washington, DC.

Redlich, A. D. (2011, February). *Policy summit on the future of criminal justice reform in America.* Sponsored by the Laura and John Arnold Foundation. Houston, TX. (Invited member of small group conference).

Redlich, A. D. (2010, November). *Adolescence, innocence, and pleading guilty: Beyond adjudicative competence.* Invited presentation to the Department of Psychology, University of California, Davis.

Redlich, A. D. (2010, November). *True lies, false confessions*. Invited presentation to the Albany Law School Amnesty International chapter. Albany, NY.

Steadman, H. J., Redlich, A. D., Callahan, L., & Robbins, P. C. (2010, October). *The MacArthur mental health court study*. Invited presentation to the MacArthur Foundation Research Network on Community Mandated Treatment, Tucson, AZ.

Redlich, A. D. (2010, June). *The risk of false confessions among individuals with mental illness*. Invited presentation at the Public Defender Service Forensic Conference, Washington, DC.

Redlich, A. D. (2010, April). False confessions, false guilty pleas: The susceptibility of juveniles and best interests. Invited presentation at Rutgers Law Review symposium, *Righting the wronged: Causes, effects, prevention, and remedies of juvenile wrongful convictions*. Newark, NJ.

Meissner, C., Redlich, A. D., Bhatt, S., & Brandon, S. (2010, March). *A systematic review of the effectiveness of interviewing and interrogation techniques on investigative outcomes*. National Police Improvement Agency, London, England.

Redlich, A. D. (2010, January). Mental health courts: yesterday, today, and tomorrow. Invited presentation at *Special problem-solving courts: Social science and legal perspectives*. University of Nebraska-Lincoln Law and Psychology Visiting Scholar Program, Program of Excellence, Lincoln, NE.

Redlich, A. D. (2009, October). *Juveniles and false confessions*. Annual Summit of the National Juvenile Defender Center, Denver, CO.

Redlich, A. D. (2009, October). *Decision-making and defenses in mental health court.* Annual Summit of the National Juvenile Defender Center, Denver, CO.

34

Redlich, A. D. (2009, September). *HUMINT: Integration of science and practice conference*. Sierra Vista, AZ. Sponsored by the Defense Intelligence Agency, U.S. Department of Defense. (Invited member of small group conference).

Redlich, A. D. (2009, February). *Working Strategy Roundtable: Center for Wrongful Convictions of Youth*. Northwestern School of Law, Chicago, IL.

Redlich, A. D. (2009, February). *What is a mental health court?* Invited presentation to the Albany chapter of the New York State Mental Health Counselors Association, Sage Colleges, NY.

Redlich, A. D. (2009, January). *Does MHC understanding predict MHC success?* Invited presentation to the MacArthur Foundation Research Network on Community Mandated Treatment, Santa Monica, CA.

Steadman, H. J., Redlich, A. D., Callahan, L., & Robbins, P. (2009, January). *The MacArthur mental health court study*. Invited presentation to the MacArthur Foundation Research Network on Community Mandated Treatment, Santa Monica, CA.

Redlich, A. D. (2008, November). *False confessions*. Invited address to the Major Crime Conference of the Royal Canadian Mounted Police, Halifax, Canada.

Redlich, A. D. (2008, October). *Improving outcomes for people with mental illnesses in mental health courts: A research guide for policymakers*. The Council of State Governments, Justice Center, Washington, DC. (Invited member of Expert Panel).

Redlich, A. D. (2008, July). *Mental health courts: Alternatives to incarceration.* Invited address to the U.S. Sentencing Commission Conference, Washington, DC.

Redlich, A. D. (2008, April). *The impact of mental illness on competence to confess*. Invited address to Sage Colleges-sponsored conference on Death Penalty, Mental Illness, & Actual Innocence, Albany, NY.

Redlich, A. D. (2007, September). *False confessions in interrogations and plea arrangements.* Invited address at Interrogations and Confessions: Conference sponsored by the APA Science Directorate (Chairs: G.D. Lassiter & C. Meissner). El Paso, TX.

Redlich, A. D. (2007, July). *Understanding and appreciation among mental health court participants*. Invited presentation to the MacArthur Foundation Research Network on Community Mandated Treatment, Baltimore, MD.

Redlich, A. D. (2006, November). *Psychologists for Social Responsibility Seminar for Psychologists and Military Interrogators*. Washington, DC (Invited member of small group conference.)

Redlich, A. D. (2006, October). *The second generation of mental health courts*. Invited address to the Conference on Mental Illness and the Courts. St. Francis College, Brooklyn, NY.

Redlich, A. D. (2005, June). *Mental health courts*. Invited address to the New York State Office of Mental Health-sponsored conference on Mandated Community Treatment. Albany, NY.

35

Redlich, A. D. (2005, June), *The National Summit on Mental Health Courts*. Racine, WI: Wingspread Foundation Conference Center. (Invited member of small group conference.)

Redlich, A. D. (2005, March). *Psychology and law research.* Invited address to Women and Justice Career Day Program. Russell Sage College, Albany, NY.

Redlich, A. D. (2004, July). *The totality of the circumstances in juvenile interrogations: Weighing the factors*. Invited presentation to the New York State Defense Attorney Association, Saratoga Springs, NY.

Redlich, A. D. (2002, June). *The police interrogation of juveniles*. Invited address to the Southwest Region of Juvenile Public Defenders, American Bar Association, Houston, TX.

Redlich, A.D. (2001, July). *The pre-adjudication of juveniles: Developmental differences in responses to interrogation.* Invited presentation to the MacArthur Foundation Research Network on Adolescent Development and Juvenile Justice, Boston, MA.

### CONFERENCE PRESENTATIONS [2015-present; pre-2015 available upon request]

Luna, S. & Redlich, A.D. (2020, March). The Impact of Discovery Information and Guilt on Defendant Plea Decisions. In A. Dezember & S. Luna (Chairs) *Understanding Guilty Pleas and Modeling Plea Decision-Making.* Paper presented at the annual meeting of the American Psychology-Law Society in New Orleans, Louisiana.

Dezember, A., Woestehoff, S.A., Quas, J.A., & Redlich, A.R. (2020, March). Impact of Plea Knowledge & Attorney Satisfaction on Procedural Justice Perceptions for Guilty Pleas. In S. Luna & A. Dezember (Chairs) *Understanding Guilty Pleas and Modeling Plea Decision-Makin*g. Paper presented at the American Psychology-Law Society Annual Conference, New Orleans, LA.

Luna, S. & Redlich, A.D. (2020, March). Examining Controversial Veterans Treatment Court Issues: Insights from Court Actors.  Paper presented at the annual meeting of the American Psychology-Law Society in New Orleans, Louisiana.

Redlich, A.D. (2020, March). Discussant. In S. Cardenas (Chair), *A plea you can't refuse: Evaluating psychological and structural predictors of plea decisions*. Presented at the annual meeting of the American Psychology-Law Society in New Orleans, Louisiana.

Domagalski, K.A., Bisla, I., Zamora, E.I., Redlich, A,D, Quas, J.A. (2020, March). *Understanding the Impact of Youth Engagement During the Plea Process*. Paper presented at the annual conference for the American Psychology-Law Society (AP-LS), New Orleans, LA.

Woestehoff, S. A., & Redlich, A. R. (2020, March). *The influence of high profile cases and suspect guilt on investigators' confirmation bias.* Data blitz presented at The American Psychology-Law Society, New Orleans, LA.

Luna, S., Redlich, A. D., West, J., & Petersen, K. (2019, November). The Influence of Discovery and Guilt on Defendant Plea Decisions. In R. Norris (Chair) *Miscarriages of Justice.* Paper presented at the annual meeting of the American Society of Criminology in San Francisco, California.

Redlich, A.D., Luna, S., & Dezember, A. (2019, November). The Validity of Misdemeanor Pleas. In A. Smith (Chair) *Assembly Line Injustice in the Lower Criminal Courts.* Paper presented at the annual meeting of the American Society of Criminology in San Francisco, California.

Dezember, A., Stoltz, M., Manley, M., Woodruff, M., Woestehoff, S., & Redlich, A.D. (2019, May). *The Strength of Evidence in the Plea Bargaining Process.* Paper presented at the Annual Meeting on Law and Society, Washington, DC.

Norris, R.J., Weintraub, J., Acker, J.A., Redlich, A.D., & Bonventre, C. (2019, April). *Documenting the crimes of true perpetrators in cases of wrongful convictions.* Innocence Network conference, Atlanta, GA.

Sadri, A., Cathcart, E., Redlich, A.D., & Quas, J.A. (2019, March). Young engagement in the plea process: What happens when neither youth nor parents understand? In L.C. Malloy (Chair), *Do parents know best? The role of parents in juvenile interrogation and plea bargaining contexts.* Paper presented at the American Psychology Law Society conference, Portland, OR.

Luna, S., Redlich, A.D., & Woestehoff, S. (2019, March). *Reducing prosecutorial misconduct: The impact of two discovery policies.* Poster presented at the American Psychology Law Society conference, Portland, OR.

Woestehoff, S., Redlich, A. D., Cathcart, E., & Quas, J. A. (2019, March). *Legal professionals' perceptions of juvenile engagement in the plea process.* Paper presented at the American Psychology Law Society conference, Portland, OR.

Dezember, A, Luna, S., Woestehoff, S., Stoltz, M., Manley, M., & Redlich, A.D. (2019, March). *Knowing, intelligent, and voluntary: The validity of misdemeanor pleas.* Paper presented at the American Psychology Law Society conference, Portland, OR.

Luna, S. & Redlich, A.D. (2019, February). *A national survey of veterans treatment court actors.* Paper presented at the Western Society of Criminology annual conference, Honolulu, HI.

Luna, S., Woestehoff, S., & Redlich, A.D. (2018, November). Examining the impact of discovery policies on prosecutorial misconduct. In R.J. Norris (Chair), *Wrongful Convictions: Prosecutors, Public Attitudes, and Jailhouse Lawyers.* Paper presented at the Annual Meeting of the American Society of Criminology, Atlanta, GA.

Dezember, A., Luna, S., Stoltz, M., Manley, M., & Redlich, A.D.  (2018, November) The Validity of Misdemeanor Guilty Pleas. In M. Omori (Chair), *Advances in Study of Guilty Pleas and Prosecution.* Paper presented at the Annual Meeting of the American Society of Criminology, Atlanta, GA.

37

Sadri, A., Cathcart, E., Quas, J.A., & Redlich, A.D. (2018, May). *Teens who plead guilty: Parents' and teens' engagement in and understanding of the plea process*. Poster presented at the Association of Psychological Science, San Francisco, CA.

Dezember, A., Woestehoff, S., Manley, M., & Redlich, A.D. (2018, March). Alford pleas and the presumption of strong evidence. In M. Wilford (Chair), *A system of pleas*. Paper presented at the American Psychology-Law Society, Memphis, TN.

Woestehoff, S., Cathcart, E., Dezember, A., Marquina, A., Quas, J.A., & Redlich, A.D. (2018, March). Defendants' engagement in juvenile and criminal plea hearings. In S. Woestehoff (Chair), *Juveniles and guilty pleas*. Paper presented at the American Psychology-Law Society, Memphis, TN.

Redlich, A.D. (2017, November). Developing a strategy for expanding wrongful conviction research. In A. Moore (Chair), *In their own words: The human aspect of wrongful conviction*. Invited presentation in NIJ-sponsored panel. Paper presented at the American Society of Criminology conference, Philadelphia, PA.

Redlich, A.D., Woestehoff, S., Dezember, A., Cathcart, E., & Quas, J. (2017, November). Talking to youth about pleading guilty: Perceptions of judges and attorneys. In C. Kelly (Chair), *Forensic interviewing across the criminal justice system*. Paper presented at the American Society of Criminology conference, Philadelphia, PA.

Dezember, A., Woestehoff, S., & Redlich, A.D. (2017, November). *Does it pay to plea: The strength of evidence in the bargaining process*. Paper presented at the American Society of Criminology conference, Philadelphia, PA.

Redlich, A.D., Miller, J., & Kelly, C. J. (2017, July). *Accusatorial and information-gathering interview and interrogation methods: A multi-country comparison*. International Investigative Interviewing and Interrogation Research Group conference, Monterrey, CA.

Redlich, A.D., & Han. W. (June, 2017). *Racial/ethnic differences in community behavioral health treatment: A comparison of mental health and traditional courts*. Center for Evidence-Based Crime Policy conference, Arlington, VA.

Clark, A. & Redlich, A.D. (2016, November). *The impact of confessions on prosecutorial misconduct*. Paper presented at the American Society of Criminology conference, New Orleans, LA.

Redlich, A.D. (2016, November). Elephants in the courtroom: Investigating under-researched aspects of wrongful conviction. In E. Martin (Chair), *NIJ's inquiries into wrongful convictions.* Paper presented at the American Society of Criminology conference, New Orleans, LA.

Turner, J. I, & Redlich, A. D. (2016, June). Two models of pre-plea discovery in criminal cases: An empirical comparison. In E. Kerrison (Chair), *Unpacking the plea bargaining process: Exploring defendant and defense counsel perspectives*. Paper presented at the Law and Society Association conference, New Orleans, LA.

38

Redlich, A.D. (2016, March). Discussant. In K. Houston (Chair), *Current advances in investigative interviewing.* Paper presented at the American Psychology-Law Society, Atlanta, GA.

Han, W. & Redlich, A.D. (2016, March). *The impact of community treatment on recidivism in mental health courts*. Poster presented at the American Psychology-Law Society, Atlanta, GA.

Turner, J. I, & Redlich, A. D. (2016, March). To provide or not to provide (pre-plea discovery): Experiences of prosecutors and defenders from differing state discovery models. In V. Edkins (Chair), *The psychology of plea decisions*. Paper presented at the American Psychology-Law Society, Atlanta, GA.

Turner, J. I, & Redlich, A. D. (2015, November). To provide or not to provide (discovery). In *Examining attorneys and their work*. Paper presented at the American Society of Criminology meeting, Washington, DC.

Kelly, C. J., & Redlich, A. D. (2015, June). Interrogation domains, surveys, and observations: Reflections and policy implications. In G. D. Lassiter (Chair), *Reforming interrogation procedures: Connecting science and policy.* Paper presented at the Society for Psychological Study of Social Issues meeting, Washington, DC.

Shteynberg, R. & Redlich, A. D. (2015, March). *The role of gender in plea decision rationales.* Poster presented at the American Psychology Law Society meeting, San Diego, CA.

Redlich, A. D. (2015, March). Discussant. In G. DeClue (Chair), *Interrogations and confessions*. Paper presented at the American Psychology Law Society meeting, San Diego, CA.

## <u>CHAIRED SYMPOSIA</u>

Kerrison, E. & Redlich, A. D. (2015, October). *Unpacking the plea-bargaining decision-making process for defendants and their attorneys*. Symposium presented at the Mid-Atlantic Law and Society Association, John Jay College of Criminal Justice, New York, NY.

Redlich, A. D. (2014, March), *Guilty pleas and other legal responsibility taking*. Symposium presented at the American Psychology-Law Society, New Orleans, LA.

Redlich, A. D. (2013, November), *Miscarriages of justice: Race, alibis, and admissions.* Symposium presented at the American Society of Criminology meeting, Atlanta, GA.

Redlich, A. D. (2012, November), *Miscarriages of justice: Broadening methodology in innocence research*. Symposium presented at the American Society of Criminology meeting, Chicago, IL.

Redlich, A. D. (2012, March). *Current research on intelligence interviewing and interrogation*. Symposium presented at the American Psychology Law Society conference, San Juan, Puerto Rico.

Redlich, A. D. (2011, November). *The decline of trials and the rise of a new perspective on the importance of evidence in the plea bargaining process*. Symposium presented at the American Society of Criminology conference, Washington, DC.

Redlich, A. D. (2011, November). *Current research on intelligence interviewing and interrogation*. Symposium presented at the American Society of Criminology conference, Washington, DC.

Malloy, L. & Redlich, A. D. (2008). *Situational and dispositional risk factors for false confessions*. Symposium presented at the American Psychology-Law Society Conference, Jacksonville, FL.

Redlich, A. D. (2008). *Understanding in mandated community treatment*. Symposium presented at the American Psychology-Law Society Conference, Jacksonville, FL.

Bishop-Josef, S., & Redlich, A. D. (2006). *Psychologists advocating for children and families: Why, who, and how?* Symposium presented to the American Psychological Association Convention, New Orleans, LA.

Redlich, A. D., & Morris, L. (2006). *How long does diversion take?* Symposium presented to the National GAINS Conference, Boston, MA.

Redlich, A. D., & Petrila, J. (2006). *Mental health courts: Legal, procedural, and methodological controversies.* Symposium presented at the American Psychology-Law Society Conference, St. Petersburg, FL.

Heath, W., Redlich, A., & Costanzo, M. (2005). *Advice for graduate students and beginning professionals*. Symposium at the American Psychology Law-Society Conference, La Jolla, CA.

Redlich, A. D. (2003). *The interrogation of vulnerable persons: Research issues, legal responses, and policy implications*. Symposium presented at the joint European Association of Psychology and the Law and the American Psychology-Law Society, Edinburgh, Scotland.

Redlich, A. D., & Ghetti, S. (2002). *The competence of child suspects and defendants: Perceived and actual capabilities*. Symposium presented at the American Psychology-Law Society Conference, Austin, TX.

40

Steiner, H., & Redlich, A. D. (2000). *Response and responsibility: The psychology and psychiatry of false confessions*. Symposium presented at the American Academy of Child and Adolescent Psychiatry meeting, New York, NY.

Redlich, A. D., & Ghetti, S.  (2000). *Juveniles in the justice system: Factors relating to the commission, investigation, and judgment of adolescent crime*. Symposium presented at the American Psychology-Law Society Conference, New Orleans, LA.

Goodman, G. S., & Redlich, A. D. (1997). *Recent developments and dilemmas in ethical issues for developmental research*. Symposium presented at the Society for Research in Child Development Biennial Conference, Washington, DC.

## TEACHING EXPERIENCE

*George Mason University*
Psychology and the Criminal Justice System (Undergraduates, Fall 2015, 2016; Grad, Fall 2016; Spring 2019)
Criminology, Law and Society Capstone seminar (Undergraduates, Spring 2016, 2017, 2018; Fall 2017; Spring 2018; Fall 2019; Spring 2020)
Graduate Professionalization Seminar (Grad, Spring 2018; 2019; 2020)
Criminology, Law and Society Honors' seminar (Undergraduates, Fall 2018-Spring 2019)
Grant Writing (PhD Students, Fall 2020)

*University at Albany*
Experimental Criminology (MA-PhD students, Fall 2009; Spring 2015)
Grant Writing (PhD students, Fall 2013)
PhD Orientation to Academia (PhD students, Fall 2012, 2013)
Psychology and the Criminal Justice System (Undergraduates, Fall 2009-2014)
Psychology and the Legal System (MA-PhD students, Spring, 2009)
Wrongful Convictions (Undergraduates, Spring 2013-2015; MA-PhD students, Spring 2010, 2012, 2014)

*Russell Sage College*
Topics in Forensics (MA students, Spring 2005)

*Stanford University*
Child Development (Adult Continuing Education students, Spring 2002)

## SELECTED SERVICE

2019--        Advisory Board Member, Dr. Miko Wilford's (University of Massachusetts, Lowell) NSF CAREER Award

2019--        American Psychology Law Society Scientific Review Paper Committee Member

2016-2018    Expert Advisory Panel, SJ 47 Study of Mental Health Services in the 21st Century in VA

2016--        Senior Fellow, Center for Evidence-Based Crime Policy, George Mason University

2015-2017    Committee on Legal Issues (COLI), American Psychological Association

2013-2014    2014 Conference Co-Chair, American Psychology-Law Society (Division 41, APA),

New Orleans, LA, Appointed position

| | |
|---|---|
| 2013-2014 | School of Criminal Justice/Hindelang Center Seminar Series Coordinator |
| 2011-2013 | Research Working Group, Strategic Plan Implementation; University at Albany |
| undisclosed | National Science Foundation, Law and Social Science Dissertation Review Panel; Disrupting Operations of Illicit Supply Networks Review Panel |
| undisclosed | MacArthur 'Genius Award' Fellowship candidate evaluator |
| 2010 | Planning Advisory Board member, *Symposium on Crime and Justice: The Past and Future of Empirical Sentencing Research* (PI: S. Bushway). Conference sponsored by the National Science Foundation |
| 2009- | Advisory Board member, Center on Wrongful Conviction of Youth, Northwestern University School of Law |
| 2009-2014 | Graduate Academic Council's Committee on Education Policy & Procedures, University at Albany |
| 2009-2015 | Co-Editor, *Actual Innocence*, American Psychology-Law Society (Division 41, APA) Newsletter (with doctoral student, Robert Norris) |
| 2008-- 2014 | Graduate Admissions Committee, School of Criminal Justice, University at Albany [Chair and member] |
| 2007 – 2010 | Executive Committee, Member-At-Large, American Psychology-Law Society (Division 41, APA), Elected position |
| 2005 – 2008 | Executive Committee, Member-At-Large for Advocacy, Society for Child and Family Practice and Policy (Division 37, APA), Elected position |
| 2005 – 2015 | Internal Review Board Member, Policy Research Associates, Inc |
| 2005 – 2012 Newsletter | Co-Editor, *Teaching Tips*, American Psychology-Law Society (Division 41, APA) |
| 2004 – 2007 | Chair, Teaching, Training, and Careers Committee, American Psychology-Law Society (Division 41, APA) |

**Editorial Boards**:
2019—present  *The Wrongful Conviction Law Review*
2019—present  *Criminology and Public Policy*
2016—present  *Journal of Experimental Criminology*
2015—present  *Journal of Quantitative Criminology*
2010 – 2018   *Albany Law Review* [special annual issue on Miscarriages of Justice]
2008 – present *Law and Human Behavior*
2007 – present *Psychology, Public Policy, and Law*
2007 – 2010   *Behavioral Sciences of Terrorism and Political Aggression: Journal of the Society for Terrorism Research*

**Ad hoc Journal, Publication, and Granting Agency Reviews**:

*American Journal of Criminal Justice; Anderson Publishing; Archives of General Psychiatry; Behavioral Sciences and the Law; Child Abuse and Neglect; Child Maltreatment; Crime and Delinquency; Criminal Justice and Behavior; Criminal Justice Policy Review; Criminology; Current Directions in Psychological Science; Harry Frank Guggenheim Foundation; Journal of Applied Social Psychology; Journal of Child Sexual Abuse; Journal of Clinical Child and Adolescent Psychology; Journal of Quantitative Criminology; Justice Quarterly; Legal and Criminological Psychology; National Science Foundation; Ontario Mental Health Foundation; Oxford University Press; Personality and Individual Differences; Psychology, Crime, and Law; Psychiatric Services; Social Problems; Western Criminology Review; Wiley-Blackwell Publisher; William T. Grant Foundation; Worth Publishers*

**Student and Postdoctoral Mentorship**

| | |
|---|---|
| Honors: | Nivedita Angaria (George Mason University, Psychology; APLS Minority Affairs Committee |
| (chair) | Diversity Research Award); Honorable Mention for Outstanding Thesis Award in Psychology |
| | Allie Briggs (University at Albany) |
| | Kathryn Cronin (University at Albany) |
| | Kaleigh Haines (George Mason University, Psychology; Honorable Mention for Outstanding Thesis Award in Psychology; Outstanding Poster Award at College of Humanities and Social Science Undergraduate Research Symposium) |
| | Alex Marquina (George Mason University, Psychology; received Outstanding Thesis |
| Award) | |
| | Delonie Plummer (University at Albany) |
| | Krista Wallace (University at Albany) |
| | Claire Wooster (George Mason University, Psychology) |
| Masters/Comp: | Catherine Bonventre (University at Albany) |
| | Reyna Cartagena (George Mason University) |
| | Lauren Duhaime (George Mason University) |
| | Rachel Jensen (George Mason University; Chair) |
| | Jennifer Kamorowski (George Mason University) |
| | Samantha Luna (George Mason University; Chair) |
| | Cynthia J. Najdowski (University of Illinois, Chicago) |
| | Robert Norris (University at Albany) |
| | Sarah Reuter (George Mason University) |
| | Luzi Shi (University at Albany) |
| | Reveka Shteynberg (University at Albany; Chair) |
| | Jennifer Weintraub (University at Albany) |
| | Shi Yan (University at Albany) |
| | Ronald Zimmerman (George Mason University) |
| Doctoral: | Emily Alexoudis (George Mason University; Psychology) |
| | Sara Berg (University at Albany) |
| | Kathleen M. Bolling (Indiana University, Bloomington) |
| | Catherine Bonventre (University at Albany) |
| | Andrew Davies (University at Albany) |
| | Sara Debus-Sherrill (George Mason University) |
| | Amy Dezember (George Mason University; Chair) |
| | Alison Farringer (University of Cincinnati) |
| | Erika Fountain (Georgetown University) |
| | Victoria Goldberg (George Mason University) |
| | Woojae Han (University at Albany, School of Social Welfare; Co-Chair) |
| | Johanna Hellgren (John Jay College of Criminal Justice) |
| | Kelsey Henderson (University of Florida, Gainesville) |
| | Alexis Hiley (John Jay College of Criminal Justice) |

                     Glenys Holt (University of Tasmania)
                     Leona Jochnowitz (University at Albany)
                     Kideuk Kim (George Mason University)
                     Catherine Kimbrell (George Mason University)
                     Siyu Liu (University at Albany)
                     Kimberly Meyer (George Mason University)
                     Robert Norris (University at Albany)
                     Jeffrey Sandler (University at Albany)
                     Jeremy Shifton (University at Albany; Chair)
                     Reveka Shteynberg (University at Albany; Co-Chair)
                     Jennifer Weintraub (University at Albany)
PostDoctoral:        Christopher Kelly (University at Albany)
                     Skye Woestehoff (George Mason University)

Other formal mentoring:
                     Erika Fountain (University of Maryland, Baltimore County; Eminent Scholar Mentor)
                     Jennifer Perillo (Indiana University of Pennsylvania; PI Mentorship Academy mentor)
                     Katherine Hazen (University of Nebraska, Lincoln; Preparing Future Faculty mentor)

**Selected Media Appearances:**
"*Geraldo at Large*" a national television show*;* "*Annie Armen Live*" a national radio show; WWJ All News Radio, Detroit, MI (CBS-owned affiliate); Interviewed and cited prominently in *New York Times Upfront* (Patricia Smith); *Psychiatric News* (Aaron Levin); *The National Law Journal* (Leonard Post); *San Francisco Chronicle* (John Koopman); *APA Monitor* (Zak Stambor; Erika Packard); *Houston Chronicle, Syracuse The Post-Standard* (John O'Brien), *Newsday* op-ed (with James R. Acker); *Propublica* (Joaquin Sapien).
NPR academic minutes, 11/25/14: http://academicminute.org/2014/11/allison-redlich-university-at-albany-mental-health-courts/; *The Crime Report* (David Krajicek); *Undisclosed* podcast.

## CURRENT AND PAST MEMBERSHIP IN PROFESSIONAL ORGANIZATIONS
American Society of Criminology
American Psychological Association
Association for Psychological Science
American Psychology - Law Society (Div. 41, APA)
Division of Developmental Psychology (Div. 7, APA)
Division of Experimental Criminology (ASC)
International Investigative Interview Research Grp
Law and Society Association
Society for Child and Family Practice and Policy (Div. 37, APA)
Section on Child Maltreatment (Div. 37, Section 1, APA–Graduate Student President, 1999)