1  **Marquis Aurbach Coffing**
   Craig R. Anderson, Esq.
2  Nevada Bar No. 6882
   10001 Park Run Drive
3  Las Vegas, Nevada 89145
   Telephone: (702) 382-0711
4  Facsimile: (702) 382-5816
   canderson@maclaw.com
5    *Attorneys for Defendants LVMPD, James LaRochelle and Thomas Thowsen*

6               **UNITED STATES DISTRICT COURT**

7                  **DISTRICT OF NEVADA**

8  KIRSTIN BLAISE LOBATO,                          Case Number: 2:19-cv-01273-RFB-EJY

9                            Plaintiff,

                                                   **LVMPD DEFENDANTS' REPLY IN**
10      vs.                                        **SUPPORT OF MOTION FOR**
                                                   **SUMMARY JUDGMENT**
11 LAS VEGAS METROPOLITAN POLICE
   DEPARTMENT; THOMAS THOWSEN;
12 and JAMES LAROCHELLE,

13                           Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

On June 28, 2021, defendants filed their motion for summary judgment (the "Motion"). (ECF No. 67.) Plaintiff filed her response on August 31, 2021 (the "Response"). (ECF No. 75.) Defendants now reply.

Plaintiff, Kirstin Lobato ("Lobato"), has never been found innocent of the murder of Duran Bailey. Two separate juries heard the same arguments raised in her Response and convicted her. The Nevada Supreme Court overturned the second conviction because her own attorneys failed to retain an entomologist to rebut the State's time of death theory. No court has ever found that defendants Thowsen and LaRochelle ("the Detectives") lacked probable cause or committed any misconduct.

Lobato's Response significantly limits the issues for this Court. The Response expressly abandons the coerced confession claim and implicitly abandons the withholding of evidence claim. Lobato now claims the Detectives "fabricated evidence in their [Officer's Report (Ex. C[1]) and the Arrest Report (Ex. MM)] falsely claiming that [she] had confessed to [Duran Bailey's] murder, when she had not." (ECF No. 75 at 1:10-11.) She alleges the Detectives fabricated evidence regarding the (1) date of her attack, (2) location of her attack, (3) description of her attacker, and (4) nature of her attack. Each argument is easily refuted.

- **Timing:** Lobato claims the Detectives fabricated evidence by implying she "confessed" to the Bailey murder when they actually knew she was discussing a Memorial Day weekend attack. In truth, Lobato *never* told the Detectives her attack occurred over Memorial Day weekend and only told them her attack occurred "over a month ago."

- **Location:** Lobato claims the Detectives fabricated evidence by writing she was "unsure" that her attack occurred at a Budget Suites on the east side of Las Vegas. In truth, both reports acknowledge that Lobato claimed her attack occurred on the east side of Las Vegas at a Budget Suites and accurately represented that she *appeared* unsure of the location due to drug use.

- **The Attacker:** Lobato claims the Detectives fabricated evidence by omitting the word "giant" from her description of her attacker. In truth, both reports contain her description of her attacker minus the word "giant". Still, the District Attorney and Lobato's own criminal defense team were provided a copy of her statement and, therefore, knew of the statement.

---

[1] All exhibit cites in this Reply refer to the exhibits attached to the Defendants' Motion for Summary Judgment.

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

- **Nature of Attack:** Lobato claims the Detectives fabricated evidence stating in their Officer's Report that she affirmatively "cut off" her attacker's penis. (The Arrest Report only states she "cut it.") In truth, during her statement, Lobato told the Detectives that she intended to cut off her attacker's penis, but was unsure as to whether she was successful. And, several of Lobato's own alibi witnesses told the Detectives that she told them she had severed her attacker's penis.

In essence, Lobato is asking this Court to find the Detectives had a constitutional obligation to accept her statements at face value, and disregard any evidence that contradicted her statement or connected her to the Bailey murder. There is no such constitutional requirement. It is undeniable that there was probable cause to arrest and detain her, and there is no evidence of any fabrication or withholding of evidence by the Detectives.

## II.    LEGAL ARGUMENT

### A.    COUNT I: 42 U.S.C. §1983 INVOLUNTARY CONFESSION

Lobato claimed that the Detectives coerced her into providing an involuntary confession in violation of her Fifth and Fourteenth Amendment rights. (ECF No. 1 at ¶128.) She retained two experts (Peters and Redlich) to opine on the issue. Lobato's Response admits that she lacks any evidence supporting this claim and that she "no longer pursues her Involuntary confession Claim (Count 1)." (ECF No. 75 at 35, n.7.) Lobato does imply that her *Monell* claim against LVMPD continues on the issue because "LVMPD does not mention or make any argument that LVMPD is entitled to summary judgment on Plaintiff's *Monell*." (*Id.*) However, Lobato's abandonment of her claim is also fatal to her *Monell* claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the [constitutional violation] is quite beside the point."). Therefore, summary judgment is appropriate on Lobato's §1983 involuntary confession claim and any related *Monell* claim.

### B.    COUNT II: PLAINTIFF'S 42 U.S.C. §1983 DUE PROCESS/DENIAL OF FAIR TRIAL CLAIM

The main focus of Lobato's lawsuit is her Fourteenth Amendment denial of fair trial claim. Although Lobato has always maintained the Detectives both fabricated evidence and

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

withheld evidence, her Response, via its silence, no longer accuses the Detectives of withholding evidence. The Nevada Supreme Court addressed this same argument and found "Lobato failed to demonstrate that the evidence was withheld by the State or that it was material, that is, that there was reasonable probability that the evidence would have affected the outcome of trial." *See Lobato v. State*, 385 P.3d 618 (Nev. 2016). Lobato's own expert agrees that all exculpatory evidence was turned over by the State. (Ex. DD at 80:10-81:9.)

The Response now limits Lobato's Fourteenth Amendment claim to her allegation that the Detectives fabricated evidence. She claims evidence of direct and circumstantial fabrication.

### 1. <u>Direct fabrication</u>

#### a. **Lobato's Response**

Lobato, in a desperate attempt to avoid summary judgment, changes her entire fabrication theory. She now argues that her fabrication claim is based on the Detectives' "*deliberate mischaracterization* of the statements made by [Lobato] during the interrogation as being somehow related to the Bailey murder . . ." (ECF No. 75 at 36:17-37:6 (emphasis in original)). She claims that Detectives knowingly and intentionally took statements from her voluntary statement that involved a Memorial Day sexual assault and spun them to "somehow being related to the Bailey murder" in an attempt to frame her. Lobato argues the detectives "knew that [her] statement strongly contradicted the known information from the Bailey murder in a myriad of ways, including (1) when the attack on [Lobato] occurred, (2) the location of the attack, (3) the description of the attacker, and (4) what actually occurred during the attack of Plaintiff that was impossible to reconcile with the Bailey murder." (ECF No. 75 at 37:6-13.)

#### b. **Defendants' Reply**

To prove a fabrication of evidence claim, a plaintiff must demonstrate that: (1) the detectives continued their investigation "despite the fact [they] knew or should have known that [the plaintiff] was innocent; or (2) [they] used investigate techniques that were so coercive and abusive that [they] knew or should have known the techniques would yield

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

1  false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

2  Admissible evidence of negligent inaccuracy on the part of the investigators alone is

3  insufficient to prove a fabrication of evidence claim, *see id.* at 1077, but investigators "who

4  maliciously or recklessly make[] false reports . . . may be ... liable for damages incurred as a

5  proximate result of those reports," *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th

6  Cir. 2007); *Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) (not all inaccuracies in an

7  investigative report give rise to constitutional claim. Carelessness and mistakes of "tone" are

8  not enough).

9         Lobato's Response offers no evidence the Detectives knew she was innocent and

10  suggests no motive explaining why the Detectives would frame her. In addition, via silence,

11  Lobato also provides no evidence the Detectives used "coercive or abusive" techniques in

12  obtaining information as every witness (including Lobato) testified they told the Detectives

13  the truth, and they were never coerced or abused. (ECF No. 67 at 59:24-62:9.) Therefore, to

14  survive summary judgment, Lobato must provide admissible evidence supporting her theory

15  the Detectives unconstitutionally *interpreted* her statement regarding (1) the timing of the

16  attack, (2) the location of the attack, (3) the characteristics of her attacker, and (4) the nature

17  of the attack.

18                    **(1)    The timing: Memorial Day v. July 8th**

19         Lobato claims that the Detectives knowingly fabricated evidence by suggesting her

20  attack occurred on July 8, 2001 when they knew it really occurred "over Memorial Day

21  weekend." (ECF No. 75 at 37:15.) In truth, substantial evidence supported the Detectives'

22  belief that Lobato was discussing the July 8th murder in her statement. Lobato makes four

23  separate arguments regarding the timing issue. Each is easily refuted.

24         First, Lobato complains the Detectives' reports "affirmatively indicat[e]" she

25  confessed to the July 8th murder when they knew or should have known she was actually

26  describing a Memorial Day attack. (ECF No. 75 at 37:15-21.) This is patently false. The

27  Detectives never labeled Lobato's statement as a "confession" to the July 8th murder. (Exs.

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

C, MM,[2] and DD at 54-55.) Equally important, Lobato admits she *never* told the Detectives her attack occurred over Memorial Day weekend. (Ex. A at 144-145) During Lobato's interview, the date of the incident was discussed twice. At the start of the interview, the Detectives told Lobato they were discussing an incident that "happened a couple of weeks ago." (Ex. I at 2.) Lobato did not correct the Detectives or protest this statement. She now blames her acquiescence on the Detectives because "I didn't know how important it was." (Ex. H at 143.) At the very end of the interview, Lobato did state the event occurred "over a month ago." (Ex. I at 27.) This statement would have placed the incident around June 20, 2001 - over three weeks after Memorial Day. In short, Lobato never provided the Detectives any reason to believe that the incident occurred between May 26-28 - Memorial Day weekend.[3] The broad date range given by Lobato was as close to July 8th as Memorial Day.

Other witnesses provided information supporting a July 8th date. Laura Johnson told the Detectives that Lobato had confided to Dixie Tienken she had cut off a man's penis in Las Vegas and was hiding out in Panaca. Tienken confirmed these facts and stated it was her impression Lobato was discussing an event that "had just happened a day or two before" her July 10th or 11th visit with Lobato. (Ex. J at 12.) Thus, the Detectives had reliable information that placed the attack on July 8th. The Detectives were justified in relying on Tienken's account for probable cause purposes. *See U.S. v. Butler*, 74 F.3d 916, 920-21 (9th Cir. 1996) (citing *Franks v. Delaware*, 438 U.S. 154, 165 (1978)) (Probable cause to arrest may be based upon hearsay statements).

Second, with respect to the timing issue, Lobato alleges the Detectives made a knowingly false report by stating "Lobato said she went back to Panaca on July 13th and contacted a doctor . . .due to her depression from the incident." (ECF No. 75 at 37:22-25.) According to Lobato, this statement falsely implied a recent onset of depression in close proximity to the July 8th date. This is the truth. Lobato told the Detectives she returned to

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[2] Characterizing Lobato's interview as a "taped statement."

[3] The "Memorial Day Weekend" alibi did not come to fruition until after Lobato's arrest through her alibi witnesses who all admitted to contact with Lobato's family prior to speaking with the Detectives.

MAC:14687-221 4465366_2

Panaca on July 13th. (Ex. I at 15.) And, according to Lobato's own medical records, Lobato first saw her doctor on July 5, 2001, because she thought she was being poisoned. There is no mention of depression or a Memorial Day attack. (Ex. W.) On July 13th, Lobato's mother called the doctor reporting *new* symptoms, including "restlessness and anxiety" and, on July 16th, Lobato received a prescription for antidepressants. (*Id.*) Thus, Lobato's medical records supported the representation that she became depressed after July 8th and returned home on July 13th to get help.[4]

In Lobato's third timing issue, she argues the Detectives knew they had the wrong date because, after her arrest, Stephen Pyszkowski provided them with a tow receipt showing Lobato had left her vehicle at Jeremy Davis's home over Memorial Day weekend. (ECF No. 75 at 38:9-15.) No one disputes Lobato left her vehicle at Jeremy's house in May 2001. However, Pyszkowski testified Lobato's leaving of her vehicle at Jeremy's had nothing to do with a Budget Suites attack. Pyszkowksi testified he rescued Lobato twice from violent attacks – one at the Budget Suites in a drug deal gone bad (Ex. JJ at 65-71) and one at a Jack-in-the-Box in May 2001 (*id.* at 66-69). According to Pyszkowski, Lobato's leaving of her car at Jeremy's had absolutely nothing to do with either attack, because it was due to the fact she had a fight with Jeremy. (*Id.* at 80.) Similarly, Tienken also knew about Lobato leaving her car at Jeremy's. She also told the Detectives that it was a separate incident unrelated to Lobato's attack. (Ex. J at 21-22.) Therefore, the fact Lobato left her car at Jeremy's is not dispositive of her attack date as evidence contradicted her statement.

Fourth, and final on the timing issue, Lobato asserts the Detectives falsely labeled Lobato's alibi witness, Heather McBride, as "unsure" regarding when McBride recalled Lobato reporting the attack. McBride, told the Detectives "...was it July fifth or sixth, I would say, or was it, probably the sixth, I think." (Ex. R at p. 3.) The Officer's Report does not use the word "unsure" to describe McBride's recollection. Rather, it accurately states that McBride "thought [the date] was the 5th or 6th." (Ex. C at 23.) The Report includes the exculpatory dates. It also notes that McBride's boyfriend, Christopher Collier, contradicted

---

[4] According to Lobato, the Memorial Day incident made her feel "empowered" and she never sought medical help. (Ex. A at 78-80.)

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

1  her and placed the conversation between July 9th and 11th – after the Bailey murder. (Ex. S

2  at 2.) Thus, the Detectives' statement is accurate regarding McBride's recollection.

3                  **(2)**      **The Location: Budget Suites v. Nevada State Bank**

4         Lobato's second fabrication of evidence argument involves the location of the crime.

5  She claims the Detectives deliberately fabricated their reports to insinuate that Lobato

6  "doubted where the attack occurred." (ECF No. 75 at 39:10-40:14.) Lobato further argues

7  the Detectives "omitted" from their reports "clear and unequivocal statements from [Lobato]

8  that the attack occurred at the Budget Suites on Boulder Highway and Nellis . . ." (*Id.* at

9  39:16-19.)  This argument is also unavailing.

10        The Officer's Report truthfully states Lobato told the Detectives the incident she was

11  describing occurred "at a Budget Suites" on the east side of town. (Ex. C at 16.) The Arrest

12  Report states "Lobato thought that the incident had occurred on the east side of Las Vegas,

13  however, she appeared unsure because of her using methamphetamine at the time and her

14  unfamiliarity with the city." (Ex. MM.) Lobato labels these representations as "extremely

15  and purposefully misleading." (ECF No. 75 at 39:13-15.)

16        The Detectives clearly wrote Lobato reported her attack occurred on the east side of

17  town, and not the west side of town where Bailey was murdered. Lobato only complains the

18  Detectives indicated she was "unsure" of the location. The Detectives wrote that Lobato

19  "*appeared*" unsure – i.e., a subjective interpretation. This subjective statement was based on

20  Lobato telling the Detectives that: "I was out of mind on drugs" (ex. I at p.3), that she did

21  not know Las Vegas "very well at all" (*id.* at 15), and that "[i]t's possible [she could be

22  mistaken of the location]" (*id.*). So, the Detectives' reports state the truth – that Lobato

23  reported an incident on the east side of Las Vegas, but there was evidence she was "unsure."

24  In addition, the Officer's Report correctly notes Tienken reported Lobato told her the attack

25  occurred on West Tropicana or West Flamingo (i.e., the location of the bank). (Ex. C at

26  p.22; Ex. J at p.5.) Thus, the Detectives had reliable evidence supporting their opinion

27  Lobato appeared "unsure" and/or that Lobato had told differing stories.

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Lobato also claims the Detectives fabricated evidence regarding the location of the

2 incident by writing in their Officer's Report Lobato "told them her cell at the jail following

3 her arrest reminded her of the location where she was attacked . . ." (ECF No. 75 at 40:1-9.)

4 Lobato claims she "never made any such statement." (*Id.*) This is patently and provably

5 false. Lobato testified at her 2002 criminal trial. On direct examination, she admitted to this

6 conversation and to telling Detective Thowsen the holding cell "reminded me of the place

7 near where my attack occurred" and then explained her reasons for doing so. (Ex. V at VI at

8 26-27.) Lobato, at her criminal trial, did not deny making the statement as she does now to

9 avoid summary judgment. Lobato's attempt to take back this statement is disingenuous.

10    **(3)    The Attacker: The person who attacked Plaintiff**
**could not have been Duran Bailey**

11    Lobato's third fabrication of evidence claim involves Bailey's physical

12 characteristics. She complains the Officer's Report omits her statement to the Detectives that

13 her attacker was a "giant." (ECF No. 75 at 40:16-20.) Lobato claims a jury could conclude

14 this omission was intentional. (*Id.*) However, Lobato does not dispute this information was

15 easily found in her statement that was provided contemporaneously with the Officer's

16 Report to the District Attorney. The term "giant" is subjective, and Lobato admitted to being

17 "out of my mind" on drugs during the attack. Further, both criminal juries heard this

18 evidence as Lobato testified to her attacker's size at her 2002 criminal trial (Ex. V at VI:11-

19 15), and her statement was admitted in both trials.

20    **(4)    Nature of the attack**

21    Lobato's fourth, and final, fabrication of evidence theory alleges the Detectives

22 "falsely represent[ed] that her attack resembled the murder of Bailey." She claims the

23 Detectives exaggerated the injuries she admitted to inflicting upon her attacker and takes

24 particular issue with the fact the Detectives affirmatively wrote she had "cut off" and

25 "severed" her attacker's penis when, in fact, she only admitted to cutting her attacker once.

26 (ECF No. 75 at 41:1-15.) This is not entirely accurate.

27    Lobato told the Detectives she "cut his penis, I remember that" and that "I think I

28 was trying to cut it off but I don't know if I actually did." (Ex. I at 6.) Thus, Lobato

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   represented to the Detectives that her goal was to cut off her attacker's penis, but she was

2   unsure as to whether she was successful. The Officer's Report does state that she "cut it

3   off." (Ex. C at 17.) The Arrest Report states she "cut it." (Ex. MM.) The Officer's Report's

4   affirmative statement is, at most, negligent. The Arrest Report fixed it. Further, the Officer's

5   Report is consistent with what Lobato told other witnesses: (1) Tienken claimed Lobato told

6   her she severed the penis and "threw it" (Ex. J at 9); (2) Reininger said Lobato told her that

7   she "chopped his dick off" (Ex. L at 17); and (3) Brown reported Lobato said that she cut a

8   penis off (Ex. Q at 3). Thus, there were multiple reports from Lobato's own alibi witnesses

9   supporting the statement. Therefore, the statement was based upon evidence and does not

10  rise to the level of a constitutional violation. *See Spencer*, 857 F.3d at 798 (9th Cir. 2017).

11  And, based upon Lobato's multiple statements to several other witnesses, it cannot be

12  seriously argued this minor error was the cause of her arrest and eventual conviction.

13          Next, Lobato claims the Detectives fabricated their reports by suggesting she

14  "completely lost it" and "snapped" during the attack. (ECF No. 75 at 41:16-25.) Lobato

15  admitted to the Detectives after she grabbed her knife "everything goes black from then on"

16  and "I don't know what I did after that." (Ex. I at 5.) Thus, Lobato described an event where

17  she "lost it" and "snapped."

18          Another issue raised by Lobato is that the Detectives wrote she "hid" her car at

19  Jeremy's house.  She claims they did so to "falsely portray" her as feeling guilty. (ECF No.

20  75 at 3-5.) Lobato did tell the Detectives she "ditch[ed]" her car at Jeremy's house. The

21  word "ditch" implies she took action to be free of an unwanted thing. (Ex. I at 8.) She also

22  complains the Detectives omitted the fact she believed her attacker was alive when she left.

23  However, she spoke of her attacker in the past-tense when she told the Detectives she did

24  not think "anybody would miss somebody like that." (*Id.* at 8.) Therefore, evidence exists

25  supporting each of these representations.

26          Finally, Lobato argues that the Detectives suggested facts to Lobato and emotionally

27  manipulated her. (ECF No. 42:18-27.) As explained in Defendants' Motion, Lobato's own

28  experts agree the Detectives did not coerce or improperly interrogate Lobato. And, Lobato's

1  own deposition testimony directly contradicts her current argument that Detectives coerced

2  her statement before turning on the tape recorder. (Ex. H at 137-139.) However, even if true,

3  "suggestive interview tactics" do not amount to a constitutional violation. *Gausvik v. Perez*,

4  345 F.3d 813, 817 (9th Cir. 2003) (plaintiff has the burden to show by independent evidence

5  the interrogator knew or should have known his tactics would yield false information.) Here,

6  Lobato claims her statement is completely truthful and the Detectives elicited no false

7  information.

### 2.    There is no circumstantial evidence of fabrication

9  Lobato next argues there is "ample evidence from which a jury . . . could easily find"

10  for her on a circumstantial evidence theory. (ECF No. 75 at 43:13-16.) To support this broad

11  statement, Lobato refers to her previous arguments regarding direct fabrication and adds her

12  belief the Detectives could have done a more thorough investigation.

13  Arguing the Detectives could have handled her case differently is much different

14  than arguing that they fabricated evidence. According to Lobato, the Detectives "actively

15  avoided obtaining evidence." (*Id.* at 45:18-21.) A negligent investigation cannot give rise to

16  a 42 U.S.C. §1983 claim as a matter of law. *Daniels v. Williams*, 474 U.S. 328, 331 (1986);

17  *Blaylock v. Schwinden*, 862 F.2d 1352, 1354-55 (9th Cir. 1988). And, it is undisputed the

18  Detectives actively sought out and interviewed the alibi witnesses provided by Lobato and

19  pursued numerous leads. (Ex. C.)

### 3.    Fabrication of evidence summary

21  Lobato generated no evidence that the Detectives fabricated any evidence – either

22  directly or circumstantially – and she has failed in her attempt to show the Detectives

23  continued their investigation despite knowing she was innocent. *See Gausvik*, 345 F.3d at

24  817 (plaintiff must show investigators continued an investigation despite knowing suspect is

25  innocent). The Detectives had both inculpatory evidence and exculpatory evidence and

26  provided all of it to the District Attorney. The fact that Lobato merely disagrees with the

27  Detectives' interpretation of the evidence, does not, in any way, support a fabrication theory.

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Each argument raised by Lobato regarding the timing of the incident, location of the

2   incident, size of the attacker, and the nature of the attack was presented to two juries. Both

3   juries simply did not buy the arguments that Lobato is now making and twice convicted her

4   of the crime. And, the Nevada Supreme Court rejected these same arguments. Lobato has

5   suffered no constitutional violation. At most, she has provided evidence of potential

6   recording errors. *See Gausvik*, 345 F.3d at 817 (arrestee unable to establish investigating

7   officer deliberately fabricated evidence even when officer's affidavit for probable cause

8   supporting arrest contained incorrect facts). *Costanich v. Dept of Soc. Health Svs.*, 627 F.3d

9   1101, 1111 (9th Cir. 2010) ("recording errors and misstatements" or evidence of a "careless

10  or inaccurate investigation that does not ensure an error-free result does not rise to the level

11  of a constitutional violation.")

12      **4.    In addition to failing to prove fabrication, Lobato has also failed
             to establish causation.**

13  It is not disputed that all of the inculpatory evidence and exculpatory evidence

14  created by the Detectives can be found in their homicide file that was turned over to the

15  District Attorney and Lobato's criminal defense teams. Therefore, the Detectives'

16  alternative argument on Lobato's Fourteenth Amendment claim is that the District

17  Attorney's determination of probable cause determination breaks the chain of causation.

18  (ECF No. 67 at 63-64.)

19      **a.    Lobato's Response**

20  Lobato generically argues that the Detectives' "fabricated evidence was provided to

21  the prosecutors" and the magistrate to both arrest and prosecute Lobato. (ECF No. 75 at

22  46:24-27.) The "fabricated evidence" Lobato claims was provided to the prosecutor and

23  magistrate are the Arrest Report (Ex. MM) and the Officer's Report (Ex. C). (*id.*) Lobato

24  claims by submitting the Arrest Report and the Officer's Report to the prosecutor, the

25  Detectives cannot now argue that they are immunized from the District Attorney's

26  independent determination of probable cause. (*Id.* at 46-51.)

27

28

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### b.    Defendants' Reply

In order to defeat the Detectives' claim of prosecutorial independence, Lobato must show that "the criminal proceedings were initiated on the basis of the defendants' intentional and knowingly false accusations and other malicious conduct." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Lobato's causation/prosecutorial independence arguments are the same as her fabricated evidence claims – i.e., the Arrest Report and Officer's Report contain knowingly false information regarding the incident's: (1) timing, (2) location, (3) attacker, and (4) nature of the attack. The Detectives have already defeated Lobato's arguments in the prior section and incorporate those arguments here.

Lobato does include a new piece of evidence. With respect to the date of her attack, Lobato claims that during the unrecorded portion of her interview, she made it clear to the Detectives her attack occurred over a month ago (ECF No. 75 at 47, n.9) and that, despite knowing this, the Detectives intentionally misrepresented Lobato's statement by telling Lobato they were discussing an attack that occurred "a couple of weeks ago." (*Id.; see also* 49:17-26.) In support of this factual representation, Lobato cites to her own deposition. (*Id.*) This is a false representation by Lobato. She never testified at her deposition (or at any time) she told the Detectives this information pre-recording. In truth, Lobato testified the only time she stated the attack occurred "over a month ago" was at the end of her *recorded* statement. (Ex. I at 144-145.) In fact, Lobato testified when the Detectives used the term "a couple of weeks ago," she both heard and understood the statement, but she did not correct it because "I didn't know how important it was." (*Id.* at 143.)

In sum, it is undisputed that the Detectives included all inculpatory and all exculpatory evidence in their homicide file and both the District Attorney and Lobato's criminal defense team received the file. Lobato's expert witness agrees. (Ex. DD at 83.) There is no evidence the Detectives fabricated evidence, withheld evidence, or pressured the District Attorney to file charges. Thus, the District Attorney's (and Magistrate Judge's) independent conclusion that probable cause existed immunizes the Detectives.

5.    **Qualified immunity is appropriate on the fabrication of evidence claim.**

There is no clearly established law prohibiting the Detectives' alleged actions in this case. Lobato defines the clearly established law at far too high a level of generality – it "was clearly established in 2001 that Plaintiff had a constitutional right not to be subjected to criminal charges based on fabricated evidence." (ECF No. 75 at 52:9-13.) The issue is actually whether there was a clearly established right be free from recording errors and misstatements in police reports, as Lobato provided no fabricated evidence. There is no such constitutional requirement. The Ninth Circuit has already stated that even if an investigator includes incorrect information and misstatements in their reports, that alone does not create a constitutional violation. *See Gausvik*, 345 F.3d 813, *Devereaux*, 263 F.3d 1070; *Costanich*, 627 F.3d 1101.

C.    **COUNT III: 42 U.S.C. §1983 CONTINUED DETENTION WITHOUT PROBABLE CAUSE CLAIM.**

The Detectives argue that Lobato's false arrest claim is barred by collateral estoppel and the fact that, as a matter of law, probable cause existed for her arrest. (ECF No. 67 at 65-68.) Every judge and court that has handled this case agrees that the arrest was based upon probable cause.

1.    **Lobato's Response.**

Lobato argues that collateral estoppel is not applicable, and the probable cause determination by the Detectives, the District Attorney, the magistrate judge, the trial judge, and the Nevada Supreme Court were wrong because it was all based on fabricated evidence. (ECF No. 75 at 52-57.) Lobato asserts that any finding of probable cause is "absurd." (*Id.*) Lobato's argument mirrors her fabrication of evidence argument. She argues the Detectives "*knew* that, during her interrogation, [she] was describing an attempted rape that occurred on Memorial Day weekend on the east side of Las Vegas where she defended herself, escaped, and drove away in her car while her attacker was still alive." (ECF No. 52:24-53:2.)

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Recognizing that her own expert agrees that the Detectives articulated probable

2  cause for her arrest, Lobato argues against her own expert's opinion claiming it is essentially

3  worthless because a police practices expert cannot decide, or even opine, on the issue of

4  probable cause. (*Id.* at 56:16-57:22.)

5         **2.    Defendants' Reply**

6    Probable cause "is not a high bar." *See District of Columbia v. Wesby*, 138 S.Ct. 577,

7  586 (2018) (quoting *Kaley v. United States*, 134 S.Ct. 1090, 1103 (2014)). It "requires only a

8  probability or substantial chance of criminal activity, not an actual showing of such

9  activity." *Id.* (citations omitted). In Nevada, a finding of probable cause may be based on

10  only "slight evidence." *See Sheriff, Clark County v. Badillo*, 95 Nev. 593, 594, 600 P.2d 222

11  (1979) (finding probable cause despite conflicting witness testimony when one of the

12  witnesses identified the respondent as one of the perpetrators).

13    Here, it cannot be seriously disputed that probable cause existed. Lobato's case has

14  been reviewed by the Detectives, the District Attorney, the preliminary hearing magistrate

15  judge, the criminal trial court (twice), and the Nevada Supreme Court (twice). All agree that

16  probable cause existed for Lobato's arrest and detention. Similarly, Lobato's expert

17  (1) "believe[s], based on the detectives – they were able to articulate that they had probable

18  cause for the arrest" (Ex. DD at 34); (2) "think[s] the detectives, on their own, established

19  probable cause" (*id.* at 510; and (3) stated "I'm not disputing that they were able to craft a

20  probable cause statement to what they believe was her involvement in the murder of Duran

21  Bailey" (*id.* at 77). Finally, two criminal juries heard Lobato's evidence that the Detectives

22  fabricated evidence regarding the timing, location, description, and nature of the crime and

23  still convicted her.

24    Lobato argues that the Detectives only had information that she "said she once

25  swiped and cut a living man's penis" during a sexual assault on a different side of town.

26  (ECF No. 75 at 56:1-14.) In truth, the Detectives had received information from Johnson,

27  Tienken, and numerous other witnesses (including Lobato's alibi witnesses) suggesting that

28  she had severed a man's penis in Las Vegas, and that the incident had occurred around the

time of the Bailey murder. Lobato is asking this Court to only look at her own statement and purposefully make no reference to substantial evidence connecting her to the crime.

Essentially, Lobato's argument boils down to her belief that the Detectives had a constitutional obligation to accept her statement as completely accurate and resolve all factual disputes in her favor. Unsurprisingly, Lobato cites to no supporting case law. The Detectives concluded that a fair possibility existed that Lobato was involved in the Bailey murder and arrested her. The District Attorney then independently reached the same opinion, as did two juries.

In addition, Lobato cannot meet her burden to show that her criminal prosecution ended in a favorable termination. Nevada has never specifically defined what it means to have a favorable termination for malicious prosecution purposes. Under California law, "if the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." *See Mills v. Covina*, 921 F.3d 1161, 1169-71 (9th Cir. 2019). Here, the dismissal was because the Nevada Supreme Court ruled that Lobato was entitled to a new trial because her criminal attorneys failed her. The Nevada Supreme Court (and eventually the state criminal court) obviously believed probable cause existed to try Lobato a third time because that was the ruling. Thus, there was "some doubt" concerning plaintiff's guilt or innocence. (*Id.*)

## D.    COUNT IV: 42 U.S.C. §1983 FAILURE TO INTERVENE CLAIM

Lobato's fourth claim is for failure to intervene against the defendant Detectives. The Motion argues that because no constitutional violation occurred, no duty to intervene existed and, even if a constitutional violation existed, the duty to intervene only applies in the excessive force context. Finally, because there is no clearly established law that the Detectives had a duty to intervene under these circumstances, qualified immunity applies.

### 1.    **Lobato's Response**

Lobato does not dispute that if this Court finds no constitutional violation occurred, then this claim fails. With respect to defendants' argument that qualified immunity applies,

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

Lobato argues that defendants "misunderstand[] the law in this Circuit." (*Id.* at 65:4.) According to Lobato, the recent case of *Tobias v. Arteaga*, 996 F.3d 571 (9th Cir. 2021) provides the necessary clearly established law.

## 2.   **Defendants' Reply**

First, as discussed above, the Detectives' Arrest Report and Officer's Report do not contain any fabricated evidence, and the documents establish probable cause existed. It remains undisputed that Lobato's own statements regarding the timing of the attack, the location of the attack, the description of her attacker, and the nature of the attack were well documented throughout the Detectives' reports and in their file. All of this information was provided to the District Attorney and Lobato's criminal defense attorneys. Thus, there was no unconstitutional behavior for either Detective to intervene in and stop.

Second, Lobato's qualified immunity argument is misguided. The Ninth Circuit's decision in *Tobias* held that an officer could be subject to §1983 liability where the officer failed to intercede to prevent a coercive interrogation.[5] 996 F.3d at 583-84. Just because the Ninth Circuit has found that the failure to intervene may apply in the coercive interrogation context, it does not mean that there was clearly established duty to intervene in the context presented here (i.e., failure to prevent misrepresentations and omission in reports). *See Fatai v. City and Cty. of Honolulu*, 2021 WL 2941549, *10 (D. Hawaii July 13, 2021) (no duty to intervene to prevent misrepresentations and omissions in reports); further, *Tobias* was decided twenty-years after Lobato's arrest and cannot represent the state of the law in 2001. Lobato has provided no case in this context that existed prior to 2001. *See Woods v. City of Reno*, 2020 WL 4194844, *13 (D. Nev. July 21, 2020).

Further, Lobato is claiming the two Detectives worked together to frame her for the Bailey murder, such facts also do not support a failure to intervene claim. If a "frame" is a constitutional violation, the Detectives cannot be liable for both committing the constitutional violation and then failing to intervene to stop it. *Case v. City of New York*, 233 F.Supp. 3d 372, 289 (S.D.N.Y. 2017) ("[A] defendant cannot be liable for both the

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

---

[5] Lobato has abandoned her coercive interrogation claim.

MAC:14687-221 4465366_2

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

underlying constitutional deprivation and a failure to intervene to stop himself from committing the violation").

### E.    COUNTS V AND IX: 42 U.S.C. §1983 CONSPIRACY CLAIM AND STATE LAW CONSPIRACY CLAIM

Lobato's fifth and ninth claims allege the Detectives conspired to frame her. Initially, the claim was based upon Lobato's belief the Detectives "coerced" her confession and manipulated witness statements. (ECF No. 1 at ¶ 166 & 190-193.) She has abandoned both claims.

#### 1.    Lobato's Response

First, Lobato reiterates her position that the Detectives included fabricated evidence in their Arrest Report and Officer's Report regarding the timing of the attack, the location of the attack, the size of her attacker, and the nature of the attack. (ECF No. 59:3-18.) Second, she claims the detectives violated her rights by talking to the witnesses before recording them and then destroying their notes. (*Id.* at 60:1-6.) Third, Lobato argues the intra-corporate conspiracy does not apply.

#### 2.    Defendants' Reply

With respect to whether an underlying constitutional violation exists, the Detectives incorporate their arguments regarding the fabrication of evidence and false arrest claims. Lobato's argument that the Detectives talked to the witnesses before recording is a non-starter. Her own expert agrees this is a standard practice (Ex DD at 68:12-15), and not a single witness has testified that the Detectives manipulated their statements in any way or prevented them from providing truthful statements and testimony. (Ex. GG at 120-132&146; Ex. II at 120-126; Ex. JJ at 58 & 84-90; Ex. KK at 44-45.) Similarly, with respect to the destruction of notes claims, Lobato's expert agreed this was standard practice in 2001. (Ex. DD at 69:16-70:12.) And, the mere fact the Detectives destroyed their notes after incorporating the information into their reports is not unconstitutional. *Downs v. Hoyt*, 232 F.3d 1031, 1037–38 (9th Cir. 2000) (holding bad faith destruction of handwritten notes cannot be inferred simply from selective destruction of notes, especially when the detective transferred those notes to other reports, without showing materiality); *Tabb v. Christianson*,

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

855 F.3d 757, 767–68 (7th Cir. 2017) (holding that destruction of interview notes does not constitute a violation where plaintiff cannot show the notes contained material evidence) *Bolden v. City of Chicago*, 2019 WL 3766104, *11–12 (N.D. Ill. Aug. 9, 2019) (holding that complainant could not pass summary judgment because he could not point to any evidence substantiating that the handwritten notes would have contained exculpatory material, including complainant's own assertions about what would have been there even though he could appropriately infer handwritten notes did exist). Lobato has failed to provide any case law that destroying of notes is a constitutional violation, and qualified immunity is applicable. *U.S. v. Del-Toro-Barboza*, 673 F.3d 1136, 1149–50 (9th 2012) (holding that no due process violation occurs when evidence is routinely destroyed by the government when they are not aware it is likely exculpatory).

With respect to the intra-corporate doctrine, Lobato's claim that it is inapplicable is unavailing. Lobato cites to Ninth Circuit cases where the intra-corporate conspiracy doctrine *was not raised. See Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013) (reversing summary judgment on conspiracy claim where qualified immunity was not raised or discussed); *Baldwin v. Placer Cty.*, 418 F.3d 966, 971 (9th Cir. 2005) (denying qualified immunity but not discussing any argument that the intra-corporate conspiracy doctrine applied). It is Lobato's burden to show the inapplicability of the doctrine was clearly established. *See Fazaga v. FBI*, 965 F.3d 1015, 1060 & n.41 (9th Cir. 2020) (qualified immunity barred claim because there is not clearly established Ninth Circuit law on whether "an intracorporate agreement could subject federal officials to liability under § 1985(3)"); *Fatai*, 2021 WL 2941549, *11 (question as to whether intracorporate conspiracy doctrine applies requires qualified immunity of §1983 conspiracy claim). Qualified immunity applies.

## F.    COUNT VI: STATE LAW MALICIOUS PROSECUTION.

Lobato's sixth claim is for state law malicious prosecution. Both parties agree that the absence of probable cause is a necessary element to establish this claim. Therefore, the issue is the same as Lobato's §1983 false arrest claim. As stated above, the Detectives had

sufficient facts to establish probable cause. The Detectives received information from Johnson that Lobato was telling people she had recently severed a man's penis is Las Vegas and was hiding both herself and her car in Panaca. Lobato confirmed she had at least attempted to sever a man's penis. The fact the Detectives, the District Attorney, the magistrate judge, the criminal trial judge, and the Nevada Supreme Court have all reviewed this case, and reviewed Lobato's alibi and exculpatory evidence, and all concluded that probable cause existed for the arrest and prosecution, supports Lobato's own expert witness that probable cause existed for her arrest. *See Badillo*, 95 Nev. at 594 (stating that probable cause only requires "slight evidence" and finding probable cause despite conflicting witness testimony when one of the witnesses identified the respondent as one of the perpetrators). In addition, Lobato has failed to show a "favorable termination." *See Mills*, 921 F.3d at 1169-71 (applying California malicious prosecution law which has the same elements as Nevada.)

### G.    COUNT VII: STATE LAW ABUSE OF PROCESS

Lobato's seventh claim is for abuse of process. To prevail on this claim, Lobato must establish an "ulterior purpose" for arresting plaintiff. The mere filing of a complaint with malicious intent is insufficient to support a claim. *Laxalt v. McClatchy*, 622 F.Supp. 737, 752 (D. Nev. 1985). Lobato must include some allegation of abusive measure *taken after* the filing of the complaint. *Id.* Such improper action includes extorting a civil settlement or obtaining a voluntary resignation. *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993); *Bull v. McCuskey*, 615 P.2d 957, 960 (Nev. 1980).

Lobato never attempts to identify an ulterior purpose or explain what the Detectives did after arresting her. Rather, she just recycles her generic arguments that the Detectives knew she was discussing a separate event and still arrested her. Lobato fails to recognize that after she was arrested, the Detectives left all further decisions regarding the handling of her case to the District Attorney.

### H.    COUNT VIII: STATE LAW IIED.

Lobato's IIED claim is predicated upon her first establishing that the Detectives violated a federal law or state law right. It is axiomatic that if the Detectives lawfully

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2

arrested Lobato pursuant to probable cause and that they did not intentionally fabricate or withhold evidence from the prosecution, that they cannot be liable for inflicting emotional distress. In short, the Detectives cannot be liable for IIED if they acted lawfully.

## I.    COUNT X: INDEMNIFICATION.

Nevada law governs when a governmental employee must indemnify. *See* NRS 41.0349. And, it will be the jury in this case who determines whether liability exists and, if so, whether indemnification is required. *See* NRS 41.0348.

## III.    <u>CONCLUSION</u>

Based on the above, the Defendants request summary judgment on all remaining claims.

Dated this 24 day of September, 2021.

MARQUIS AURBACH COFFING

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
*Attorneys for LVMPD Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **LVMPD DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 24th day of September, 2021.

☒    I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐    I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

*Sherri Mong*
An employee of Marquis Aurbach Coffing

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-221 4465366_2