Luke Busby
NV Bar# 10319
316 California Ave., #82
Reno, NV 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff Kirstin Blaise Lobato*

Elizabeth Wang*
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

David B. Owens*
Loevy & Loevy c/o
Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
P.O. Box 85110
Seattle, WA 98145-1110
david@loevy.com

Megan Pierce*
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
megan@loevy.com
*Admitted *pro hac vice*
*Counsel for Plaintiff Kirstin Blaise Lobato*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIRSTIN BLAISE LOBATO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. |
| ) | |
| LAS VEGAS METROPOLITAN ) | **PROPOSED** |
| POLICE DEPARTMENT, NEVADA, ) | **First Amended Complaint and Jury** |
| THOMAS THOWSEN, and JAMES ) | **Demand** |
| LAROCHELLE, ) | |
| ) | |
| Defendants. | |

1

Now comes Plaintiff KIRSTIN BLAISE LOBATO, by and through her undersigned counsel, complains of Defendants former Las Vegas Metropolitan Police Detectives THOMAS THOWSEN and JAMES LAROCHELLE and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("Metro" or "LVMPD"), as follows:

## Introduction

1.    As a result of egregious misconduct by the Defendants, Plaintiff Kirstin Blaise Lobato was wrongfully convicted of a murder that she did not commit.

2.    There was absolutely no evidence connecting Plaintiff to the murder. In fact, it was impossible for Plaintiff to have been involved in the murder.

3.    When the crime occurred in Las Vegas, Plaintiff was a nearly three-hour-drive away at her family's home in Panaca, Nevada.

4.    Although Defendants knew that Plaintiff could not have committed the crime, they decided to pin the murder on her by, among other things, fabricating evidence, obtaining involuntary statements, and ignoring clear evidence of Plaintiff's innocence.

5.    Because of this misconduct, Plaintiff spent over 16 years of her life incarcerated. At the time that she was wrongfully framed for the murder, Plaintiff had just completed high school and had her whole life ahead of her. Plaintiff was irreparably and immeasurably harmed when years of life were unjustly stolen from

her. This lawsuit seeks a measure of redress for the wrongs done to Plaintiff, as well as to deter future misconduct.

## Jurisdiction and Venue

6.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because this suit asserts claims for violations of Plaintiff's constitutional rights as described in more detail below. This Court has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper because the events giving rise to the claims asserted herein occurred within this district.

## Parties

8.    Plaintiff Kirstin Blaise Lobato is a 36-year-old resident of Las Vegas, Nevada. Plaintiff goes by her middle name, Blaise. When she was just 18 years old, Blaise was arrested, prosecuted, and wrongfully convicted of the murder of Duran Bailey in Las Vegas, Nevada.

9.    Defendant Thomas Thowsen was at all times relevant to this Complaint employed as a detective with the LVMPD. Defendant Thowsen acted under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada. He is sued in his individual capacity. Upon information and belief, he is entitled to indemnification under statute and by contract.

10.    Defendant James LaRochelle was at all times relevant to this Complaint employed as a detective with the LVMPD. Defendant LaRochelle acted

under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada. He is sued in his individual capacity. Upon information and belief, he is entitled to indemnification under statute and by contract.

11.     Defendant Las Vegas Metropolitan Police Department is a political subdivision of the State of Nevada and employed Defendants Thowsen and LaRochelle. The LVMPD is liable for all state law torts committed by the Detectives while they were employed by the LVMPD pursuant to the doctrine of *respondeat superior*. The LVMPD is responsible for its own policies, practices, and customs.

## Factual Background

12.     Blaise grew up in Panaca, Nevada, a small town in Lincoln County, Nevada, approximately three hours north of Las Vegas.

13.     Throughout high school, Blaise and her family were living in Panaca, and she graduated from Lincoln County High School.

14.     Following graduation, Blaise moved from Panaca to Las Vegas, Nevada.

## Plaintiff Was Assaulted in May 2001

15.     In May 2001, Blaise was staying at the Budget Suites Hotel on the east side of Las Vegas.

16.     Around Memorial Day, Blaise returned to the Budget Suites in the very early morning. At the time, Blaise was petite—about 5'6" and just over 100 pounds.

17. After parking her car, she was attacked by a large man who was over six feet tall and weighed more than 200 pounds. The attack occurred only a few feet from her car.

18. The man knocked Blaise to the ground and pulled up her skirt. She struggled to fight him off as he tried to rape her.

19. Blaise managed to reach a small knife that she was carrying for self-defense. In her defense, Blaise reached somewhere in the perpetrator's lower region and cut him one time with the knife.

20. In so doing, Blaise did not sever the assailant's penis.

21. Blaise was able to run away and escape in her car.

22. When Blaise left, the perpetrator was moving around and crying. Blaise did not kill her attacker.

23. Aside from the single strike with the knife, Blaise did not hit, cut, strike, her attacker in any other way. Nor did she hit him with a baseball bat.

24. Blaise did not wrap the attacker's body with plastic wrap.

25. Blaise did not cover the attacker with trash.

26. Blaise did not report the assault to the police, given her fear they would do nothing if she reported the attack.

### Plaintiff Was in Panaca, Nevada Continuously from July 2 to 9, 2001

27. On July 2, 2001, Blaise returned to Panaca to spend time with her family and to attend the family's Fourth of July barbecue.

28.    Panaca is at least two-and-a-half hours driving from Las Vegas, nearly 170 miles away.

29.    Blaise drove to Panaca and parked her car in front of her family's home, where it remained until July 20, 2001.

30.    Blaise stayed in Panaca with her family continuously from July 2, 2001 until around 1:00 a.m. on July 9, 2001. On July 9, 2001, a friend gave Blaise a ride back to Las Vegas.

31.    Numerous people saw Blaise in Panaca during this time period.

32.    Blaise did not go back to Las Vegas at any time between July 2 and the early morning hours of July 9, 2001.

33.    Blaise was not in Las Vegas on July 6, 2001.

34.    Blaise was not in Las Vegas on July 7, 2001.

35.    Blaise was not in Las Vegas on July 8, 2001.

36.    While in Panaca, Blaise told several friends and family members about the attempted rape she had suffered in late May 2001 and that she had defended herself. Blaise told many people about the attempted rape before Duran Bailey was murdered on July 8, 2001.

37.    One of the people Blaise told about the assault in turn told a Lincoln County probation officer about Blaise having been attacked.

38.    Blaise stayed in Las Vegas from July 9 to July 13, 2001. On July 13, 2001, Blaise called her father and asked him to pick her up to go back home.

39.    Blaise remained in Panaca from July 13 to July 20, 2001.

### The Murder of Duran Bailey on July 8, 2001

40.    On the evening of July 8, 2001, Duran Bailey was beaten and stabbed to death in the enclosure around a trash dumpster by the Nevada State Bank on the west side of Las Vegas.

41.    Bailey died after sunset on July 8, 2001, which was at approximately 8:00 p.m.

42.    Blaise did not murder Duran Bailey. She had nothing to do with this crime whatsoever and is completely innocent.

43.    Bailey was a slender man—about 5'10" tall and 130 pounds.

44.    Bailey's body was found lying behind a dumpster, which was enclosed by three block walls and a gate, in the northwest corner of the parking lot to the bank.

45.    Bailey had been brutalized: his eyes were swollen shut, his skull cracked, numerous teeth had been knocked out of his mouth, his carotid artery cut, and his body had been slashed and stabbed throughout. He also had multiple abrasions and bruises. His pants were around his knees.

46.    In addition, Bailey's penis had been severed from his body and his rectum cut. His penis was found several feet away. The perpetrator(s) also stuffed paper towels where his penis had been, put plastic wrap around Bailey's midsection, and covered Bailey with trash.

47.    Bailey's body was found by a man who was looking through the dumpsters around 10:00 p.m. on July 8, 2001. This man notified the police.

48.    A great deal of physical evidence from the crime scene was collected and tested, including a rape kit.

49.    The crime was extremely physical and violent and the scene was bloody.

50.    Yet, not a single piece of physical evidence linked Blaise to the crime.

51.    Bailey's killer or killers left shoeprints in blood at the crime scene. The shoeprints did not match and were much larger than any of Blaise's shoes.

52.    Tire prints found at the scene which were likely left by the killer(s) did not match Blaise's car.

53.    Fingerprints found at the scene did not match Blaise.

54.    Black high heels that Blaise was wearing when she was attacked at the Budget Suites tested negative for Bailey's blood.

55.    The bloody shoeprints at the scene did not match Blaise's black high heels.

56.    A baseball bat collected from Blaise, which Defendants claimed Blaise used to beat Bailey, tested negative for Bailey's blood.

57.    No blood was found on the bat.

58.    No evidence of Bailey's blood was found in Blaise's car.

59.    No blood was found in Blaise's car.

60.    Bailey's killer or killers also left cigarette butts underneath the plastic that had been wrapped around Bailey's body. There was no evidence linking the cigarettes to Blaise.

61.     DNA tested from the rape kit performed on Bailey's body excluded Blaise.

62.     None of Blaise's hairs or any hairs resembling her bleached blonde hair were found at the crime scene.

63.     The murder weapon(s) were never found.

64.     Numerous pieces of potentially exculpating evidence was discarded by LVMPD and not tested, despite their obvious evidentiary value.

**Defendants Thowsen and LaRochelle Knew that Plaintiff Did Not Murder Duran Bailey but Wrongfully Arrested Her Anyway**

65.     Defendants Thowsen and LaRochelle were assigned to investigate Duran Bailey's murder.

66.     Defendants Thowsen and LaRochelle went to and observed the crime scene in the early morning hours of July 9, 2001.

67.     Having viewed the crime scene, Defendants Thowsen and LaRochelle were aware of the location and circumstances of the crime.

68.     On July 20, 2001, the Lincoln County probation officer called LVMPD.

69.     When the probation officer called, she was directed to Defendants Thowsen and LaRochelle.

70.     Despite the obvious and myriad differences between the attack on Blaise and the brutal murder of Duran Bailey, Defendants Thowsen and LaRochelle instantly became convinced that they had just solved the murder.

71.     Defendants Thowsen and LaRochelle decided to drive to Panaca that same day to interrogate Blaise.

72.     Defendants Thowsen and LaRochelle checked Blaise's criminal history and found that she had no criminal record.

73.     Beyond the third-hand story from the probation officer, Defendants Thowsen and LaRochelle had no information whatsoever connecting Blaise to the murder of Duran Bailey. And, what they had learned was obviously unrelated to the Bailey murder.

74.     Although they knew that there was no evidence, Defendants Thowsen and LaRochelle immediately decided to focus their investigation solely on Blaise, a teenager.

75.     Blaise was at her parents' house with her younger sister but her parents were not home.

76.     Accordingly, given their concern that Blaise's parents would prevent them from mistreating their daughter, Defendants Thowsen and LaRochelle interviewed Blaise alone and hurried to complete the interrogation before her parents returned home.

77.     Defendants Thowsen and LaRochelle told Blaise that they were homicide investigators, but they did not tell her what homicide they were investigating. Nor did they tell her anything about the location or date of the homicide.

10

78.    Defendants Thowsen and LaRochelle told Blaise that they knew she had recently been attacked and that she defended herself; they also said that they knew she had been sexually abused in her youth.

79.    After the Defendants mentioned her past sexual abuse, Blaise began to cry.

80.    Blaise believed that Defendants Thowsen and LaRochelle were at her house to investigate the Budget Suites incident in May 2001, and she believed she was cooperating with their investigation of that incident. Blaise had no idea that Defendants were there to question her about the Bailey homicide, a person she did not know and had never encountered. Blaise did not give any knowing or voluntary statement confessing to the murder of Duran Bailey.

81.    During the interrogation, Blaise told Defendants Thowsen and LaRochelle about the attempted rape in May 2001 at the Budget Suites.

82.    The incident Blaise described was completely different than the circumstances surrounding the murder of Bailey, and Defendants knew it.

83.    For instance, Blaise told Defendants Thowsen and LaRochelle that she was attacked by a very large man "over a month ago" at the Budget Suites on the east side of Las Vegas.

84.    Defendants Thowsen and LaRochelle knew that Bailey was murdered less than two weeks earlier and that the location described by Blaise was on the opposite side of town from where Bailey's murder occurred. The location Blaise described was not near a bank or in a trash dump enclosure.

85.    Blaise also described the attack occurring in a parking lot in proximity to a fountain.

86.    Defendants Thowsen and LaRochelle knew that Bailey was not murdered near a fountain or in a parking lot.

87.    Blaise described being attacked near Sam's Town casino.

88.    Defendants Thowsen and LaRochelle knew that Bailey was not murdered near Sam's Town casino.

89.    Blaise told Defendants Thowsen and LaRochelle that she defended herself by trying to cut the attacker once, although she was not sure if she was successful. Blaise also told the Defendants that the attacker alive and crying when she fled.

90.    Defendants Thowsen and LaRochelle knew that this description did not match the circumstances of Bailey's murder.

91.    The information provided by Blaise during her interrogation with Defendants Thowsen and LaRochelle clearly showed that she was not talking about the murder of Bailey, but rather about a completely different incident that occurred at a different time, with a different person, and in a different location on the opposite side of town.

92.    When Defendants Thowsen and LaRochelle interrogated Blaise, she did not provide any non-public information about the murder of Bailey.

93.    During the interrogation, Defendants Thowsen and LaRochelle knew that Blaise was not describing the murder of Bailey.

12

94.    This is why Defendants Thowsen and LaRochelle purposefully asked leading questions designed to create the impression that Blaise was confessing to Bailey's murder or unsure about the circumstances when, in fact, they knew she was talking about a completely different, unrelated incident. They only recorded a portion of their questioning and her answers. They also suggested facts to her about the crime. Defendants did this in an effort to fabricate a false confession to Bailey's murder.

95.    When Defendants Thowsen and LaRochelle created their police reports, they purposefully put on their reports that the incident Blaise described was the murder of Duran Bailey, even though they knew this was not true.

96.    Prior to the interrogation, there was no probable cause to believe that Blaise had committed the murder of Duran Bailey.

97.    After the interrogation, there was no probable cause to believe that Blaise had committed the murder of Duran Bailey.

98.    At no time was there probable cause to believe that Blaise had committed the murder of Duran Bailey.

99.    Nonetheless, having fabricated a supposed confession statement, Defendants Thowsen and LaRochelle arrested Blaise for Bailey's murder after interrogating her on July 20, 2001.

100.    Defendants Thowsen and LaRochelle were subjectively aware that Blaise had no personal knowledge about the murder. Yet, Defendants Thowsen and LaRochelle discussed and agreed with each other that they would characterize

13

Blaise's description of the Budget Suites incident to them on July 20, 2001 as a "confession" to Bailey's murder, when they knew that was not true.

101.    Due to their misconduct, Defendants Thowsen and LaRochelle caused the institution of criminal proceedings against Plaintiff.

102.    The only evidence that led to the institution of criminal proceedings against Blaise was her "confession" and involuntary statements obtained by Defendants Thowsen and LaRochelle on July 20, 2001 and the fabricated police reports created by them.

**Defendants Manipulated Witness Statements and Ignored Exculpatory Information**

103.    Before Plaintiff's criminal trial, Defendants Thowsen and LaRochelle knew that no physical evidence connected Blaise to the murder of Duran Bailey.

104.    Defendants Thowsen and LaRochelle interviewed numerous witnesses who spent time with Blaise in Las Vegas in May 2001 and who saw her in Panaca in July 2001. Defendants Thowsen and LaRochelle attempted to manipulate witnesses' statements and feed them information in an effort to fabricate those statements and failed to record information that Blaise had told witnesses she had been attacked prior to July 8, 2001.

105.    Several witnesses told Defendants Thowsen and LaRochelle that Blaise had told them before July 8, 2001 that someone had tried to sexually assault her at the Budget Suites hotel in May, and that she had defended herself against the assailant but did not kill him.

106. Defendants Thowsen and LaRochelle tried to get the witnesses to change their statements about when Blaise told them about being attacked and only selectively recorded interviews to leave out favorable statements.

107. During an interview with Dixie Tienken, Defendants Thowsen and LaRochelle tried to feed her answers and get her to say what they wanted her to say that Blaise told her and not what Blaise actually said, in an effort to fabricate incriminating evidence against Blaise. Defendant Thowsen interviewed Tienken for a long time before turning on the tape recorder and repeatedly stopped the tape recorder in order to influence her in what to say before restarting it.

108. When Defendants Thowsen and LaRochelle interviewed Doug Twining, they questioned him before turning on the tape recorder. They wrote down his answers. Upon information and belief, they destroyed these notes, even though the notes contained exculpatory information. Twining told them that Blaise first told him about the attempted rape at the Budget Suites in late May 2001, and that she was in Panaca from July 2 to July 9, 2001. Twining told Defendants numerous times that they had arrested the wrong person. Defendants Thowsen and LaRochelle repeatedly turned the tape recorder on and off in order to manipulate Twining's recorded statement.

109. When several witnesses contacted Defendants Thowsen and LaRochelle and told them that Blaise was in Panaca on the day of Bailey's murder, Defendants Thowsen and LaRochelle intentionally ignored and refused to follow up on this information.

110.    When a witness provided phone records to Defendants Thowsen and LaRochelle documenting that Blaise had been in Panaca on from July 2 to the early morning hours of July 9, 2001, they intentionally ignored and refused to follow up on this information.

### Plaintiff's Wrongful Prosecution and Conviction

111.    Blaise was deprived of liberty from July 2001 until her release from prison in January 2018.

112.    In 2002, Blaise was tried for Duran Bailey's murder.

113.    At trial, the State's theory was that Blaise's statement about her May 2001 attack was a confession to Bailey's murder.

114.    The State conceded that Blaise was in Panaca from approximately 11:30 a.m. on July 8, 2001 until after Bailey was found after 10:00 p.m. on the evening of July 8, 2001.

115.    Because Blaise had uncontested alibi evidence, the State argued that Blaise killed Bailey in the early morning hours of July 8, 2001 and then drove back to Panaca.

116.    Blaise's attorneys presented extensive evidence on her behalf, including that none of the physical evidence linked her to the crime and alibi testimony from numerous witnesses corroborated by documentary evidence.

117.    Despite this evidence, Blaise was convicted of first degree murder with use of a deadly weapon and sexual penetration of a dead human body, on the basis

16

of her involuntary statements and fabricated "confession" and the fabricated police reports.

118.    Blaise's conviction was reversed on direct appeal and remanded for a new trial.

119.    Blaise was tried a second time. Again, no physical evidence linked her to the crime. Nonetheless, in 2006, Blaise was wrongfully convicted of voluntary manslaughter with use of a deadly weapon and sexual penetration of a dead human body, on the basis of her involuntary statements and fabricated "confession" and fabricated police reports. She was sentenced to 13 to 35 years' imprisonment.

120.    Blaise's conviction was the direct result of the Defendants' misconduct during the investigation and prosecution.

### Plaintiff's Exoneration

121.    In an October 2017 post-conviction hearing, Blaise presented scientific evidence from forensic experts that narrowed the time of Bailey's death from what was presented at trial. This evidence showed Bailey's murder most likely occurred after sunset on July 8, 2001. This time of death fell squarely within the time frame for which Blaise had an uncontested alibi. As a result, Blaise's conviction was vacated by the Nevada state court on December 19, 2017.

122.    The State later dismissed all charges against Blaise.

123.    Blaise was finally released from prison in early January 2018.

**Plaintiff's Injuries**

124.    Blaise lost over 16 years of her life before she was finally exonerated. She was deprived of her freedom just when she was beginning to build her life as a young adult. She now has to begin again, almost two decades behind her peers.

125.    Additionally, the emotional pain and suffering caused by losing 15 years in the prime of life has been enormous for Blaise. During her wrongful incarceration, Blaise was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. She missed out on the ability to share holidays, births, funerals, and other life events with loved ones. And she was further deprived of the opportunity to pursue higher education, to build a career, and to create a family.

126.    As a result of the foregoing, Plaintiff has suffered tremendous damage, including physical injury and emotional distress, all proximately caused by Defendants' misconduct.

**Count I: 42 U.S.C. § 1983 – Fifth and Fourteenth Amendments**

**Involuntary Confession**

127.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 126 of this First Amended Complaint ("FAC").

128.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly, and in conspiracy with one

another, forced Plaintiff to incriminate herself falsely and against her will, in violation of her rights secured by the Fifth and Fourteenth Amendments.

129.    The false, involuntary "confession" and statements obtained by Defendants Thowsen and LaRochelle and attributed to Plaintiff were used against Plaintiff to her detriment throughout her criminal case.

130.    Defendants Thowsen and LaRochelle's misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying Plaintiff her right against self-incrimination and to due process guaranteed by the U.S. Constitution.

131.    Furthermore, in the manner described more fully above, Defendants Thowsen and LaRochelle, acting individually, jointly, and in conspiracy with each other, deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Plaintiff's substantive due process rights under the Fourteenth Amendment.

132.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

133.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

134.    Upon information and belief, Plaintiff's injuries were caused by the official policies, practices, and/or customs of Defendant LVMPD, as well as by the actions of final policymaking officials for the LVMPD.

135.    Upon information and belief, at all relevant times and for a period of time prior thereto, Defendant LVMPD did not have adequate rules, regulations, policies and procedures governing questioning of criminal suspects, questioning of witnesses, preparation and presentation of witness testimony, preservation and disclosure of investigative materials and evidence, and training, supervision, and discipline of employees and agents of the LVMPD. The LVMPD was aware of the need for adequate policies, training, and supervision, was deliberately indifferent to the need, and made a deliberate choice not to adopt adequate policies, training, or supervision, all of which was an official policy.

136.    Upon information and belief, at all relevant times and for a period of time prior thereto, Defendant LVMPD had notice of widespread practices by its officers and agents under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, were forced to provide involuntary inculpatory statements, and/or were deprived of their liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

137.    Upon information and belief, these widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant LVMPD directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their

officers, agents and employees who withheld material evidence, fabricated false evidence, and witness testimony, coerced false confessions and statements from suspects, and pursued wrongful prosecutions and convictions.

138.   Upon information and belief, the above-described widespread practices, which were so well-settled as to constitute the *de facto* policy of Defendant LVMPD, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

139.   Upon information and belief, the misconduct described in this Count was undertaken pursuant to the policy and practices of Defendant LVMPD in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the LVMPD, or were actually committed by persons with final policymaking authority.

140.   Upon information and belief, the policies, practices, and customs set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

141.   Plaintiff's injuries were caused by officers, agents, and employees of Defendant LVMPD, including Defendants Thowsen and LaRochelle, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

142.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical

and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count II: 42 U.S.C. § 1983 – Fourteenth Amendment
### Due Process

143.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 142 of this FAC.

144.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly and in conspiracy with each other, deprived Plaintiff of her constitutional right to due process and a fair trial.

145.    In the manner described more fully above, Defendants Thowsen and LaRochelle fabricated and solicited false evidence, as well as withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Defendants also continued their investigation of Plaintiff despite the fact that they knew of—or were deliberately indifferent to—her innocence, and the results of the investigation were used to cause Plaintiff's prosecution and conviction. Moreover, Defendants used investigative techniques that were so coercive and abusive that they knew, or were deliberately indifferent to, the fact that those techniques would yield false information that was used to convict Plaintiff.

146.    Defendants Thowsen and LaRochelle's misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying her constitutional right to due process and a fair trial guaranteed by the Fourteenth Amendment. Absent

this misconduct, the prosecution of Plaintiff could not and would not have been pursued, and she would not have been convicted.

147.    In addition, Defendants Thowsen and LaRochelle subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which she is totally innocent, through Defendants' misconduct. Defendants' actions contravened fundamental canons of decency and fairness and violated Plaintiff's rights under the Fourteenth Amendment.

148.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

149.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

150.    Upon information and belief, Defendants Thowsen and LaRochelle's misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant LVMPD, in the manner more fully described above.

151.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

23

## Count III: 42 U.S.C. § 1983 – Fourth Amendment

### Continued Detention Without Probable Cause and Deprivation of Liberty

152.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 151 of this FAC.

153.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

154.    In so doing, Defendants Thowsen and LaRochelle caused Plaintiff to be unreasonably seized without probable cause and deprived of her liberty, in violation of Plaintiff's rights secured by the Fourth Amendment.

155.    Plaintiff's criminal proceedings were terminated in her favor, in a manner indicative of innocence.

156.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

157.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

158.    Upon information and belief, Defendants Thowsen and LaRochelle's misconduct described in this Count was undertaken pursuant to the policies,

1 | practices, and customs of Defendant LVMPD, in the manner more fully described

2 | above.

3 |        159.    As a result of Defendants' misconduct described in this Count, Plaintiff

4 | suffered loss of liberty, great mental anguish, humiliation, degradation, physical

and emotional pain and suffering, and other grievous and continuing injuries and

5 | damages as set forth above.

6 |                **Count IV: 42 U.S.C. § 1983 – Failure to Intervene**

7 |        160.    Plaintiff realleges and incorporates by reference as though fully set

8 | forth herein each of the allegations of paragraphs 1 through 159 of this FAC.

9 |        161.    In the manner described more fully above, during the constitutional

violations described herein, Defendants Thowsen and LaRochelle each stood by

10 | without intervening to prevent the violation of Plaintiff's constitutional rights, even

11 | though they had the opportunity to do so.

12 |        162.    The misconduct described in this Count was objectively unreasonable

13 | and was undertaken intentionally, with reckless and deliberate indifference to the

14 | rights of others.

15 |        163.    Defendants Thowsen and LaRochelle were acting under color of law

and within the scope of their employment when they took these actions.

16 |        164.    As a result of Defendants' misconduct described in this Count, Plaintiff

17 | suffered loss of liberty, great mental anguish, humiliation, degradation, physical

18 | and emotional pain and suffering, and other grievous and continuing injuries and

19 | damages as set forth above.

20 |

25

### Count V: 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

165.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 164 of this FAC.

166.    Prior to Plaintiff's conviction, Defendants Thowsen and LaRochelle, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime she did not commit and thereby to deprive her of her constitutional rights, all as described in this Complaint. Defendants agreed to investigate and to exert influence to cause the prosecution of Plaintiff for a crime she did not commit and took overt actions in conformity with that agreement.

167.    As further described above, Defendants Thowsen and LaRochelle agreed to fabricate evidence against Plaintiff in the form of false police reports purportedly detailing that Plaintiff's statements about the attack at the Budget Suites was a "confession" to the murder of Duran Bailey, which they knew was not true.

168.    In so doing, Defendants Thowsen and LaRochelle conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of these rights.

169.    In furtherance of their conspiracy, Defendants Thowsen and LaRochelle committed overt acts and were otherwise willful participants in joint activity.

170.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

171.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

172.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count VI: Nevada State Law – Malicious Prosecution

173.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 172 of this FAC.

174.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly, and in conspiracy with each other, and maliciously, instituted or continued the prosecution of Plaintiff without probable cause. As a consequence of the criminal prosecution, Plaintiff was unlawfully seized, deprived of liberty, and wrongfully convicted of a crime of which she is innocent.

175.    Plaintiff's criminal prosecution was terminated in her favor in a manner indicative of innocence.

176.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

177.    Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct by Defendants Thowsen and LaRochelle described in this Count.

178.    As a direct and proximate result of the Defendants' actions, Plaintiff's rights were violated and she suffered injuries and damages, including but not limited to loss of liberty, physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count VII: Nevada State Law – Abuse of Process

179.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 178 of this FAC.

180.    Defendants Thowsen and LaRochelle, through the actions described more fully above, procured and exerted influence to continue a criminal proceeding against Plaintiff, with an ulterior purpose other than resolving a legal dispute or resolving the guilt or innocence of Plaintiff in the murder of Duran Bailey. Defendants also committed willful acts in the use of the legal process which were not proper in the regular conduct of Plaintiff's criminal proceeding.

181.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

182.    Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct by Defendants Thowsen and LaRochelle described in this Count.

183.    As a direct and proximate result of the Defendants' actions, Plaintiff's rights were violated and she suffered injuries and damages, including but not limited to loss of liberty, physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**Count VIII: Nevada State Law – Intentional Infliction of Emotional Distress**

184.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 183 of this FAC.

185.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly, and in conspiracy with each other, engaged in extreme and outrageous conduct with the intention of, or with reckless disregard for, causing Plaintiff emotional distress, and Plaintiff suffered severe or extreme emotional distress. Defendants' misconduct was the actual and proximate cause of Plaintiff's severe or extreme emotional distress.

186.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

187.    Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees and agents, including the misconduct by Detectives described in this Count.

188.    As a direct and proximate result of the Defendants' actions, Plaintiff's rights were violated and she suffered injuries and damages, including but not limited to loss of liberty, physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## Count IX: Nevada State Law – Civil Conspiracy

189.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 188 of this FAC.

190.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting in concert with other known and unknown co-conspirators conspired and intended by concerted action to accomplish an unlawful objective for the purpose of harming Plaintiff, which resulted in damage to her. Defendants agreed to investigate and cause the prosecution of Plaintiff for a crime she did not commit and took overt actions in conformity with that agreement.

191.    In furtherance of the conspiracy, Defendants Thowsen and LaRochelle committed overt acts and were otherwise willful participants in joint activity.

192.    Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

193.    Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct by the Defendants described in this Count.

194.    As a direct and proximate result of the Defendants' actions, Plaintiff's rights were violated and she suffered injuries and damages, including but not limited to loss of liberty, physical injury, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## Count X: Nevada State Law – Indemnification

195.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 194 of this FAC.

196.    Nevada law provides that LVMPD is directed to pay any tort judgment for compensatory damages for which their employees are liable within the scope of their employment activities.

197.    Defendants Thowsen and LaRochelle were employees of the Defendant LVMPD and acted within the scope of their employment at all times relevant in committing the actions and omissions described herein.

## Count XI: Nevada Constitution– Due Process

198.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 197 of this FAC.

199.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly and in conspiracy with each other, deprived Plaintiff of her constitutional right to due process and a fair trial as guaranteed by the Nevada Constitution, Article 1 § 8.

200.    In the manner described more fully above, Defendants Thowsen and LaRochelle fabricated and solicited false evidence, as well as withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff. Defendants also continued their investigation of Plaintiff despite the fact that they knew of—or were deliberately indifferent to—her innocence, and the results of the investigation were

used to cause Plaintiff's prosecution and conviction. Moreover, Defendants used investigative techniques that were so coercive and abusive that they knew, or were deliberately indifferent to, the fact that those techniques would yield false information that was used to convict Plaintiff.

201.   Defendants Thowsen and LaRochelle's misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying her constitutional right to due process and a fair trial guaranteed by the Nevada Constitution, Article 1 § 8. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued, and she would not have been convicted.

202.   In addition, Defendants Thowsen and LaRochelle subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which she is totally innocent, through Defendants' misconduct. Defendants' actions contravened fundamental canons of decency and fairness and violated Plaintiff's rights under the Nevada Constitution, Article 1 § 8.

203.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

204.   Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

205.   Upon information and belief, Defendants Thowsen and LaRochelle's misconduct described in this Count was undertaken pursuant to the policies,

32

practices, and customs of Defendant LVMPD, in the manner more fully described above.

206.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**Count XII: Nevada Constitution– Continued Detention Without Probable Cause and Deprivation of Liberty**

207.    Plaintiff realleges and incorporates by reference as though fully set forth herein each of the allegations of paragraphs 1 through 206 of this FAC.

208.    In the manner described more fully above, Defendants Thowsen and LaRochelle, acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

209.    In so doing, Defendants Thowsen and LaRochelle caused Plaintiff to be unreasonably seized without probable cause and deprived of her liberty, in violation of Plaintiff's rights secured by the Nevada Constitution Article 1, § 18.

210.    Plaintiff's criminal proceedings were terminated in her favor, in a manner indicative of innocence.

211. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others.

212. Defendants Thowsen and LaRochelle were acting under color of law and within the scope of their employment when they took these actions.

213. Upon information and belief, Defendants Thowsen and LaRochelle's misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant LVMPD, in the manner more fully described above.

214. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

WHEREFORE, Plaintiff, KIRSTIN BLAISE LOBATO, by and through her undersigned counsel, respectfully requests that this Court enter a judgment in her favor and against Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT and former Las Vegas Metropolitan Police Detectives THOMAS THOWSEN and JAMES LAROCHELLE, awarding compensatory damages, costs, and attorneys' fees against each Defendant and punitive damages against the individual Defendants, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, KIRSTIN BLAISE LOBATO, by and through her undersigned counsel, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

KIRSTIN BLAISE LOBATO

By: /s/ David B. Owens

Luke Busby
NV Bar# 10319
316 California Ave., #82
Reno, NV 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff Kirstin Blaise Lobato*

Elizabeth Wang*
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

David B. Owens*
Loevy & Loevy c/o
Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
P.O. Box 85110
Seattle, WA 98145-1110
david@loevy.com

Megan Pierce*
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
megan@loevy.com
*Admitted pro hac vice*
*Counsel for Plaintiff Kirstin Blaise Lobato*

35