**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

KIRSTIN BLAISE LOBATO,

Plaintiff,

v.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, *et al.*,

Defendants.

Case No. 2:19-cv-01273-RFB-EJY

**ORDER DENYING MOTION FOR
JUDGMENT AS A MATTER OF LAW &
MOTION FOR NEW TRIAL**

Before the Court are Defendants' Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (ECF Nos. 214, 216). For the reasons discussed below, Defendants' Motion for Judgment as a Matter of Law and Motion for a New Trial are both **DENIED**.

## I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY

On July 23, 2019, Plaintiff Kirstin Blaise Lobato initiated this lawsuit by filing a Complaint against Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Thomas Thowsen, and James LaRochelle. See ECF No. 1. After being granted leave by the Court to do so, Plaintiff filed a First Amended Complaint (and Jury Demand) on June 27, 2023. See ECF Nos. 103–104. In the Amended Complaint—which serves as the operative complaint—Plaintiff brought the following claims: (1) Involuntary Confession; (2) Due Process violations pursuant to 42 U.S.C. § 1983; (3) Continued Detention without Probable Cause and Deprivation of Liberty pursuant to 42 U.S.C. § 1983; (4) Failure to Intervene; (5) Conspiracy to Deprive Constitutional Rights pursuant to § 1983; (6) Malicious Prosecution; (7) Abuse of Process; (8) Intentional Infliction of Emotional Distress; (9) Civil Conspiracy; (10) Indemnification; (11) Due Process violations pursuant to the

Nevada Constitution, Article 1 § 8; and (12) Continued Detention without Probable Cause and Deprivation of Liberty pursuant to the Nevada Constitution, Article 1 § 18. See ECF No. 104 at 18–34.

The parties filed numerous pre-trial motions *in limine* and stipulations that limited the claims and evidence to be included at trial. See, e.g., ECF No. 158 (stipulating, *inter alia*, that Plaintiff had agreed to voluntarily dismiss her Fourth Amendment and Nevada Constitution analogue claims, that the Court need not weigh in on a presumption regarding prosecutorial independence, agreeing not to call certain expert witnesses, among other testimonial and otherwise evidentiary limitations). Parties also submitted joint jury instructions. See ECF Nos. 138, 165. The case proceeded to trial on three claims, against Defendants Thowsen and LaRochelle: (1) Violation of Due Process (Fabrication of Evidence) under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) Violation of Due Process (Fabrication of Evidence) under the Nevada Constitution, Article 1, Section 8; and (3) Intentional Infliction of Emotional Distress.

Trial and deliberations lasted from December 2, 2024, to December 12, 2024, and ultimately, the jury found for the Plaintiff against both Defendants on all counts, awarding compensatory damages to Plaintiff in the amount of $34,000,000. See ECF No. 190 (Minutes of Proceedings – Jury Trial Day 9). Additionally, punitive damages were awarded by the Jury to Plaintiff against Defendants Thowsen and LaRochelle in the amount of $10,000 each. See id.

On February 3, 2025, Defendants filed the motions this Order concerns: Motion for Judgment as a Matter of Law (ECF No. 214) and Motion for a New Trial (ECF No. 216). Plaintiff filed their Response to both motions on March 14, 2025, and Defendants filed a Reply on April 15, 2025. See ECF Nos. 234, 241. Having considered the foregoing filings, the Court's Order follows.

## II.    LEGAL STANDARDS

### A.  Motion for a New Trial

It is the jury's province as factfinder to weigh evidence, determine credibility, and generate inferences from the evidence before them. United States v. Preston, 873 F.3d 829, 836 (9th Cir. 2017); United States v. Bonds, 784 F.3d 582, 603 (9th Cir. 2015). Accordingly, their verdict can

only be set aside in instances of serious error; the trial court may grant a new trial only where "'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" Roy v. Volkswagen of Am., Inc., 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir. 1976)). In general, a court should grant a new trial only when the judge "is left with the definite and firm conviction that a mistake has been committed." Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir. 1987) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2806, at 49 (1973)).

If the judge determines such a mistake has been made, Federal Rule of Civil Procedure 59(a) allows a district court to "grant a [party's motion for a] new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.'" Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990) (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted . . . . [courts] are thus bound by those grounds that have been historically recognized." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Such historical grounds include claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving[.]" Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); see also Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." Murphy, 914 F.2d at 187.

**B. Renewed Motion for Judgment as a Matter of Law**

A renewed motion for judgment as a matter of law is properly granted only if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict. Castro v. Cnty. of L.A., 833 F.3d 1060, 1066 (9th Cir. 2016) (quoting Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002)) (quotations

omitted). A jury's verdict must be upheld under Federal Rule of Civil Procedure 50(b) if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. See id. That is to say, the verdict will be upheld under 50(b) absent a circumstance where "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Josephs v. Pacific Bell, 443 F.3d 1050, 1062 (9th Cir. 2006). As a result, Rule 50(b) imposes a very high, demanding standard that strictly limits the Court's role: the Court may not make credibility determinations or weigh the evidence, nor "substitute its view of the evidence for that of the jury," but instead, must view the evidence in the light most favorable to the nonmovant. Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001) (citing to Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)); see also Settlegoode v. Portland Pub. Schs., 371 F.3d 503, 512 & n.6 (9th Cir. 2004); Josephs, 443 F.3d at 1062.

### III.    DISCUSSION

Defendants have filed two motions for post-trial relief: a Motion for a New Trial and a Renewed Motion for Judgment as a Matter of Law. This Court has reviewed the pleadings and the record and finds that the Defendants have not met the standard necessary to grant a Motion for a New Trial. Because of the motions' relative standards—the standard is for a renewed motion for judgment as a matter of law is markedly higher than that for a motion for a new trial—it follows that the Court finds Defendants have not met the heightened standard necessary to be successful on their Renewed Motion for Judgment as a Matter of Law.

#### A.  Motion for a New Trial

The Court addresses the Motion for a New Trial first. Defendants argue that they are entitled to a new trial on the following bases: (1) because the Court's ruling on causation (in regards to prosecutor testimony) was erroneous, and it relied on said ruling to exclude key defense evidence and incorrectly instruct the jury; (2) because the clear weight of the evidence at trial showed that the actions of Defendants, Mr. Thowsen and Mr. LaRochelle, were not the cause-in-fact of Plaintiff's injuries; and (3) because the trial was fundamentally unfair and cumulative errors made by the Court warrant a new trial.

- 4 -

As previously stated, a trial court may grant a new trial only where "'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" Roy, 896 F.2d at 1176 (quoting Hanson, 541 F.2d at 1359. A new trial should only be granted when the court "is left with the definite and firm conviction that a mistake has been committed." Landes, 833 F.2d at 1372 (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2806, at 49 (1973)). Federal Rule of Civil Procedure 59 vests the trial court with a level of discretion if that standard is met: if the court is so firmly convinced that a mistake has been committed, it may grant a motion for new trial on any historically recognized ground. Fed. R. Civ. P. 59(a)(1)(A); Murphy, 914 F.2d at 186; Zhang, 339 F.3d at 1035. This standard is lower than that required for a court to grant a renewed motion for judgment as a matter of law. A renewed motion for judgment as a matter of law is properly granted only if the evidence, construed in the light most favorable to the nonmoving party, permits a single reasonable conclusion that is contrary to the jury's verdict. Castro, 833 F.3d at 1066.

### i. *Intervening Causation and Prosecutorial Independence Evidence*

Defendants raise several arguments focusing on issues of causation. They first argue the Court's "ruling" to exclude evidence that the District Attorney ("DA") who prosecuted Ms. Lobato "made an independent decision to prosecute the [Plaintiff] was prejudicial [and] . . . affected the Defendants' substantial rights because it prevented Defendants from presenting their causation defense," and that the jury was not properly instructed on intervening causes. See ECF No. 216 at 7, 9. Defendants assert a similar argument, focused on the limits of the prosecutor's testimony, as a portion of their cumulative error claim, which is addressed by the Court in Section III(A)(iii).[1] The Court finds this argument as to causation fails for the following reasons.

First, the Court recounts its exchange with defense counsel as to the scope of the DA's testimony when defense counsel indicated their desire to have the prosecutor testify as to "their own investigation." ECF No. 208 at 239. The Court, recognizing that this indication related to the

---

[1] Because of the similarities between these arguments, portions of the Defendants' causation arguments related to the prosecutor's testimony are addressed by the Court in the cumulative error section, *infra* Section III(A)(iii)(1).

Plaintiff's concern of conflating a separate investigation with "intervening" prosecutorial action, noted the following:

> Because I would have assumed based upon what's been presented here if there was something radically different than what's in the … Arrest Report and the case report and the binder, that would have been there and that would have been documented.

Id. Defendants' counsel responded, "Correct." Id. at 240. The Court continued:

> So I don't see why we would need to have her, Mr. Anderson, say, "I also did an independent investigation," right. Because, in fact, … they also said something to that effect when they testified, that they gave the information to the prosecutor. The prosecutors could do their own investigation. And I think on one of the documents that is admitted there is a request from the prosecutor, right, and Detective LaRochelle talked about that. So I think the fact that a DA is involved in the investigation has also come in. And I think it just may be confusing to them for them to say that somehow there's this parallel investigation because I think the jury might believe there's a parallel file or other information that's separate from what they've seen, which there isn't. And so I'd have to be convinced, Mr. Anderson, that there would be a reason for her to confirm a separate investigation.

Id. Despite this indication that further argument would be welcome, Defendants did not attempt to convince this Court that anything more should be introduced as to prosecutorial independence, not even proposed questions on the issue. Had Defendants made a proffer, for example, that the prosecutor believed the evidence that she received from Defendants was intentionally manipulated or fabricated and still independently decided to prosecute Ms. Lobato with this belief, the Court may have allowed more evidence on the issue to go before the jury. However, no such proffer was made. Defendants misconstrue the events as they happened. The Court did not make a ruling that barred Defendants from presenting evidence of independent decision-making by the prosecutor; rather, the Court expressed concern as to the scope of the DA's testimony and gave Defendants opportunities to argue the issue. The Court raised the issue of confusion to the jury about the argument but gave Defendants an opportunity to attempt to address this concern. Instead of taking this opportunity, Defendants chose a different path, *agreed* to a stipulated examination, and now seemingly seek to walk back that decision.

Defendants also argue the jury "was not instructed on intervening causes," but they forfeited this issue by failing to object to the instructions given. See Fed. R. Civ. P. 51(c); Hunter

- 6 -

v. Cnty. of Sacramento, 642 F.3d 1225, 1230 (9th Cir. 2011). Further, the instructions the Court provided were correct statements of law and *did* address intervening causation.[2] Questions of intervening or superseding cause are limited to the sphere of proximate causation, where foreseeability is the key determinate. Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 837 (1996). The chain of causation can only be broken where an injury was "brought about by a later cause of independent origin that was not foreseeable," thus, an individual is responsible for the "natural consequences of [their] actions," and an intervening or superseding cause only breaks the chain of causation where it stems from an independent origin that was not foreseeable. Sabbe v. Wash. Cnty. Bd. Of Comm'rs, 84 F.4th 807, 817 (9th Cir. 2023); Monroe v. Pape, 365 U.S. 167, 168 (1961). By instructing the jury that causation is found where "the injury was a natural foreseeable consequence of the defendant's conduct," including by "setting in motion a series of actions which the defendant knows or reasonably should know would cause others to inflict the constitutional injury," the Court provided a proper instruction on proximate causation and outlined the circumstances where an event may be deemed intervening, *i.e.*, where such an event is unforeseen. See ECF No. 219-1 at 4.

The Court finds it did not err as it pertains to the limitations imposed upon the District Attorney's testimony regarding her decision-making, nor in its jury instructions regarding causation. In addition, Defendants' causation arguments are largely divorced from their arguments at trial: Defendants did not attempt to argue causation to the jury, nor did they, more specific to the instant argument, point to independent evidence of a parallel prosecutor investigation—to the contrary, they agreed to a stipulated examination of the prosecutor. Furthermore, the evidence of

---

[2] Jury instruction No. 3 provided:

A defendant's conduct caused the plaintiff's injury if: (1) the injury would not have occurred without that conduct or if there is a reasonable likelihood the defendant's conduct could have affected the judgement of the jury, and (2) the injury was a natural foreseeable consequence of the defendant's conduct. A defendant's conduct need not be the sole cause of an injury to have caused an injury. Causation can be established through direct personal participation in the injury or by setting in motion a series of actions which the defendant knows or reasonably should know would cause others to inflict the constitutional injury.

ECF No. 219-1 at 4.

causation heard by the jury was not minimal; the jury received an abundance of information that indicated Defendants were the cause of Ms. Lobato's injuries—in both proximate and but-for terms. As a result, Defendants' first causation argument fails, and the Court cannot order a new trial on this basis. Defendants' arguments that the evidence was to the contrary, that the clear weight of the evidence was *against* the jury's finding that Defendants' action were the cause-in-fact of Ms. Lobato's injuries, are addressed next by the Court.

### ii.   *Defendants' Actions as Cause-in-Fact for Lobato's Injuries*

Defendants continue to focus their arguments on causation: they argue that the clear weight of the evidence showed that Plaintiff was not charged or convicted on the basis of deliberately fabricated evidence, *i.e.*, Defendants argue that the clear weight of the evidence indicates that their actions were not the cause-in-fact of Plaintiff's injuries. Following this logic, Defendants assert that the clear weight of the evidence was against the verdict returned at trial, which found Defendants violated Ms. Lobato's rights to due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and under the Nevada Constitution, based on their fabrication of evidence against Ms. Lobato.

The Ninth Circuit has held that, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074–75 (9th Cir. 2001). A plaintiff can prove deliberate fabrication in two ways. "Most basically, a plaintiff can produce direct evidence of deliberate fabrication." Richards v. Cnty. of San Bernardino, 39 F.4th 562, 569 (9th Cir. 2022) (quoting Caldwell v. City & Cnty. of S.F., 889 F.3d 1105, 1112 (9th Cir. 2018)). Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive. Id. To prove fabrication using circumstantial motive evidence, a plaintiff must establish that either: (a) "[d]efendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that [she] was innocent"; or (b) "[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Richards, 39 F.4th at 569 (quoting Devereaux, 263 F.3d at 1076). Thus, there were two theories of liability, and therefore two routes to find causation in the instant

case: (1) via evidence of deliberate fabrication in Defendants' reports (with a focus on the Officer's Report and Arrest Report, specifically) and (2) via evidence that Defendants continued to investigate Ms. Lobato despite the fact that they knew or were deliberately indifferent to her innocence.

The Court finds that, based on the witness testimony and evidence produced at trial, the jury's verdict was reasonable, and the clear weight of the evidence is not contrary to this verdict. The Court thus addresses, and rejects, Defendants' arguments as to each theory in turn.

### 1.  Deliberately Fabricated Evidence in Defendants' Reports

The Court disagrees with Defendants' argument asserting that the clear weight of the evidence shows Ms. Lobato was not charged or convicted based on deliberately fabricated evidence contained in the Officer and Arrest Reports. Defendants argue that the allegedly fabricated statements in their Arrest Report and Officer Report are properly characterized as issues of tone, trivial matters, characterization, or omissions that are not actionable as intentional fabrication. Defendants appear to focus on certain portions of Plaintiff's trial testimony and statements she made in the recorded interview prior to her arrest to show that there was no actionable deliberate fabrication. Defendants' argument however ignores the witness testimony and evidence presented to the jury that indicated Defendants omitted pertinent information from their reports, used questionable interview tactics, and mischaracterized statements made by Plaintiff.

Furthermore, at summary judgment, this Court explicitly held that a reasonable jury could find that Defendants deliberately fabricated evidence. Subsequently, Defendants filed an interlocutory appeal with the Ninth Circuit in which they argued that the discrepancies between their reports and what was actually said by Plaintiff were "mere omissions." The Ninth Circuit found that "viewing the totality of the mischaracterizations, discrepancies, and omissions between [Plaintiff's] account of her attack and [Defendants'] recounting of her statements in their reports in the light most favorable to [Plaintiff], [Plaintiff] has provided direct evidence that the Detectives fabricated evidence to make it appear that she killed Bailey." Lobato v. Las Vegas Metro. Police Dep't, No. 22-16440, 2023 U.S. App. LEXIS 26946, at *3 (9th Cir. Oct. 11, 2023).

As previously stated, a new trial is warranted only when "it is clear that the jury has reached a seriously erroneous result." Oracle Corp. v. SAP AG, 765 F.3d 1081, 1093 (9th Cir. 2014) (citation omitted). At the instant trial, the jury was presented with the reports at issue, heard witness testimony, weighed the presented evidence, and reasonably concluded that Defendants fabricated evidence against Plaintiff, causing her harm. Thus, the Court finds that Defendants' argument that the jury reached an erroneous result on this point, such that a new trial is warranted, fails.

> 2.    Evidence that Defendants Continued to Investigate Plaintiff Despite Knowledge and/or Deliberate Indifference as to Plaintiff's Innocence

Defendants further argue that Plaintiff did not establish causation-in-fact because Defendants did not know of, and were not deliberately indifferent to, Ms. Lobato's innocence at the time of her charging or conviction. Defendants re-marshal their arguments from trial and the series of events they presented to the jury, highlighting evidence they deemed inculpatory and reiterating the standard (Devereaux) for proving knowledge or deliberate indifference. Their Motion acknowledges the existence of exculpatory evidence, yet re-asserts that this evidence was not sufficient to make a finding of knowledge of deliberate indifference to Plaintiff's innocence in light of the other, inculpatory evidence.

However, the jury did just that, finding that Defendants did indeed continue to investigate Ms. Lobato despite knowledge of or deliberate indifference to her innocence, constituting cause-in-fact for her injuries. In their response, Plaintiff sets forth dozens of instances and factors that indicate Defendants had knowledge of or deliberate indifference to Lobato's innocence. The jury, and this Court, was presented with plentiful evidence that indicated this: there is evidence that Defendants knew that Lobato was describing an attack that predated the Bailey murder by a month and occurred fully across town from where Bailey was killed, that there was no physical evidence connecting her to the murder, that they knew no witnesses they spoke to—even Laura Johnson, who they point to as a source of inculpatory information—claimed Lobato killed someone, that they knew it is important that suspects be able to provide non-public facts that only the perpetrator of the crime would know and that Lobato could not provide any non-public facts, among several other exculpatory pieces of information. In light of this evidence, the jury reached a reasonable

conclusion and clear weight of the evidence cannot be said to be against the verdict rendered by the jury.

The Court does not seek to belabor this point, but it is unable to order a new trial on this argument absent finding that the jury made a mistake and that the evidence *clearly* weighs against their finding of knowledge or deliberate indifference. See Roy, 896 F.2d at 1176. Here, the Court simply cannot make such a finding based on the evidence before it.

Accordingly, the Court finds Defendants' argument that Plaintiff failed to establish cause-in-fact on this theory of liability, such that a new trial is warranted, also fails.

### iii.   *Cumulative Error and Fundamental Unfairness*

Defendants also assert that a new trial is warranted based on allegations that this trial was fundamentally unfair due to cumulative errors made by the Court that negatively impacted Defendants' substantial rights. The alleged errors were made in relation to (1) the scope of testimony from the District Attorney; (2) testimony from Plaintiff's false confession expert witness; (3) a prohibition on recalling witnesses; (4) the Court's decision to sustain an objection related to alleged impeachment evidence; and (5) the Court's decision not to bifurcate the trial. The Court finds that a new trial is not warranted on this basis and provides the following reasons why each alleged error is rejected as grounds for a new trial.

#### 1.   Limitation on the District Attorney's Testimony

As previously addressed, Defendants contend that the Court's exclusion of testimony related to prosecutorial independence as an intervening cause prejudiced Defendants and affected their substantial rights. Defendants also argue that the testimony of the DA regarding the criminal process and timing of events was essential to provide context to the Defendants' causation defense. They further assert that by allowing Plaintiff to present evidence of the Certificate of Innocence ("COI") but preventing the DA from testifying about her experience prosecuting homicide cases, the Court tipped the scales in Plaintiff's favor. Plaintiff responds that Defendants' argument regarding DA testimony is meritless because Parties entered into a stipulation governing the scope of the DA's examination. The Court finds that Defendants' arguments regarding the limitations on testimony from the DA fail to warrant a new trial and agrees with the Plaintiff.

- 11 -

As a threshold matter, the Court finds Defendants' *new* reliance on McSherry v. City of Long Beach, 584 F.3d 1129, 1137 (9th Cir. 2009), is far too late. Defendants never cited McSherry to the Court before trial, and "[a] defendant in a civil action cannot wait until the last brief before the district court to present a defense which, if properly placed in issue, would have affected the course of the jury trial." Kelly v. City of Oakland, 198 F.3d 779, 785 (9th Cir. 1999), as amended (Jan. 12, 2000).

Further, Defendants' arguments regarding the limitation on the Prosecutor's testimony cannot warrant a new trial, because Defendants failed to preserve them by stipulating to the scope of testimony without lodging objections or making an offer of proof "to show the substance of the would-be evidence" and allowing the Court to make a definitive ruling. Pau v. Yosemite Park and Curry Co., 928 F.3d 880, 887 (9th Cir. 1991) (citing Fed. R. Evid. 103(a)(2)). The Court never made a ruling barring testimony from the DA regarding her independent decision making or the other matters regarding "the criminal process" or the "timing of events" which Defendants argue were erroneously excluded. At the start of trial, the Court sought clarification from Defendants regarding the testimony they sought to elicit from the DA and the prosecutorial independence arguments they planned to make. The Court notified Defendants that it would be inappropriate for the DA to testify that because she saw the evidence at issue and decided to pursue a criminal case against Plaintiff, Defendants could not be liable for Plaintiff's injury. The Court further expressed concern that Defendants sought to elicit testimony from the DA that she found the Defendants' "version of events credible," and that such testimony would both confuse the jury and misplace the inquiry. See ECF No. 204 at 107–112; see also, e.g., Sartori v. Cnty. of Los Angeles, 676 Fed.Appx. 680, 682 (9th Cir. 2017) ("The prosecutor should not have been permitted to testify that she found the officers' version of events credible . . ."). Defendants' counsel stated he did not intend to elicit such testimony, repeatedly agreed with the Court's concerns, and discussions regarding the scope of the DA testimony continued. See ECF No. 204 at 112.

On the fifth day of trial, Parties expressed concerns regarding the scope of the upcoming DA testimony. See ECF No. 208 at 224; see also *supra* Section III(A)(i). In an effort to resolve Parties' concerns, the Court instructed Defendants to provide a list of the evidence the DA would

testify about identifying what Defendants thought was left out and what they believed should be considered. Id. at 227-28. The Court stated, "I don't know if this is an issue that would necessarily require me to rule, but I will rule, if necessary." Id. at 234. The Court suggested—but did not mandate—that Parties could file a stipulation regarding the scope of the DA testimony. Id. at 233-34. Additionally, the Court expressed to Defendants that it was open to further argument regarding why they believed the DA should testify about a separate investigation, and any other testimony from the DA they wanted the Court to consider. When defense counsel again indicated his intent to have the DA testify about her own investigation, the Court noted the lack of any evidence or documentation of a separate investigation beyond the "Arrest Report and the case report and the binder" that had already come into evidence. Id. at 239–40. The Court explicitly stated to defense counsel, "I'd have to be convinced . . . that there would be a reason for [the DA] to confirm a separate investigation." Id. Rather than offering additional evidence or continuing to argue the position Defendants attempt to raise in the instant motion, defense counsel told the Court that Defendants' position was "very close" to what the Court described. Id. at 240. Defendants reached a stipulation with Plaintiff as to the scope of the testimony, without even proposing specific questions about the prosecutor's independent investigation or other matters, which could have led to a dispute or objection for the Court to resolve.

The Ninth Circuit has held that, "[b]ecause stipulations serve both judicial economy and the convenience of the parties, courts will enforce them absent indications of involuntary or uninformed consent." CDN Inc. v. Kapes, 197 F.3d 1256, 1258 (9th Cir. 1999). A stipulation should be interpreted to carry out the parties' intentions. United States v. Petty, 80 F.3d 1384, 1387 (9th Cir. 1996). Defendants have not articulated that they entered the stipulation regarding the scope of the DA's testimony involuntarily or with uninformed consent. The Court therefore finds that any argument that the limitations on the prosecutor's testimony warrants a new trial was waived at trial, when Defendants' counsel agreed with the Court's statements and stated he did intend to argue the prosecutor's decision precluded liability, and again by stipulating to the scope of the prosecutor's testimony after the Court stated it was willing to hear argument on what additional testimony should be included.

Even if this argument was not waived, Defendants' argument on this point is meritless because they never presented—and still have not presented—any evidence that the prosecution decided to charge Ms. Lobato without considering or relying on the Arrest Report that contained fabricated evidence. For example, Defendants could have made an offer of proof under Federal Rule of Evidence 103(a)(2), summarizing the specific facts that the prosecutor would have testified to, but they did not, nor did they present any other evidence on this point.

That is precisely what distinguishes this case from McSherry, the case Defendants newly rely on the instant argument. In McSherry, there was ample testimony from the prosecutor saying he did his own investigation and only relied on evidence from his own investigation in making the charging decision. 584 F.3d at 1137 (The McSherry Court found: "There is no question that the prosecutor's actions in authorizing all charges against McSherry and conducting his prosecution were (1) amply supported by probable cause at all stages of the process, and (2) the result of his independent professional judgment based upon a thorough review of the evidence, a judgment that was predicated on eyewitness identification related to him and uninfluenced by either Turley or Roberson or the 'evidence' McSherry claims was fabricated."). That is simply not the case at bar. Defendants never presented any testimony from the prosecutor that she was not influenced by the fabricated evidence in making the charging decision, nor any specific facts regarding the prosecutor's independent investigation and reliance on evidence obtained through independent investigation, rather than evidence provided (and fabricated) from the detectives.

For these reasons, the Court finds there was no error as to the scope of the DA's testimony, let alone exceptional error warranting a new trial, even when considered cumulatively with the other points raised by Defendants.

2. Plaintiff's Expert Witness Testimony (False Confession)

The Court agrees with Plaintiff that Defendants' challenge to Plaintiff's false confession expert, Dr. Redlich, is both procedurally and substantively deficient, and therefore must be rejected. The Court finds Defendants did not make a timely objection, nor file a motion *in limine*, nor raise any contemporaneous evidentiary challenge at trial. Further, the Court finds that Dr. Redlich's testimony was relevant, admissible, and helpful to the jury.

Per Federal Rule of Evidence 103(a), a party may only claim evidence was admitted in error if they timely object and state the specific grounds for said objections. See Lam v. City of Los Banos, 976 F.3d 986, 1005 (9th Cir. 2020); Jerden v. Amstutz, 430 F.3d 1231, 1236 (9th Cir. 2005). Failure to object contemporaneously constitutes waiver. See Marbled Murrelet v. Babbitt, 83 F.3d 1060, 1066 (9th Cir. 1996). The Court finds, and Defendants' counsel admitted on the record, that Dr. Redlich was timely disclosed as an expert witness in this case. See ECF No. 205 at 261. Defendants had plenty of time to object or file a motion *in limine* but chose not to. The Court only heard concerns regarding Dr. Redlich's testimony at the start of trial, which prompted the Court to order Plaintiff's counsel submit the relevancy of her testimony and the types of questions that would be asked. See ECF No. 178. The Court thoroughly reviewed this submission before allowing Dr. Redlich to testify, and the parties agreed her expert report would not be entered into evidence. While Defendants' counsel did state that he objected to Dr. Redlich being used as an expert witness on Day 3 of trial, when the Court asked counsel what his specific objection was, after clarifying the scope of her testimony and the kinds of questions to be asked, counsel stated that his only objection was to reference of coerced or false confession and that he "would be fine" with the agreed-to limited discussion about the effects and aspects of certain interrogation tactics. ECF No. 205 at 260–61. Defense counsel did not object further nor did he object during Dr. Redlich's testimony at trial. Accordingly, this challenge has been waived.

Even if this challenge had not already been waived through inaction, the Court rejects Defendants' argument that the testimony was irrelevant. Federal Rule of Evidence 401 presents a permissive standard for relevancy: "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Dr. Redlich's testimony pertained to the investigative techniques employed by Defendants and demonstrated that the tactics used were highly effective and scientifically proven to make individuals doubt their own memory and acquiesce to false suggestions. The evidence set forth by her testimony makes it more probable that Defendants deliberately fabricated evidence against Plaintiff, a fact of consequence in determining this action, meaning this testimony was indeed relevant. Further, her testimony aided the jury in making sense

of parts of Ms. Lobato's testimony and recorded interview, providing a scientific basis for why an innocent person such as Ms. Lobato would say and do potentially confusing things, for example, when she said in the interview that she didn't *think* she could have put someone in a dumpster. This testimony was relevant and helpful in demonstrating precisely how Defendants caused Lobato to doubt her own memory and acquiesce to their suggestions in a vulnerable state. Thus, the Court further rejects Defendants' argument that the testimony was unduly prejudicial, as the relevancy of the testimony outweighed any prejudicial effect. Ultimately, this challenge is baseless and cannot be found as error warranting a new trial.

### 3.  Prohibition on Recalling Witnesses

Defendants argue that the Court's decision not to recall witnesses resulted in Defendants' inability to properly argue their case-in-chief. Defendants contend that they were forced to run a purely reactionary defense because they were unable to respond to several significant allegations from multiple witnesses. Plaintiff asserts that these arguments fail as the Court's decision to prevent witnesses from being recalled was made with judicial economy in mind and applied equally to both parties.

District courts have discretion to control the mode and order of examining witnesses and presenting evidence to avoid wasting time. Fed. R. Evid. 611(a). District courts have broad discretion in controlling the conduct of a trial. Penk v. Or. State Bd. of Higher Educ., 816 F.2d 458, 465 (9th Cir. 1987). "Federal rule of evidence 611(a) directs trial judges to exercise 'reasonable control' over the presentation of evidence and interrogation of witnesses." Id. "Very few cases outside of the criminal law area support an appellate finding of general judicial misconduct during trial . . .. The standard for reversal is whether the trial was unfair." Id. (citing Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282, 1289 (9th Cir. 1984)).

From the outset, the Court informed Parties in this case that, barring an emergency, each witness would only be allowed to appear once. Despite being informed that in emergency circumstances, a witness may be allowed by the Court to appear more than once, Defendants did not request that any of their witnesses be recalled at trial, not even after the testimony from Larry Lobato or Dixie Tienken. If the inability to rebut these witnesses' testimony through recalling the

Detectives specifically was truly so prejudicial as to require a new trial, this Court would think Defendants' counsel might mention this at trial. Furthermore, throughout the trial, the Court's policy regarding witness testimony was applied equally to both Parties. Accordingly, the Court agrees with Plaintiff and finds it acted within its discretion with regard to its prohibition on recalling witnesses.

In addition, Defendants had the tools of cross-examination, and as to Larry Lobato specifically, extensive testimony from the 2006 criminal trial to consider and prepare to counter, to combat any prejudice that resulted from the Court's administrative decision. The Court thus finds Defendants did not suffer special prejudice from the prohibition on recalling witnesses, as the jury's credibility determinations would not have been so altered by an ability to recall Detectives as to warrant a new trial. Because there was no error, and any prejudice suffered due to this administrative decision was limited, the Court again rejects this challenge and continues to find there is no independent nor cumulative error warranting a new trial.

4. Objection Regarding Defendants' Questioning Plaintiff as to her Perception of Fabrication in the Officer's Report

Defendants argue the Court committed error in sustaining an objection from Plaintiff counsel during Plaintiff's cross-examination. Specifically, Defendants maintain that they should have been permitted to ask Plaintiff whether, at deposition, she could identify any statements in Defendants' reports that she thought contained lies. This Court sustained an objection from Plaintiff counsel when Defense counsel tried to ask this question and instructed Defense counsel to move on from further questioning on the point.

Federal Rule of Evidence 701 places limitations on lay witness opinion testimony. As non-experts, lay witnesses are barred from offering scientific, technical, or otherwise specialized knowledge and only permitted to testify to matter within their own direct perception. Fed. R. Evid. 701; United States v. Gadson, 763 F.3d 1189, 1208 (9th Cir. 2014). Further, Federal Rule of Evidence 403 bars testimony that amounts to determinations of credibility, as these are determinations for the factfinder—in this case, the jury. Fed. R. Evid. 403; See Reed v. Lieurance, 863 F.3d 1196, 1211 (9th Cir. 2017) ("Issues of credibility belong to the trier of fact.").

Permitting this question would have allowed for testimony from the Plaintiff that runs afoul of both rules. Under Rule 701, Plaintiff could not comment as to the fact of an ultimate legal conclusion—that the reports were fabricated—nor could Plaintiff comment on the credibility of the Defendants, as other witnesses in this case, under Rule 403.

Even assuming *arguendo* that the Court erred in sustaining this objection, Defendants failed to demonstrate that this sustained objection caused them substantial prejudice, which is the standard warranted for granting new trial on this point. United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir. 1992) (an incorrect evidentiary ruling can lead to the granting of a new trial only "if the ruling substantially prejudiced a party.").

### 5.    Denial of Trial Bifurcation Request

Defendants contend, as their final point, that they were prejudiced when the Court denied their Motion *in Limine* to bifurcate the trial into two phases: (1) liability, and (2) damages. Defendants argue that the admission of the COI was of limited relevance and was significantly more prejudicial than probative, and therefore required bifurcation to eliminate prejudice. They assert that the trial should have been bifurcated, and the COI should have been limited to the damages phase of the trial. Plaintiff contends that granting bifurcation in this instance would have been a reversible error because Plaintiff's intentional infliction of emotional distress ("IIED") claims contain a requirement that Plaintiff prove her damages for the purposes of establishing liability.

As an initial matter, the Court finds Defendants' argument that the denial of bifurcation warrants a new trial is precluded by the fact that the Court did not deny the Motion *in Limine,* rather it was mooted by the Parties' stipulation to include the COI as evidence of Plaintiff's innocence while excluding evidence from forensic entomologists. See ECF No. 160. Defendants stated that if the parties reached a stipulation on admission of this evidence, then bifurcation would not be necessary. ECF No. 200 at 61.

"Trial bifurcation is a question soundly within the district court's judgment[.]" In re Google Play Store Antitrust Litig., 147 F.4th 917, 941 (9th Cir. 2025). "Rule 42(b) permits, but does not require, separate trials '[f]or convenience, to avoid prejudice, or to expedite and economize.' Fed.

R. Civ. P. 42(b)." Id. Furthermore, bifurcation is the exception rather than the rule of normal procedure. Thus, the moving party bears the burden of showing that bifurcation is warranted. See Clark v. I.R.S., 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) (citing Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004)).

First, the Court finds that the COI was highly relevant and more probative than prejudicial in the instant matter. At trial, the jury was provided with testimony and evidence regarding Plaintiff's criminal trials and the fact that she was found guilty twice. Defendants were permitted to bring in inculpatory evidence that led them to believe Plaintiff was guilty at the time of her arrest. Furthermore, Defendants played Plaintiff's "confession" and presented evidence used in the underlying criminal case. The Court permitted the COI because it balanced the fact that the jury would be presented with Plaintiff's convictions and inculpatory evidence.

Additionally, the Ninth Circuit has held that when a plaintiff seeks punitive damages, ordering a partial trial limited to damages is impermissible because liability issues are necessarily interwoven with damages. Marroquin v. City of Los Angeles, 112 F.4th 1204, 1211 (9th Cir. 2024). In such cases, damages often depend upon the degree of culpability of the defendant. Id. Furthermore, defendants faced with the prospect of punitive damages are entitled to present evidence not only to show that they were not negligent, but that, "even if there was negligence[,] there was no willfulness or wantonness, or extreme recklessness." Id. (quoting United Air Lines, Inc. v. Wiener, 286 F.2d 302, 306 (9th Cir. 1961). Accordingly, if the Court had bifurcated the trial, it would have been a reversable error. Here, Plaintiff sought and was awarded punitive damages. Thus, the Court's decision not to bifurcate the trial was necessary and did not prejudice Defendants.

In conclusion, the Court finds that the evidence is not clearly against the jury's verdict, but rather, the jury's verdict was supported by substantial evidence and should be upheld. Furthermore, the Court finds that there were no legal errors made at trial independently or cumulatively that were prejudicial to Defendants such that a new trial is warranted. To the extent Defendants have raised arguments not explicitly addressed in this Order, the Court finds the reasoning in Plaintiff's briefing in opposition persuasive and hereby incorporates that reasoning by reference. For these

reasons, Defendants' Motion for a New Trial is denied.

### B.   Renewed Motion for Judgment as a Matter of Law

Defendants also move to overturn the jury's verdict and for judgment as a matter of law regarding Plaintiff's claims for Deliberate Fabrication of Evidence under the Fourteenth Amendment to the United States Constitution and Article 1 § 8 of the Nevada Constitution. Defendants' arguments mirror arguments in their Motion for a New Trial: Defendants argue that they are entitled to judgment as a matter of law because neither the Arrest Report nor the Officer's Report contained any deliberately fabricated evidence as a matter of law; that Defendants Thowsen and LaRochelle contend that they never knew, and could not have known, that Plaintiff was innocent; and that Plaintiff failed to show that any deliberately fabricated evidence was the cause-in-fact of her being charged or convicted.

As an initial matter, the Court again highlights the comparative standards of these two motions: Rule 50 (Renewed Motion for Judgment as a Matter of Law) imposes a higher standard than Rule 59 (Motion for a New Trial). Thus, because Defendants raised arguments in their Rule 59 Motion that are identical to those raised in their Rule 50 Motion, these arguments necessarily fail for the reasons set forth in Section III(A). The Court incorporates by reference its reasoning in Section III(A) here and finds that, because the verdict was not against the weight of the evidence on any of these grounds, Defendants necessarily fail to prove they are entitled to Rule 50 relief when considering the evidence construed in the light most favorable to the plaintiff.

Furthermore, Defendants waived many of the arguments raised in the renewed motion for judgment as a matter of law by failing to raise any argument outside of causation in their pre-verdict motion under Rule 50(a). See Tortu v. LVMPD, 556 F.3d 1075, 1082 (9th Cir. 2009) ("As [R]ule 50 and its notes clearly instruct, we strictly construe the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) Motion.").

Accordingly, Defendants' Rule 50 Motion is denied.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion (ECF No. 214) for Judgment as a Matter of Law is **DENIED**.

- 20 -

**IT IS FURTHER ORDERED** that Defendants' Motion (ECF No. 216) for a New Trial is **DENIED**.


**DATED:** March 31, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**